*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 29, 2018

**By ECF**

Honorable Lorna B. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:  *United States* v. *Sohrab Sharma, a/k/a "Sam Sharma,"* **18 Cr. 340 (LGS)**

Dear Judge Schofield:

      The Government writes to respectfully request that the Court schedule a bail revocation conference for defendant Sohrab Sharma ("Sharma"). As detailed below, Sharma has violated the terms of his bail conditions by communicating with Centra Tech victim investors under the guise of a new business venture, and has continued his efforts to obstruct justice with respect to Centra Tech investor funds while on pretrial release. In addition, the Government now has additional proof of Sharma's continued obstruction of justice and lies to this Court in connection with law enforcement's efforts to secure Centra Tech victim investor funds, and his prior bail applications. On October 25, 2018, Sharma submitted an application to modify his bail conditions by releasing $500,000 in cash that currently secures his bond in this case. The Government not only opposes that motion, but, in light of Sharma's violation of his bail conditions and continued criminal conduct, and in recognition of the failure of release conditions to protect the community, the Government submits that Sharma's bail should be revoked and he should be detained until trial.

**I.    Factual Background**

      The Indictment charges Sharma with conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, and wire fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, and 18 U.S.C. §§ 371, 1343, 1349 and 2.

      From at least in or about July 2017 through in or about March 2018, defendants Sharma, Robert Farkas ("Farkas"), and Raymond Trapani ("Trapani"), three co-founders of Centra Tech who previously worked at a Florida-based luxury rental car company called "Miami Exotics," began soliciting investors to purchase Centra Tech tokens, a cryptocurrency that functioned as an unregistered security in Centra Tech, in connection with the company's so-called "initial coin offering" or "ICO," through a series of material misrepresentations and omissions. Ex. A ¶¶ 15-

16; Ex. B ¶¶ 10-11.[1]  Through this fraudulent scheme, Sharma, Trapani, and Farkas solicited digital funds that included thousands of units of a cryptocurrency called "Ether" worth more than $25 million from investors who purchased digital tokens issued by Centra Tech.

    As part of this effort, Sharma, Farkas, and Trapani, in oral and written offering materials that were disseminated via the internet, made or caused Centra Tech to make multiple misstatements in soliciting investments in Centra Tech, including the following:

- Sharma, Trapani, and Farkas claimed to investors that Centra Tech had developed a debit card that enabled users to spend various cryptocurrencies to make purchases at any stores that accept Visa or Mastercard payment cards, and that Centra Tech had partnerships with Bancorp, Visa, and Mastercard to issue Centra Tech debit cards.  In fact, Centra Tech had no such partnerships with Bancorp, Visa or Mastercard.

- Sharma, Trapani, and Farkas claimed to investors that Centra Tech's executive team included a purported Chief Executive Officer named "Michael Edwards" and a purported Chief Financial Officer named "Jessica Robinson" who had impressive work histories and academic credentials.  In fact, neither "Michael Edwards" nor "Jessica Robinson" was a real person.

- Sharma, Trapani, and Farkas claimed to investors that Centra Tech held money transmitter and other relevant licenses in 38 states.  In fact, Centra Tech did not have such licenses in a number of those states.

- Sharma, Trapani, and Farkas caused Centra Tech to make several of those false claims through (among other things) various promotional videos that were posted on the YouTube website; various white papers that were disseminated to investors via the internet; and various LinkedIn profiles that were posted on the LinkedIn social networking website.  Sharma also reiterated several of those false claims during (among other things) an interview on an internet podcast relating to the cryptocurrency industry.

Ex. A ¶¶ 15-31; Ex. B ¶¶ 17-27.

    Cellphone text message conversations between Sharma, Trapani, and Farkas, found in a cellphone recovered from Trapani (the "Trapani Cellphone"), show that they were well aware of the falsity of the above-described claims:

---

[1] The facts set forth below are based on the allegations set forth in (a) the Indictment, (b) the criminal complaint against Sharma and Farkas, *United States v. Sohrab Sharma and Robert Farkas*, 18 Mag. 2695 (UA), which is attached hereto as Exhibit A, and (c) the criminal complaint against Sharma and Farkas' co-defendant, Raymond Trapani, *United States v. Raymond Trapani, a/k/a "Ray,"* 18 Mag. 3271 (UA) (the "Trapani Complaint"), which is attached hereto as Exhibit B.

- For example, with respect to the purported partnerships that Centra Tech claimed to have with Bancorp, Visa, and Mastercard, Sharma engaged in a text message conversation with Trapani on or about July 31, 2017 in which they discussed Centra Tech's lack of actual partnerships with banks or credit card companies.  During that exchange, Sharma (via a cellphone assigned a call number ending with "3138" that is referred to as "Sharma Cellphone-1" in the Complaint) wrote:  "Should write down a list of places to call tomorrow," "For the conbranded [*sic*] card."  Later in the exchange, Sharma wrote:  "Gotta get it going on the banks today plz."  Sharma also subsequently wrote:  "We just need to get s [*sic*] banking license," "Need our direct agreement with visa," "Or MasterCard," "That's the move," "Cut out the middle man," "I wish we just knew someone."

- With respect to Centra Tech's purported CEO "Michael Edwards" and purported CFO "Jessica Robinson," Sharma (via Sharma Cellphone-1) text-messaged Trapani on or about July 29, 2017, that they "Need to find someone who looks like Michael," "Team photos," "He's real lol," "Everyone real," "Except Jessica," "And Mike."  Later that day, Sharma (via Sharma Cellphone-1) text messaged Trapani:  "Gonna kill both Ceo and her," "Gonna say they were married and got into an accident."

- With respect to Centra Tech's purported money transmitter and other licenses in 38 states, Sharma had a text message conversation with Trapani and Farkas on or about August 30, 2017 about applying for state licenses that Centra Tech had previously represented it already held in 38 states.  For example, Sharma wrote in one message on or about August 30, 2017 to Trapani and Farkas:  "Gotta apply for all licenses," "Should I even say this."

- With respect to false claims in a white paper that Centra Tech published to investors on the company's website, Sharma had a text message conversation with Trapani and Farkas on or about September 29, 2017 about taking down (among other things) the version of the white paper that was on the company's website at the time.  During this conversation, Sharma (via a cellphone assigned a call number ending with "6091" that is referred to as "Sharma Cellphone-2" in the Complaint) sent text messages to Trapani and Farkas in which Sharma wrote (among other things):  "I rather cut any fufu," "Off right own," "Now," "Then worry," "Anything that doesn't exist current," "We need to remove," "Have them do it asap."  Later in the same conversation, Sharma (via Sharma Cellphone-2) wrote:  "I want a product page like [another company]," "Theirs is so nice."  Trapani wrote "Lol yeah no real product."  Sharma wrote:  "Yea but it doesn't say much," "And looks good," "We don't have a real product either right now," "So I wanna tighten up ship asap."

As detailed in the criminal Complaints and the Indictment, Sharma also sent and received email communications showing that he was well aware of the falsity of the aforementioned claims by Centra Tech in soliciting investments in Centra Tech:

- For example, with respect to Centra Tech's claimed partnership with Bancorp for the issuance of Centra Tech debit cards licensed by Visa and Mastercard, Sharma on or about August 30, 2017 forwarded to Farkas, among others, an email that Sharma had received from Bancorp directing Centra Tech to "CEASE AND DESIST FROM REPRESENTING THAT THE BANCORP BANK HAS ANY CONNECTION WITH, OR IS THE ISSUER OF ANY CARD PRODUCTS RELATED TO CENTRA TECH."

- On or about the same day, Sharma (via Sharma Cellphone-1) engaged in a text message conversation with Trapani and Farkas concerning the cease-and-desist notice from Bancorp. During this exchange, Sharma wrote: "Google Bitsset and Centra," "And contact anyone that has that image," "And ask them to remove it . . . . Or that language," "Saying we work Bancorp," "Od bad," "Their lawyer reached out." Later that day, Farkas text messaged Sharma and Trapani: "No Bancorp on it." Sharma responded: "In the bottom? . . . . U sure," "I thought I saw," "On press releases." Farkas wrote: "Just checked them all," "No Bancorp." Sharma responded: "Okay," "We gotta get that shit removed everywhere and blame freelancers lol . . . ."

- In addition, on or about October 13, 2017, Farkas, via one of his personal email accounts ("rjfarkas6@gmail.com") sent an email to Sharma, via one of his work email accounts ("sam@centra.tech") and one of his personal email accounts ("ssharma491@gmail.com") attaching Farkas' edits to an investor pitch deck dated August 15, 2017, promoting Centra Tech and its ICO. The pitch deck contained several misleading claims, including, among other things, that: (i) the Centra Card gives users "[a]ccess to more than 36 Million Points of Sale wherever Visa and/or Mastercard is accepted"; (ii) the Centra Card was "issued" by "Mastercard and Visa;" and (iii) Centra in January 2017 had a "Major Banking Partnership and license agreement signed with VISA USA Inc."

The Government's evidence against Sharma, as described in part in the 25-page Complaint and the 38-page Trapani Complaint, is conclusively strong. If convicted, and based on the Government's preliminary view of the Sentencing Guidelines post-trial and Sharma's prior criminal history, Sharma faces a potential Guidelines range of 324 to 405 months' imprisonment on the fraud charges in the Indictment.

## II.    Procedural History

On March 31, 2018, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, approved criminal Complaint number 18 Mag. 2695 (Exhibit A), charging Sharma and Farkas with conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, and wire fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, and 18 U.S.C. §§ 371, 1343, 1349 and 2. Sharma and Farkas were arrested in the Southern District of Florida on April 1, 2018, and ultimately ordered detained without prejudice to making a future bail application and removed to the Southern District of New York. On April 2, 2018, the United States Securities and Exchange Commission (the "SEC") also filed

a complaint against Sharma in the Southern District of New York, charging Sharma with civil federal securities law violations.

On April 18, 2018, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, approved the criminal Complaint number 18 Mag. 3271 (Exhibit B), Trapani with conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, and wire fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, and 18 U.S.C. §§ 371, 1343, 1349 and 2.  Trapani was arrested on April 19, 2018 in the Southern District of Florida.

Upon arriving in the Southern District of New York, Sharma had contested bail hearings in May 2018 during which the Government sought to have him detained pending trial. Transcripts of these hearings are attached as Exhibits C and D.  As described in further detail below, the Government argued, among other things, that Sharma had obstructed justice in connection with the Government's efforts to secure more than $59 million in Centra Tech investor funds when he lied, repeatedly, to law enforcement about a passcode that was needed to access those Centra Tech investor funds and when he refused for several days to comply with a Court ordered seizure warrant directing him to turn over that passcode.  Only upon Sharma's arrival in this District—and, apparently, when it became clear to him that he could be detained in connection with his refusal to provide the passcode to the $59 million in Centra Tech investor funds—did Sharma ultimately comply with the seizure warrant and admit to having previously lied about the passcode.  The Government was ultimately able to secure the investor funds, and, on May 11, 2018, Judge Freeman ordered that Sharma be released upon satisfying certain bail conditions, including, among others: (1) a personal recognizance bond of $5 million, co-signed by two financially responsible persons, and secured by $1 million in real property and/or cash; (2) home detention with GPS monitoring; (3) defendant's assets in the digital wallet containing his funds (9,000 in Ether, which the Court understands to be currently valued at approximately $6 million) to be placed in trust, with a trust agreement to be reviewed by the Government and found acceptable;[2] (4) prohibition against use or access to computers, smart phones, or Internet; (5) no contact with Centra Tech investors; and (6) Sharma to disclose all assets to Pretrial Services and USAO, including any assets of which he has possession, custody or control, including joint or business accounts, and including cash, cryptocurrency, or digital currency. May 11, 2018 Bail Order (Dkt. 13).

On June 7, 2018, Sharma met the above-listed bail conditions.  His bond was secured by $500,000 cash posted by his father, Rakesh Sharma, and $500,000 cash posted by his step-father, Mirghader Razavi.  Sharma signed his Appearance Bond, and declared, under penalty of perjury, that he had either read all the conditions of release set by the court or had them explained to [him]." June 7, 2018 Appearance Bond (Dkt. 33).  As a result, on June 7, 2018, Sharma was

---

[2] As described in Section III.B., below, the Court set this condition relying on representations by Sharma that the 9,000 Ether constituted his personal funds, and not Centra Tech Investor funds. Such representations were false, and the Government has now seized the 9,000 Ether based on a seizure warrant establishing that the funds constitute Centra Tech Investor funds, and are not, in fact, Sharma's.

released on bail. Upon his release, Sharma returned to the Miami, Florida area and is currently being supervised in the Southern District of Florida.

### III. The Court Should Revoke Sharma's Bail Due to his Bail Violations and Ongoing Efforts to Obstruct Justice

As described in further detail below, the Court should revoke Sharma's bail conditions because of his (a) violation of bail conditions by communicating with Centra Tech victim investors under the guise of his latest venture, which he calls "Phantom"; and (b) continued obstruction of justice related to Centra Tech victim investor funds.

#### A. Sharma's Violation of Bail Conditions by Communicating with Centra Tech Investors Regarding His New Company, "Phantom"

The Court should revoke Sharma's bail conditions because he is violating them by communicating with Centra Tech investors under the guise of a new venture, which he calls "Phantom," that purports to be a "rebranding" of Centra Tech. Sharma's original bail conditions, as described above, included a prohibition against use or access to computers, smart phones, or Internet, and also mandated that he have "[n]o contact with Centra Tech investors." As set forth below, less than one month after Sharma's prohibition against the use or access of computers, smart phones, or the Internet was lifted – under the auspices of his desire to watch television, review discovery in this case, and prepare his taxes – he began communicating with, among others, Centra Tech investors, in direct violation of his bail conditions.

On June 20, 2018, Sharma filed an application requesting that his bail conditions be modified to "permit use and access to the internet for the purpose of using his home television and other media players, such as Apple TV, Playstation, and Xbox." June 20, 2018 Letter (Dkt. 42). Before filing the June 20, 2018 letter, prior counsel for Sharma informed the Government that Sharma needed access to electronic devices in order to review discovery in this case and to prepare his taxes. Upon those representations, the Government consented to the request and that consent was reflected in Sharma's June 20, 2018 letter to the Court. On June 27, 2018, this Court referred Sharma's application to the Magistrate Judge on duty, and, on July 11, 2018, Sharma filed an application with Magistrate Judge Netburn, again with the Government's consent, to remove the prohibition against use or access to computers, smart phones, or the Internet. On July 11, 2018, Judge Netburn granted the modification request and the prohibition against Sharma's use or access to computers, smart phones, and the Internet was lifted. The prohibition against any contact with Centra Tech investors remained in place.

From approximately May 2018 through August 2018, in the course of communications with the Government regarding discovery matters, prior counsel for Sharma represented to the Government on multiple occasions that Sharma was the owner of Centra Tech, and the sole individual responsible for making decisions for and on behalf of Centra Tech. Indeed, Sharma currently makes decisions on behalf of Centra Tech in connection with a class action lawsuit—*Renzel* v. *Centra Tech, Inc., et al.*, 17 Civ. 24500 (JLK)—against Centra Tech and several individuals, including Sharma, Farkas, and Trapani, currently pending in the Southern District of Florida.

On or about August 3, 2018 – only three weeks after the prohibition against Sharma's use of electronic devices and the Internet was lifted – Sharma, using an account named "@Centra" on Medium, an online publishing platform and blog hosting site, (the "Centra Medium Account") posted a statement entitled "Dear Centra Community – Let the Truth be known" (the "August 3 Centra Medium Statement").[3]  A copy of the August 3 Centra Medium Statement is attached as Exhibit F.  The August 3 Centra Medium Statement makes a series of assertions attempting to defend the actions of Centra Tech and its principals to the "Centra Community" – *i.e.*, Centra Tech investors, among others – disputing the allegations in the criminal and SEC cases against Sharma, Farkas, and Trapani.  For example, the August 3 Centra Medium Statement begins as follows:

> **Dear Centra Community – Let the Truth be known**
>
> There has been silence for over 3 months, silence that has been forced upon us. It's unfortunate that the SEC has acted the way it has because it has affected thousands of Centra users worldwide.  When the events in April occurred our employees inevitably left, and refused to make any statements for their own interest. Now that we have the opportunity we want to shed some light on the events that happened, to an extent because this is an on-going legal battle at this point and some information is sensitive to the case. We want to voice the truth and move on from this into our next phase.

Ex. F at 1.  The August 3 Centra Medium Statement also informed the "Centra Community" that Centra Tech was "moving over the technology of Centrachain to an open-source decentralized community project called PHANTOM," and more information would be available on a website associated with "PHANTOM," "Phantom.org," or "from its social media pages." *Id*. at 5.

Significantly, records provided by Medium for the Centra Medium Account also show that it is directly linked to a Twitter account with the name "PhantomDotOrg."  Ex. G (Records

---

[3] The "@Centra" account is linked to Sharma by records provided by Medium showing that the Internet Protocol address ("IP address") 170.250.5.109 (the "170 IP Address") logged into and/or was connected to account user activity on the Centra Medium Account on multiple occasions on August 3, 2018, the same day that the August 3 Centra Medium Statement was posted.  *See* Ex. G (Records provided by Medium).  An IP address generally refers to a unique numerical label assigned to a digital device that accesses the Internet (*e.g.*, a computer or Internet router).  Records provided by Hotwire Communications, an Internet service provider, demonstrate that the 170 IP Address has been registered to Brielle Farkas, Sharma's girlfriend, at the apartment where Sharma currently lives.  *See* Ex. H (records provided by Hotwire Communications, an Internet service provider, with registration information for the 170 IP address).  Those records also show that the 170 IP Address is registered to a cellphone assigned a call number ending in 6091 and which this investigation has revealed is Sharma's cellphone. Ex. B, ¶ 24(f) (identifying the cellphone with the call number ending in 6091 as "Sharma Cellphone-2," and a phone number that Sharma has referred to previously as his "direct line").

provided by Medium).  On August 3, 2018, the same day as the August 3 Centra Medium Statement, a Twitter account with Twitter ID 884936655437791232 and the username and handle "@PhantomDotOrg," which now goes by the username and handle "@Phantom_Chain," (the "Phantom Twitter Account") posted a link to the August 3 Centra Medium Statement.  (*See* Website Capture of the Phantom Twitter Account (Ex. I at 13-14).  Records provided by Twitter for the Phantom Twitter Account demonstrate that the account is directly linked to Sharma.[4]

In addition to posting a link to the August 3 Centra Medium Statement, also on August 3, the Phantom Twitter Account posted several other messages and links to content about "Phantom" and it's purported business plan—"a decentralized network that allows the deployment of private smart contracts."  Ex. I at 13.  Also beginning on August 3, 2018, the Phantom Twitter Account began posting information about how holders of Centra Tech digital currency ("CTR") holders—*i.e.*, Centra Tech investors, among others—could file claims with Phantom for "PHANTOM fork credit," "Phantom ZINC," or other forms of credit or currency linked to "Phantom."  *See, e.g.*, Ex. H at 13 (August 3, 2018), 8-9 (August 28, 2018 post, linking to a guide that "will give you a step by step instruction on how to claim your PHANTOM ZINC forked coins from ARK/CTR"), 5 (September 2, 2018 post), 4 (September 5, 2018 providing update to "$CTR Users whom failed to move $CTR from an exchange by August 30th").  Social media communications between the Phantom Twitter Account and Centra token holders indicate that at least some individuals have attempted to file claims with Phantom to receive credit or exchanges of their CTR.  *See* Ex. K (Reddit posts regarding CTR claims); Ex. L (Twitter posts regarding CTR claims).

Similar posts and links touting Centra Tech's "Rebrand" into Phantom, including information about the option for CTR currency holders to exchange CTR for Phantom credit, were Tweeted or Retweeted on Centra Tech's Twitter account—@Centra_Card (the "Centra Tech Twitter Account").  *See* Website Capture of the Centra Tech Twitter Account (Ex. M).  For example, on August 3, 2018, the Centra Tech Twitter Account announced the "Centra Tech Rebrand = @PhantomDotOrg," and posted a link to the August 3, 2018 Medium Statement.  *Id.* at 2.  Additional posts on the Centra Tech Twitter Account provided information to CTR holders about filing claims for digital currencies supported by Phantom.  *See, e.g.*, *id.* at 5 (August 6, 2018 Tweet regarding providing credit, in the form of a digital currency called "XNC," for CTR).

As demonstrated above, the Centra Tech and Phantom outreach to the "Centra Tech Community," and CTR holders, which includes, of course, Centra Tech investors, are directly linked to Sharma.  There can be no serious dispute that Sharma is behind "Phantom," and that Sharma, perhaps with the assistance of others, has been behind the efforts to "Rebrand" Centra

---

[4] For example, Twitter records demonstrate that the Phantom Twitter Account is attached to Sharma Cellphone-2.  Ex. J at 1 (Twitter devices records for the Phantom Twitter Account).  In addition, the 170 IP Address that is linked to Sharma logged into and/or is connected to account user activity on the Phantom Twitter Account on multiple occasions from June 21, 2018 (the day after Sharma's June 20, 2018 letter requesting modification of his bail conditions so that he could have access to the Internet) through August 3, 2018.  *Id.* at 2-12 (Twitter IP records for the Phantom Twitter Account).

Tech into Phantom. Sharma's efforts to communicate with Centra Tech investors through social media posts and in connection with touting Phantom are a violation of his bail conditions and, standing alone, provide sufficient basis for revocation of his bail conditions. Moreover, Sharma's outreach to Centra Tech investors to persuade them into somehow exchanging their CTR for "Phantom credit" or other digital assets is evidence of Sharma attempting to buy off or otherwise placate Centra Tech victims – individuals who could be powerful witnesses against him at trial.

Sharma cannot be allowed to continue to engage in such serious and egregious conduct, and his bail should be revoked based on these violations alone.

### B. Sharma's Continuing Criminal Conduct through Misrepresentations to the Court about 9,000 Ether Representing Investor Funds that he Claimed as His Own, and Efforts to Fraudulently Obtain those Funds

In connection with Sharma's bail proceedings, the Government consistently sought detention, arguing, among other things, that Sharma had obstructed justice in connection with the Government's efforts to secure more than $59 million in Centra Tech investor funds. *See* Ex. C at 3-18 (May 2, 2018 hearing transcript). The Government's investigation into Centra Tech and the defendants' conduct has continued, and the Government has recently uncovered additional evidence demonstrating that not only did Sharma obstruct justice with respect to what was, in May 2018, approximately $59 million of Centra Tech investor funds, but that he also lied to this Court regarding what was then an additional $6 million in Centra Tech investor funds (in the form of 9,000 Ether) that he claimed constituted his personal funds. Since his release on bail conditions, Sharma has attempted to secure the 9,000 Ether funds to be placed in a trust for his legal and living expenses. His continued efforts to obstruct justice with respect to Centra Tech victim investor funds, premised on his previous lies to the Court about the 9,000 Ether not deriving from Centra Tech investors, constitute an ongoing obstruction of justice and, as a result, warrant revocation of his bail conditions.

As described in the criminal complaints and in the Government's August 22, 2018 Seizure Warrant affidavit for 9,000 Ether (the "9,000 Ether Seizure Warrant," attached as Ex. E (without attachments)), from approximately July 30, 2017 through October 5, 2017, Centra Tech raised funds from investors, primarily in the form of units of the digital currency called "Ether" or "ETH," via the company's ICO. Ex. E ¶ 15. During this ICO, Centra Tech accepted digital funds from investors, including Ether units, in exchange for digital tokens issued by Centra Tech, known as "Centra tokens" or "CTR tokens" or "CTRs" that could be traded, or exchanged, on various digital currency exchanges. *Id.* The Ether units that Centra Tech raised from investors can be grouped into two broad categories: thousands of Ether units provided by a company in South Korea called Bitsett in exchange for Centra tokens, and thousands of Ether units raised from a wide variety of other investors in exchange for Centra tokens. *Id.*

In approximately the fourth quarter of 2017, the SEC initiated an investigation of Centra Tech. As part of that investigation, the SEC issued a subpoena on or about November 29, 2017 to Centra Tech, care of Centra Tech's outside counsel at the law firm of Ballard Spahr LLP. The subpoena compelled Centra Tech to produce a variety of documents, including various

Case 1:18-cr-00340-LGS   Document 77   Filed 10/29/18   Page 10 of 19

Page 10

documents relating to Centra Tech co-founders, the defendants, Sharma, Farkas, and Trapani, documents sufficient to identify all digital and other assets held by or on behalf of Centra Tech, and documents sufficient to identify all investors who purchased any tokens offered by Centra Tech, among other categories of documents and information. *Id.*

As described in the 9,000 Ether Seizure Warrant, during Centra Tech's outside counsel's representation of Centra Tech, outside counsel engaged in several conversations with representatives of the SEC working on the SEC's investigation, and, later, conversations with the Government and the FBI with respect to the parallel criminal investigation relating to Centra Tech. During these conversations, Centra Tech's counsel represented, among other things, that, in response to concerns raised by the SEC about whether the company had taken measures to prevent the dissipation of Centra Tech investor funds, all of the Ether units raised by Centra Tech through its ICO had been transferred to a digital wallet (namely, the digital wallet referred to herein as the Seizure Wallet) with a unique passcode. *Id.* As a result, the Digital Wallet contained a total of approximately 100,000 Ether units (then worth more than $40 million in U.S. dollars). *Id.*

According to counsel, the passcode to the Digital Wallet had been in Sharma's possession, but had been reduced to a piece of paper that was divided into halves that were given to Farkas and Centra Tech's General Counsel Allan Shutt, respectively. The combination of those halves of the paper supposedly represented the only copy of the passcode to the Digital Wallet. *Id.* Counsel also represented that the half of the paper given to Farkas, containing part of the purported passcode, was placed in a safe deposit box in Farkas's name; and the other half of the paper given to Shutt, containing the remainder of the purported passcode, was placed in a safe deposit box in Shutt's name. *Id.*

On January 18, 2018, Centra Tech, through its outside counsel provided a letter to the SEC (the "January 18 Letter") enclosing a summary spreadsheet ("Summary Spreadsheet") that purported to show that Centra Tech received a total of approximately 91,000 Ether units in exchange for Centra tokens issued by Centra Tech during the Centra Tech ICO: a total of approximately 40,000 Ether units from so-called "Korea Partners," a reference to Bitsset, and a total of approximately 51,000 Ether units from hundreds of individual Centra token purchasers named in the Summary Spreadsheet. *Id.* On January 30, 2018, outside counsel for Centra Tech also represented that of the 100,000 Ether units that Centra Tech had transferred into the Seizure Wallet, approximately 40,000 of those Ether units had been raised from Bitsset and approximately 51,000 of those Ether units had been raised from other Centra token purchasers during Centra Tech's ICO (for a total of 91,000 Ether units). *Id.* Centra Tech further claimed that the remaining 9,000 Ether units belonged to Sharma and were proceeds and profits of his personal cryptocurrency trading unrelated to Centra Tech, and were not funds raised during Centra Tech's ICO from purchasers of Centra tokens. *Id.* As described below, Sharma has taken the same position.

On or about April 10, 2018, after Sharma and Farkas were arrested, Shutt provided his half of what was purported to be the passcode to the Digital Wallet to FBI agents in the Southern District of Florida in response to grand jury subpoenas that were previously served on Centra Tech. *Id.* On April 11, 2018, FBI agents in the Southern District of Florida retrieved Farkas's

half of what was purported to be the passcode to the Digital Wallet pursuant to a judicially authorized search warrant. *Id.*

After FBI agents in the Southern District of Florida gained possession of both Schutt's and Farkas's halves of paper, FBI agents—including an FBI agent who has significant training and experience in investigations of crimes involved digital currencies—attempted to use the purported complete passcode to transfer 91,000 Ether representing Centra Tech investor funds from the Digital Wallet to a secure digital wallet maintained by the FBI, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii). *Id.* After attempting to use the purported passcode to access the Digital Wallet, agents learned that the passcode formed by combining both Schutt's and Farkas's halves of paper did not work. In fact, upon inspecting the components of the purported passcode, agents learned that one aspect of the passcode provided access to an entirely different digital wallet of assets and that, therefore, the passcode that had been provided to the agents was false. *Id.*

On or about April 13, 2018, the Honorable Robert W. Lehrburger issued a seizure warrant pursuant to 18 U.S.C. § 981 for 91,000 of Ether representing what the Government believed at the time—based on representations by Centra Tech's counsel and Sharma's counsel—all of the Centra Tech investor funds in the Digital Wallet. The April 13 Seizure Warrant authorized law enforcement to secure the funds in the Digital Wallet by serving the seizure warrant on any person or entity in possession or in control of the property, and directing such persons or entities to effectuate the transfer. Copies of the April 13 Seizure Warrant were served on counsel for Sharma and Farkas, and Sharma and Farkas were therefore obligated to effectuate the transfer of the Investor Funds to law enforcement.

As described above, after Sharma and Farkas, who had been detained following their arrests in the Southern District of Florida in this case, were removed to the Southern District of New York, each of them had separate bail hearings in May 2018 at which the Government sought to have both of them detained pending trial. On April 25, 2018, the Government, Farkas, and his original counsel appeared for a bail hearing before United States Magistrate Judge Ona T. Wang of the Southern District of New York. At the bail hearing, the Government reported that efforts by the FBI to access the Seizure Wallet containing 100,000 Ether units (including at least 91,000 Ether units of victim-investor funds, which was then worth approximately $55 million) using the purported passcode obtained from Centra Tech had failed, and that neither Sharma nor Farkas had effectuated the transfer of 91,000 of those Ether units to the FBI as required by the April 13 Seizure Warrant. At the hearing, Farkas represented through his counsel that the purported passcode to the Digital Wallet had been provided (to Farkas and Shutt) by Sharma after the SEC inquired about the Digital Wallet, that Farkas believed in good faith that the purported passcode was in fact the actual passcode to the Digital Wallet, and that Farkas had learned while he and Sharma were incarcerated as a result of this case, Sharma had altered the actual passcode before providing it to Farkas and Shutt in response to the SEC's inquiries. Judge Wang ordered Farkas detained until a specific set of conditions were met, including the successful transfer to the FBI of 91,000 Ether units pursuant to the April 13 Seizure Warrant.

On May 1, 2018, the day before Sharma's first bail hearing, Sharma's counsel reported to the Government that the actual passcode to the Digital Wallet was on a piece of paper taped

Case 1:18-cr-00340-LGS   Document 77   Filed 10/29/18   Page 12 of 19

Page 12

underneath a drawer in the kitchen of the apartment in Miami, Florida where Sharma lived with his girlfriend, Brielle Farkas (the same apartment in which Sharma was arrested). FBI agents from the FBI's Miami Field Office went to that apartment on May 2, 2018, and, with Brielle Farkas's consent, the agents searched the kitchen and recovered a piece of paper with what appeared to be a passcode to a digital wallet. On May 2, 2018, using this passcode, the FBI successfully transferred the 91,000 Ether units, then worth approximately $59 million, from the Digital Wallet to a secure digital wallet maintained by the FBI pursuant to the April 13 Seizure Warrant. As explained below, because law enforcement had not become aware at that point in this investigation of evidence contradicting representations by Centra Tech that the remaining 9,000 Ether units were proceeds of Sharma's cryptocurrency trading that were not raised from Centra Tech investors, the 9,000 Ether units (which were, at the time, worth approximately $6 million) were left in the Digital Wallet.

On May 2, 2018, the Government, Sharma, and Sharma's counsel appeared for the first of two bail hearings before United States Magistrate Judge Debra C. Freeman of the Southern District of New York. At the first bail hearing, Sharma, through his counsel, admitted that he had previously provided a false passcode to the Digital Wallet in response to inquiries by the SEC. Ex. C at 19-20. Sharma's counsel—again, with Sharma present and participating in the hearing—also represented that the remaining 9,000 Ether units in the Digital Wallet (then worth about $6 million in U.S. dollars) belonged to Sharma and were not raised from Centra Tech investors. The Government explained that it was not aware at that time of evidence establishing probable cause to seize the remaining 9,000 Ether units, but noted that the Government's investigation remained ongoing and that if the Government later learned of facts establishing probable cause to seize those funds, the Government would seek to do so. Ex. C at 41. After Judge Freeman expressed concerns that Sharma could use those funds to flee if he were released on bail, Sharma's counsel proposed placing the 9,000 Ether units in a different digital wallet that would be controlled by a trustee appointed on behalf of Sharma and would not be accessible to Sharma. Ex. C at 41. To give Sharma and his counsel enough time to prepare a bail package addressing Judge Freeman's concerns, Judge Freeman continued Sharma's detention pending a further bail hearing.

On May 11, 2018, the parties appeared for a second bail hearing, during which Sharma proposed a bail package to Judge Freeman that included a requirement that the remaining 9,000 Ether units in the Digital Wallet (among other assets) be placed in a trust, to be managed by a trustee, that would permit the trustee to use funds in the trust solely for enumerated expenses such as, for example, legal fees and living expenses for Sharma, pursuant to a trust agreement to be approved by the Government and the Court. Sharma's counsel reiterated on behalf of Sharma that the 9,000 Ether units "is Mr. Sharma's money" (Ex. D at 7-8 ("as the Court knows, there . . . is a virtual wallet, which still contains 9,000 of ether which is valued right now today a little bit over $6 million that is Mr. Sharma's money")), and further that "although he would be the beneficiary of the trust, [he] would have no ability to invade the trust" (Ex. D at 8-9). Judge Freeman ordered that Sharma be released on specified bail conditions and that he be detained until those bail conditions had been satisfied, including a bail condition requiring that Sharma's assets in the Seizure Wallet "containing his funds (9,000 in ether, which the Court understands to be currently valued at approx. $6 million) to be placed in trust, with a trust agreement to be reviewed by the [Government] and found acceptable." May 11, 2018 Bail Order (Dkt. 13).

During the May 11 bail hearing, Sharma's counsel represented that Sharma would have no access to the funds 9,000 Ether in the trust. Ex. D at 7-8 ("Mr. Sharma would not have access to the $6 million if he were released on bail conditions."), 8-9 ("Mr. Sharma would have no ability, although he would be the beneficiary of the trust, would have no ability to invade the trust until such time as is set in the trust agreement, trust document.").

As described above, Sharma's bond was secured by $1 million in cash, and he was released on bail conditions on June 7, 2018. Upon his release, the parties continued to work on the details of the trust in which the 9,000 Ether that Sharma claimed represented his personal funds would be placed. At the same time, plaintiffs in a securities fraud class action against Centra Tech, Sharma, Trapani, and Farkas, among others – *Jacob Zowie Thomas Rensel* v. *Centra Tech, Inc. et al.*, 17 Civ. 24500 (JLK) (the "Private Class Action") – were seeking a preliminary injunction to freeze all of the assets in the Digital Wallet, including the 9,000 Ether that Sharma claimed was his own. The defendants in the class action case initially consented to the entry of a preliminary injunction freezing all 100,000 of the Ether units in the Seizure Wallet, even though the defendants contended that the remaining funds of about 9,000 Ether units in the Seizure Wallet belonged to Centra Tech but were supposedly unrelated to its ICO. (*See* ECF 17 Civ. 24500 (JLK), Dkt. 79 at 15 n.10.) However, the defendants in the Private Class Action subsequently revoked their consent to the seizure of the 9,000 Ether in the Digital Wallet, and the judge in that case did not freeze or otherwise protect the 9,000 Ether.

Upon the effective release of the 9,000 Ether from the freeze in the Private Class Action, Sharma began requesting that the Government – which maintained the passcode to the Digital Wallet (although, as described below, it appears that Sharma may have secretly kept a copy of that passcode) – immediately transfer the remaining 9,000 Ether in the Digital Wallet to a trust pursuant the conditions of his bail. In connection with this request, Sharma reiterated his position that the 9,000 Ether represented his own funds, and were not derived from Centra Tech investors.

However, as the Government indicated at the May 2, 2018 bail hearing, its investigation into Centra Tech and the funds in the Digital Wallet has continued, and that investigation has revealed that, contrary to Sharma's continued representations to the Government and the Court, the 9,000 Ether in the Digital Wallet in fact originated from Centra Tech investors. In particular, the Government has learned the following: (a) Centra Tech raised at least 100,000 Ether units during its ICO from investors who purchased Centra tokens, not 91,000 Ether units as claimed by Centra Tech and Sharma; (b) the 100,000 Ether units that Centra Tech transferred to the Digital Wallet, including the 9,000 Ether units that remained in the Digital Wallet after the seizure of the other 91,000 Ether units pursuant to the April 13 Seizure Warrant, are traceable in whole or substantial part to funds raised by Centra Tech during and as part of its ICO; and (c) there is evidence, described in the 9,000 Ether Seizure Warrant affidavit, establishing probable cause to believe that the remaining 9,000 Ether units in the Digital Wallet are traceable, in whole or substantial part, to transactions in which Centra Tech raised 7,500 Ether units from Bitset and 2,500 Ether units from one particular investor ("Investor-1") in exchange for Centra tokens during the ICO Period, and both of these transactions were not included in the 91,000-Ether-unit-figure that Centra Tech and Sharma previously claimed represented the total of all the funds raised through its ICO.

Based on the facts set forth in detail in the 9,000 Ether Seizure Warrant affidavit, Ex. E, the Honorable Katharine H. Parker, United States Magistrate Judge for the Southern District of New York, found that there is probable cause that the 9,000 Ether are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and authorized the Government to seize the remaining 9,000 Ether in the Digital Wallet. The 9,000 Ether is now in a secure digital wallet maintained by the FBI.

Prior to executing the 9,000 Ether Seizure Warrant, the Government notified Sharma through his counsel that the Government had uncovered evidence demonstrating probable cause to seize the 9,000 Ether (which Sharma's counsel may have intended to use to cover his legal fees for representing Sharma) and intended to seize the 9,000 Ether. The Government asked Sharma's counsel whether Sharma possessed a copy of the passcode or other means of accessing the 9,000 Ether units that had been left in the Digital Wallet, and Sharma's counsel stated that he could not confirm or deny that without divulging privileged communications between himself and his client. Thus, contrary to representations made by Sharma through his prior counsel during the May 11, 2018 bail hearing that "Sharma would have no ability" to access the 9,000 Ether, it appears as though Sharma secretly still maintained a copy of the passcode to the Digital Wallet and could have used that copy to dissipate the 9,000 Ether via any computer with Internet access.[5]

Now, as a result of the Government's continuing efforts to secure Centra Tech investor funds, all 100,000 ETH in the Digital Wallet have been secured. The Government's continuing efforts include investigating additional Ether raised by Centra Tech during the ICO, and which Sharma and his co-defendants may have misappropriated in other ways. Sharma's ongoing efforts to obstruct justice by first preventing the Government from securing 91,000 ETH in the Digital Wallet and then falsely representing to the Court that the additional 9,000 ETH comprised his own funds constitutes a felony pursuant to 18 U.S.C. 1512(c), which punishes the corrupt obstruction, influence, or impeding of any official proceeding.

Sharma has thus repeatedly misrepresented material facts to the SEC, the Government and the FBI, and this Court – all in an effort to hide his access to significant assets that belong to Centra Tech victims. Now, while on bail, Sharma's obstructive conduct is continuing, and the Court should revoke his bail conditions on that basis alone.

C. **Sharma's Failure to Disclose His Access to Significant Funds During a Pretrial Services Interview In the Southern District of Florida, and Prior Criminal and Fraudulent Conduct**

In connection with Sharma's prior bail proceedings, the Government also argued that Sharma's failure to disclose his significant assets to Pretrial Services and his prior criminal and

---

[5] To be clear, the Government does not herein allege that counsel for Centra Tech or prior or current counsel for Sharma knowingly misled the Court. Sharma himself is the source of the false statements that were told to the Court.

fraudulent conduct were additional factors that militated in favor of detention. Those facts remain relevant to the instant application, and are summarized below.

### 1. Sharma's Lies to Pretrial Services About his Significant Assets

On April 2, 2018, after his arrest in the Southern District of Florida and in connection with their initial presentments, Sharma declined to be interviewed by Pretrial Services in that District. After defense counsel conferred with the Government regarding potential bail conditions, Sharma agreed to be interviewed by Pretrial Services in the Southern District of Florida. Sharma was represented by counsel during his interview.

As described in Sharma's Pretrial Services Report, Sharma provided the following information to Pretrial Services regarding his employment history and assets:

- Sharma reported that he was employed full time at Centra Tech, which he had owned for the last nine months. Sharma stated he was earning $100,000 per year, but recently had to reduce his salary to $26,000 per year.
- Sharma reported that he had approximately $220,000 in checking and savings accounts.

In addition, bank records for one of Sharma's bank accounts[6] show that Sharma withdrew or transferred more than $500,000 from his checking and savings accounts between early February and early March 2018. In addition, Sharma transferred millions of dollars from cryptocurrency exchanges from approximately October 2017 through March 2018. Records obtained from Gemini Trust Company, LLC ("Gemini"), a digital asset platform for buying and selling digital assets, for Sharma's Gemini account demonstrate that, between approximately October 2017 and March 2018, Sharma exchanged several million dollars in cryptocurrencies. Sharma's October 2017 exchanges raised concern, causing an inquiry from Gemini to Sharma about the source of his assets and trading activity. In connection with that inquiry, Sharma told Gemini that his "current occupation is Sales Director for Miami Exotics Inc . . . and Cryptocurrency Investor/Trader for my own self-employed company of Sharma Technology Inc . . . I already earn over 350K a year from my W2 employment and I have a large amount of money still invested into cryptocurrencies." Ex. E (October 16, 2017 Communication from Sharma to Gemini). This contrasts with what Sharma reported to Pretrial Services about his employment and source of income, namely that he had earned $100,000 per year through his work for Centra Tech. Significantly, on or about March 20, 2018, approximately 12 days before his arrest, Sharma liquidated his Gemini account and withdrew more than $111,000 in cryptocurrency from that account.

In addition, shortly after the May 11, 2018 bail hearing in which Judge Freeman set bond conditions for Sharma, Sharma's counsel informed the Government that Sharma had approximately $300,000 in cash in the apartment he shared with his girlfriend, Brielle Farkas, and requested permission for Sharma's father, Rakesh Sharma, to go to the apartment, retrieve

---

[6] The Government has identified multiple bank accounts held in Sharma's name or in the name of one or more of his companies during the time period of the charged conspiracy.

the money, and put the money a bank account. Significantly, it was not until *after* he was ordered by a Court to disclose "all assets," (see Section II, above, describing Judge Freeman's order that Sharma disclose all assets to Pretrial Services and the Government) that Sharma finally disclosed the more than $300,000 in cash he had hidden in his apartment, notwithstanding multiple Pretrial Services interviews about his assets and two bail hearings during which the Government and the Court repeatedly raised concerns about Sharma's hidden assets.

### 2. Sharma's New York County Perjury Conviction, Arrest, Firearms Possession, and Prior Fraudulent Conduct

While the Centra Tech ICO was going on in the fall of 2017, a New York County Grand Jury returned an indictment on or about September 19, 2017 charging Sharma and Trapani with committing perjury in the first degree, a class D felony in violation of Section 210.15 of the New York Penal Law. This perjury indictment charged Sharma and Trapani with giving materially false testimony under oath in July 2017 as defense witnesses for Sharma in a criminal trial before New York County Criminal Court Judge Steven M. Statsinger in which Sharma was being prosecuted for driving while intoxicated in March 2016. In connection with the perjury charges, Sharma was arrested and Trapani surrendered in or about October 2017, and both were subsequently released from state custody (Sharma on bail, and Trapani on his own recognizance). On or about February 21, 2018, Sharma and Trapani pleaded guilty to perjury in the first degree for lying under oath. Sharma's sentencing for his felony perjury conviction was pending when he was arrested for securities and wire fraud charges in this case on April 1, 2018.

On April 1, in connection with his arrest at a residence where he was staying, Sharma advised the arresting agents that he owned a 9mm handgun, that it was inside the residence, and informed the agents where it was located. Agents then seized a Kimber 9mm handgun, with silver magazine, bullets, and a black cobra holster from Sharma's bedroom. Sharma has a concealed weapons permit. The Government understands that Sharma's possession of the firearm was not explicitly a violation of his New York State bail conditions. However, his possession of a firearm following his February conviction by way of a guilty plea in New York state for perjury is a federal crime pursuant to 18 U.S.C. § 922(g)(1).

Since Sharma's arrest in this case on April 1, 2018, this Office has obtained information regarding fraudulent loan documents executed by Sharma using an elderly priest's stolen identity in approximately December 2011 through January 2013—actions that are part of a larger investigation into an auto loan fraud scheme in which Sharma and other individuals were involved. According to evidence gathered during an ongoing, multi-year loan fraud investigation by the Department of Homeland Security's Homeland Security Investigations division ("DHS-HSI") in the Eastern District of New York, during the period from in or about December 2011 through in or about January 2013, Sharma stole identifying information from an 88-year-old priest (the "Priest"), and obtained approximately $395,000 in funds from approximately six lenders based on fraudulent loan applications that Sharma submitted using stolen identifying information for the Priest and by forging the Priest's signature on the applications.[7]

---

[7] This ongoing loan fraud investigation began in or about 2014 and has been conducted by DHS-HSI in conjunction with the United States Attorney's Office for the Eastern District of New

     During this period, Sharma's mother rented a room from the Priest in a multi-room apartment where the Priest also lived in Port Washington, Long Island. Because Sharma's mother represented to the Priest that she could not afford to pay rent at the going market rate, the Priest allowed Sharma's mother to pay below-market rent for the room on the understanding that she would assist the Priest with household chores that were hard for him to perform given his advanced age. From time to time in or about 2012, Sharma visited his mother's room within in the Priest's multi-room apartment, and on one or more occasions after Sharma visited the Priest noticed that mail addressed to him (which was accessible in common areas of the apartment) went missing (including mail that likely contained sensitive identifying information for the Priest).

     During the period from in or about December 2011 through in or about January 2013, Sharma submitted fraudulent loan applications to approximately six lenders using stolen identifying information for the Priest and by forging the Priest's signature on the applications. Each of the applications purported to be a request for a loan to the Priest and included stolen identifying information for the Priest, but requested that the loan funds be disbursed to one or more bank accounts associated with Sharma. At least five of these fraudulent loan applications listed the Priest as the borrower for the loan, but included Sharma's contact information — specifically, his cellphone with a call number ending with "3138" (the "Sharma 3138 Cellphone")[8] in the loan application in the event that the lender had any questions. Some of the loan applications also purported that the Priest was a director for a company—Revolutionz—that was registered to Sharma. During a call on or about October 2012 in which it appears that Sharma, using the Sharma 3138 Cellphone, or someone acting at Sharma's direction, spoke with the lender regarding questions about his loan application to that lender — a call that was recorded by the lender — Sharma pretended to be the Priest while providing false information to the lender for purposes of defrauding the lender into granting the loan application. All told, Sharma received a total of approximately $395,000 in funds disbursed to him from approximately six lenders based on fraudulent loan applications that Sharma submitted using stolen identifying information for the Priest. Sharma later paid the loans with proceeds of other loans that he obtained under his own name.

---

York, and has resulted thus far in (among other things) the arrest, prosecution, and conviction of a former co-conspirator of Sharma in the Eastern District of New York. *United States* v. *Gilberto Rosa*, 16 Cr. 101 (SJ) (E.D.N.Y.). During that loan fraud investigation, one of the DHS-HSI case agents with primary responsibility for that investigation obtained and reviewed documents from lenders who received fraudulent loan applications submitted by Sharma using stolen identifying for the Priest, he interviewed the Priest, and he obtained and reviewed an audio recording of a call between one of the lenders and Sharma. After the arrest of Sharma and unsealing of the criminal complaint against him in this case, that DHS-HSI case agent contacted this Office and brought to this Office's attention the information set forth in this letter about Sharma's prior loan fraud scheme relating to the Priest. The Priest passed away last year at the age of 93.

[8]    As shown by the criminal complaint against Centra Tech co-founder Trapani in this case, Sharma used a cellphone with the same call number to perpetrate the fraud scheme charged in this case.

## IV. Legal Standard

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*. requires a defendant's release pending trial "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); *see also United States* v. *Sabhnani*, 493 F.3d 63, 74–75 (2d Cir. 2007). "Because the law generally favors bail release, the [G]overnment carries a dual burden in seeking pre-trial detention." *Sabhnani*, 493 F.3d at 75. First, the Government must show that the defendant presents a risk of flight or is dangerous to another person or the community. If it satisfies this first requirement, the Government must then demonstrate that no condition or combination of conditions could reasonably assure the defendant's appearance in court as required or the community's safety. When the basis for detention is risk of flight, the Government must meet its burden by a preponderance. When the basis for detention is dangerousness, the Government must meet its burden by clear and convincing evidence. *See* 18 U.S.C. § 3142(f); *United States* v. *Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995).

A district court may revoke an order of release under 18 U.S.C. § 3148(b) if, after a hearing, the court determines either that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release," or that there is "clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3148(b)(1)(A)-(B). In addition, the district court must find that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," or that "the person is unlikely to abide by any condition or combination of conditions of release." § 3148(b)(2)(A)-(B). The statute "creates a rebuttable presumption that if there is probable cause to believe that, while on release, the defendant has committed a felony, there is no set of conditions that will assure that the person will not pose a danger" to the community. *See United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000) (citations and quotation marks omitted) (citing § 3148(b)(2)). That presumption does not disappear once the defendant has produced some rebuttal evidence, but "continues to be weighed along with other factors." *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

## V. Argument

Sharma's bail should be revoked and he should be detained pending trial.

Sharma has violated his bail conditions by communicating with Centra Tech victim investors about Phantom – including about transferring Centra Tech tokens to Phantom – and his bail should be revoked on that basis alone. Sharma, under the auspices of needing to use the Internet and electronic devices to watch television, review discovery, and do his taxes, was able to remove his prohibition against using the Internet and immediately began using the Internet to communicate with Centra Tech victim investors and manipulate them into participating in his new venture, Phantom. That is conduct that directly violates his bail conditions and which heightens what are already serious concerns regarding the economic danger he poses to the community.

In addition, since his arrest, Sharma has continued to obstruct justice in connection with his misrepresentations regarding 9,000 Ether in Centra Tech victim investor funds. This post-arrest conduct triggers a presumption of detention. While on release, Sharma has continued to transmit lies about the amount of funds Centra Tech raised during the ICO, and falsely claim that the 9,000 Ether in the Digital Wallet is his own. This conduct amounts to obstruction of justice, a federal felony offense in violation of 18 U.S.C. § 1512, and thus triggers the Section 3148(b) presumption of detention.

Sharma's post-arrest conduct demonstrates that he poses a danger to the community that cannot be ameliorated by conditions short of confinement. The Court cannot impose and enforce any conditions – besides detention – that will prevent this behavior.

As stated above, the Government opposes Sharma's request to modify his bail conditions to release $500,000 in cash that currently secures his bond. Should the Court revoke Sharma's bail conditions and order Sharma detained pending trial, the Government would not object to the release of the cash – once Sharma is in custody – that currently secures his bail. In the alternative, should the Court allow Sharma to remain released on bail conditions, the Government is open to conferring with defense counsel about what alternative methods of securing Sharma's bond – for example, property – are available to substitute for the $500,000 cash he is seeking to release.

The Court should order a revocation hearing. As set forth above, the Government respectfully submits that no conditions of release are adequate to reasonably assure Sharma's presence in court or the safety of the community, and therefore requests that the Court order the Sharma's detention pending trial.

    Respectfully submitted,

    ROBERT KHUZAMI
    Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

by: /s/ Negar Tekeei
    Samson Enzer
    Negar Tekeei
    Assistant United States Attorneys
    212-637-2342 / 2482

Attachments

cc: Gennaro Cariglio, Esq. (by email)
    *Counsel for Sohrab Sharma*