

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

March 26, 2020

**BY ECF AND EMAIL**
The Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *United States* v. *Sohrab Sharma and Robert Farkas*, 18 Cr. 340 (LGS)

Dear Judge Cave:

  Pursuant to an Order issued on March 18, 2020 (Dkt. 310) by United States District Judge Lorna G. Schofield, the above-referenced matter has been referred to Your Honor for the purpose of conducting a hearing pursuant to *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982) to ensure that defendants Sohrab Sharma and Robert Farkas have been advised of and knowingly and voluntarily waive potential conflicts of interest affecting certain of their respective attorneys in this case, as described more fully below.  In light of the national emergency relating to the spread of the deadly COVID-19 virus, all of the parties in this case and their respective counsel have consented to participating in the *Curcio* hearing telephonically for the safety of the Court and all of the participants at the hearing and to slow the spread of the virus.  The Magistrate Court clerk's office has scheduled the telephonic *Curcio* hearing to take place before Your Honor on March 27, 2020, at 12:00 p.m.

  A list of proposed *Curcio* questions for Your Honor to ask during the hearing is attached as Exhibit A, and letters to Judge Schofield that were filed with the Court on March 11 and 17, 2020 containing background relating to this *Curcio* hearing are attached as Exhibits B and C, respectively.

**RELEVANT BACKGROUND**

  On May 14, 2018, the above-captioned Indictment (the "Indictment") was returned.  The Indictment charges defendants Sohrab Sharma, Robert Farkas, and Raymond Trapani, with conspiring to commit, and committing, securities and wire fraud in connection with a scheme to defraud investors into parting with millions of dollars in assets for the purchase of digital tokens issued by the defendants' start-up company, Centra Tech, Inc., as part of the company's so-called "initial coin offering" or "ICO," through fraudulent misrepresentations and omissions.  The Indictment was brought by the Government as a result of its investigation of the charged fraud scheme, and the defendants have also been sued in a parallel civil enforcement action by the United

States Securities and Exchange Commission (the "SEC") arising from the SEC's parallel investigation of the scheme.

The attorneys of record in this case for the defendants are as follows:

- Defendant Sharma is represented in this matter by Denis P. Kelleher, Esq. of Talkin, Muccigrosso & Roberts LLP; Grant Fondo, Esq. and Melissa Brumer, Esq. or Goodwin Procter LLP; and Gennaro Cariglio, Jr., of the Law Offices of Gennaro Cariglio, Jr., P.A.

- Defendant Farkas is represented in this matter by Brian Klein, Esq. of Baker Marquart LLP; Sanford Talkin, Esq. of Talkin, Muccigrosso & Roberts LLP; and Paul D. Petruzzi, Esq. of the Law Offices of Paul D. Petruzzi, P.A.

- Defendant Trapani is represented by Joseph A. Bondy, Esq. of the Law Offices of Joseph A. Bondy and Stephanie R. Schuman, Esq. of Leaf Legal, P.C.

In connection with prior *Curcio* hearings in this case at which defendants Sharma and Farkas were advised of and waived other potential conflicts of interest affecting certain of their respective attorneys, the Court appointed Darren LaVerne, Esq. and Rita Glavin, Esq. pursuant to the Criminal Justice Act, to serve as independent *Curcio* counsel for Sharma and Farkas, respectively. For example, at separate *Curcio* hearings before Judge Schofield in the fall of 2019, Sharma and Farkas were advised of and waived any potential conflicts of interest arising from the fact that one of Sharma's attorneys, Mr. Talkin, and one of Farkas' attorneys, Mr. Kelleher, are partners of the same law firm, after Sharma and Farkas consulted their respective independent *Curcio* counsel (namely, Mr. LaVerne for Sharma and Ms. Glavin for Farkas) about those potential conflicts.

Defendants Sharma and Farkas have elected to proceed to a jury trial before Judge Schofield on the criminal fraud charges against them. Their co-defendant, Trapani, has pleaded guilty under a cooperation agreement with the Government and will be testifying as a cooperating witness for the Government during its case-in-chief against Sharma and Farkas at trial.

The potential conflicts to be addressed as the upcoming *Curcio* hearing are as follows, all of which recently came to the attention of the Government in the course of its preparations for trial in this case.

***The Potential Conflicts Relating to Sharma Defense Attorney Kelleher.*** The Government recently learned of a potential conflict relating to Mr. Kelleher, one of defendant Sharma's attorneys, and Sharma's co-defendant, cooperating Government witness Trapani. Before Sharma, Farkas and Trapani were indicted in this criminal fraud case, Trapani consulted Isabelle A. Kirshner, Esq., a partner at the law firm of Clayman & Rosenberg LLP, in 2018 about potentially retaining her and the Clayman firm to represent Trapani in connection with the parallel SEC investigation of the Centra Tech fraud scheme that Sharma, Farkas and Trapani were later indicted for in this case. At that time, Mr. Kelleher and Ms. Kirshner were both partners of the Clayman law firm. As explained in a letter filed with the Court on March 11, 2020 by Mr. Kelleher (attached

as Exhibit B), Mr. Kelleher has made the following representations to the Court, in substance and in part, concerning Trapani. (Dkt. 301). *First*, the Clayman firm was never retained by Trapani and Ms. Kirshner had only a very brief conversation with Trapani in or about 2018. (Dkt. 301). *Second*, Mr. Kelleher never knew about this potential representation in 2018 and had no conversations with Ms. Kirshner about this potential representation. (Dkt. 301). *Third*, in 2019, after Mr. Kelleher left the Clayman firm to join his current law firm, Mr. Kelleher was retained to represent Sharma in this criminal case in which Sharma's co-defendant, Trapani, will be testifying as a cooperating Government witness at trial against Sharma. (Dkt. 301). *Lastly*, Mr. Kelleher did not know about this case or about Trapani until after Mr. Kelleher joined his current firm. (Dkt. 301). Nevertheless, there is at least a theoretical risk that Mr. Kelleher might be less vigorous in defending Sharma in preparing for cross-examination of or actually cross-examining cooperating Government witness Trapani because Trapani had previously considered retaining a law firm where Mr. Kelleher was a partner. Judge Schofield has determined that a *Curcio* hearing is needed to ensure that Sharma has been advised of and knowingly and voluntary agrees to waive any potential conflicts of interest arising from Mr. Kelleher's prior law firm partner's interactions with Trapani. (Dkt. 302, 310).

   ***The Potential Conflicts Relating to Sharma Defense Attorney Fondo and Farkas Defense Attorney Klein***. The Government also recently learned of the existence of a joint defense agreement involving (1) a Government witness in this matter ("Witness-1"); (2) "Client-1," who was a client in another matter of Grant Fondo, Esq., counsel to defendant Sharma in this matter; and (3) "Client-2," who was a client in another matter of Brian Klein, Esq., counsel to defendant Farkas in this matter. (Dkt. 309). Pursuant to the joint defense agreement, the Government understands that counsel to Witness-1 engaged in privileged communications with Messrs. Fondo and Klein relating to litigation stemming from the sale of an online trading platform formerly operated by Witness-1, on which digital tokens issued by Sharma's and Farkas's company, Centra Tech, Inc. were bought and sold. (Dkt. 309). Messrs. Fondo and Klein have agreed not to use confidential or privileged information while cross-examining Witness-1, and correctly assert that it would be legally impermissible for them to do so, absent a waiver of the joint defense privilege by Witness-1. *See United States* v. *Pizzonia*, 415 F. Supp. 2d 168 (E.D.N.Y. 2006) ("An attorney is barred from making an argument or cross-examining a former client in a way that could affect the client adversely in a present proceeding. . . . Under the 'common interest' rule, the duty of confidentiality also extends to a co-defendant of a former client where counsel for both undertook a joint defense."). (Dkt. 309). Nevertheless, there is a theoretical risk that counsel to Sharma of Farkas might refrain from zealous cross-examination of Witness-1 out of fear of using privileged information and in a manner that could disadvantage Sharma and Farkas. (Dkt. 309). Judge Schofield has determined that a *Curcio* hearing is needed to ensure that Sharma and Farkas have been advised of and knowingly and voluntary agree to waive any potential conflicts of interest arising from the joint defense agreement between Messrs. Fondo and Klein and Witness-1. (Dkt. 310).

   Pursuant to Judge Schofield's Order of March 18, 2020 (Dkt. 310), this matter has been referred to Your Honor for the purpose of conducting a telephonic *Curcio* hearing on March 27, 2020 at 12:00 p.m. to address the potential conflicts listed above.

## **DISCUSSION**

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). A potential conflict exists where the interests of a defendant and attorney may diverge, but the attorney's performance has not yet been affected. *See Mickens* v. *Taylor*, 535 U.S. 162, 171-72 (2002).

Under *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), once a court is alerted to a possible conflict of interest, the Court has an initial "inquiry obligation" to determine the character of the possible conflict. *See Armienti* v. *United States*, 234 F.3d 820, 823 (2d Cir. 2000). If the court determines that the conflict between the defendant and his lawyer is so severe that "no rational defendant would knowingly and intentionally desire the conflicted lawyer's representation — the court is obliged to disqualify the attorney." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Otherwise, a court must advise the defendant of the dangers of the conflict, determine whether the defendant understands the risks presented and freely chooses to waive them, and afford the defendant ample opportunity to consult with independent counsel and to evaluate the situation before deciding how to proceed. *See United States* v. *Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986); *Curcio*, 680 F.2d at 888-90. "Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003).

The Second Circuit has set forth the parameters for a *Curcio* inquiry:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Id.* at 119.

In the case of a potential conflict, before accepting a defendant's waiver, "the court must advise the defendant of the dangers arising from the conflict, encourage the defendant to seek advice from independent counsel, and then determine whether the defendant understands the dangers of proceeding with conflicted counsel and knowingly and intelligently chooses to continue with the representation in spite of the conflict." *United States* v. *Stein*, 410 F. Supp. 2d 316, 324 (S.D.N.Y. 2006) (citing *United States* v. *Curcio*, 680 F.2d 881, 888-89 (2d Cir. 1982)).

Accordingly, as reflected in Exhibit A, we respectfully request that the Court "investigate the facts and details of the attorney's interests," *Levy*, 25 F.3d at 153, by asking Mr. Kelleher about the pertinent facts relating to his prior firm's interactions with cooperating Government witness Trapani and by asking Messrs. Fondo and Klein the pertinent facts about their joint defense agreement with Witness-1, as described above. *See United States* v. *Kliti*, 156 F.3d 150, 153 (2d Cir. 1998) ("In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." (citing *Levy*, 25 F.3d at 154)).

Assuming that such inquiry reveals only potential conflicts, Exhibit A includes proposed questions for the Court to ask defendants Sharma and Farkas to determine whether they knowingly and intelligently waive those potential conflicts.

Respectfully submitted,

CRAIG STEWART
Attorney for the United States
Acting Under 28 U.S.C. § 515

By: _____
Daniel Loss/ Samson Enzer / Negar Tekeei
Assistant United States Attorneys
(212) 637-6527 / -2342 / -2482

cc:     Denis P. Kelleher, Esq.
        Grant Fondo, Esq.
        Brian Klein, Esq.
        Darren LaVerne, Esq.
        Rita Glavin, Esq.
        All other counsel of record

Encls.

*United States* **v.** *Sohrab Sharma and Robert Farkas*, 18 Cr. 340 (LGS)
**Government's Proposed Inquiry for the March 27, 2020** *Curcio* **Hearing**

The Government respectfully requests the Court to include the following questions in its examinations of defendants Sohrab Sharma and Robert Farkas, pursuant to Federal Rule of Criminal Procedure 44(c) and the procedures outlined in *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982). In addition, the Government respectfully requests that the Court address both defendants personally, seek to elicit narrative answers from each of them, and give each of them opportunities to consider the Court's advice and review it with independent counsel prior to accepting a waiver, pursuant to *United States* v. *Rodriguez*, 968 F.2d 130, 138-39 (2d Cir. 1992).

**Proposed Inquiry of Defense Counsel, Denis P. Kelleher, Esq.**

1. Mr. Kelleher, in connection with your representation of Mr. Sharma in this case, have you become aware that the Government intends to call Mr. Sharma's co-defendant, Raymond Trapani, as a cooperating witness at trial against Mr. Sharma?

2. Mr. Kelleher, you submitted a letter on March 11, 2020 to Judge Schofield describing the circumstances of your prior law firm's interactions with Mr. Trapani. Are the representations in your letter true, accurate and complete to the best of your knowledge and belief?

3. Before filing the March 11 letter with the Court, did you review and discuss your letter, and the underlying facts and circumstances relating to your prior firm's interactions with Mr. Trapani that are described in the letter, with Mr. Sharma?

4. To ensure there are no misunderstandings, can you please summarize now for purposes of the record at this *Curcio* hearing the circumstances of your prior law firm's interactions with Mr. Trapani?

5. Did Mr. Trapani have an attorney-client relationship with your prior firm?

6. Without revealing the substance of the information, do you know whether anyone at your prior firm received any confidential information from Mr. Trapani relating to this case?

7. Have you ever spoken with Mr. Trapani?

8. Have you ever received, reviewed, or learned of any information that Mr. Trapani conveyed in confidence to anyone at your prior law firm?

9. Do you have an attorney-client relationship with Mr. Trapani?

10. What, if any, measures have you taken or will you take to ensure that your prior firm's interactions with Mr. Trapani will not undermine your ability to effectively represent Mr. Sharma in this case?

## **Proposed Inquiry of Defense Counsel, Grant Fondo, Esq.**

11. Mr. Fondo, have you reviewed the Government's March 17, 2020 letter to Judge Schofield describing the circumstances of a joint defense agreement between a client of yours in a prior matter referred to in the letter as "Client-1," and an individual referred to in the letter as "Witness-1"?

12. Mr. Fondo, without revealing their identities on the record, do you know the names of Client-1 and Witness-1? And are you familiar with the prior matter and joint defense agreement referenced in the Government's March 17 letter?

13. Mr. Fondo, in connection with your representation of Mr. Sharma in this case, have you become aware that the Government intends to call Witness-1 at trial against Mr. Sharma?

14. Is the summary in the Government's March 17 letter of your prior relationship with Witness-1 fair and accurate?

15. Before this hearing, did you review and discuss with Mr. Sharma the Government's March 17 letter, and the underlying facts and circumstances of your prior relationship with Witness-1 that are described in the letter?

16. To ensure there are no misunderstandings, can you please summarize now for purposes of the record at this *Curcio* hearing the circumstances of your prior relationship with Witness-1?

17. Do you have an attorney-client relationship with Witness-1?

18. As part of your prior representation of Client-1, did you and Client-1 enter into a joint defense agreement with Witness-1?

19. Have you ever spoken with Witness-1 or Witness-1's counsel?

20. Without revealing the substance of the information, as part of your prior representation of Client-1, have you ever received any confidential information from Witness-1 or Witness-1's counsel pursuant to the joint defense agreement that Client-1 had with Witness-1?

21. What, if any, measures have you taken or will you take to ensure that you do not violate the terms of the joint defense agreement in connection with your representation of Mr. Sharma in this case?

22. Have you agreed not to use any confidential information from Witness-1 or Witness-1's counsel in connection with your representation of Mr. Sharma in this case, including in cross-examination of Witness-1?

23. What, if any, measures have you taken or will you take to ensure that your prior relationship with Witness-1 will not undermine your representation of Mr. Sharma in this case?

## Proposed Inquiry of Defense Counsel Brian Klein

24. Mr. Klein, have you reviewed the Government's March 17, 2020 letter to Judge Schofield describing the circumstances of a joint defense agreement between a client of yours in a prior matter referred to in the letter as "Client-2," and the individual referred to in the letter as "Witness-1"?

25. Mr. Klein, without revealing their identities on the record, do you know the names of Client-2 and Witness-1? And are you familiar with the prior matter and joint defense agreement referenced in the Government's March 17 letter?

26. Mr. Klein, in connection with your representation of Mr. Farkas in this case, have you become aware that the Government intends to call Witness-1 at trial against Mr. Farkas?

27. Is the summary in the Government's March 17 letter of your prior relationship with Witness-1 fair and accurate?

28. Before this hearing, did you review and discuss with Mr. Farkas the Government's March 17 letter, and the underlying facts and circumstances of your prior relationship with Witness-1, that are described in the letter?

29. To ensure there are no misunderstandings, can you please summarize now for purposes of the record at this *Curcio* hearing the circumstances of your prior relationship with Witness-1?

30. Do you have an attorney-client relationship with Witness-1?

31. As part of your prior representation of Client-2, did you and Client-2 enter into a joint defense agreement with Witness-1?

32. Have you ever spoken with Witness-1 or Witness-1's counsel?

33. Without revealing the substance of the information, as part of your prior representation of Client-2, have you ever received any confidential information from Witness-1 or Witness-1's counsel pursuant to the joint defense agreement that Client-2 had with Witness-1?

34. What, if any, measures have you taken or will you take to ensure that you do not violate the terms of the joint defense agreement in connection with your representation of Mr. Farkas in this case?

35. Have you agreed not to use any confidential information from Witness-1 or Witness-1's counsel in connection with your representation of Mr. Farkas in this case, including in cross-examination of Witness-1?

36. What, if any, measures have you taken or will you take to ensure that your prior relationship with Witness-1 will not undermine your representation of Mr. Farkas in this case?

**Proposed Inquiry of Defendants Sohrab Sharma and Robert Farkas**

**A.     Introductory Questions to Establish Competence**

*Questions for defendant Sharma*

37. Mr. Sharma, how old are you?

38. How far did you go in school?

39. Do you currently consult a doctor for any condition?

40. Are you currently under the influence of alcohol or drugs of any kind?

41. Is there anything interfering with your ability to understand what is happening here today?

*Questions for defendant Farkas*

42. Mr. Farkas, how old are you?

43. How far did you go in school?

44. Do you currently consult a doctor for any condition?

45. Are you currently under the influence of alcohol or drugs of any kind?

46. Is there anything interfering with your ability to understand what is happening here today?

**B.     Circumstances of Representations**

*Questions for defendant Sharma*

47. Mr. Sharma, do you understand that you are being prosecuted by the United States Attorney's Office for the Southern District of New York?

48. Are you currently represented by Denis Kelleher and Grant Fondo?  Are you also represented by Gennaro Cariglio and Melissa Brumer?

49. Are you satisfied with Mr. Kelleher's services so far?

50. Are you satisfied with Mr. Fondo's services so far?

51. Do you wish to have Mr. Kelleher and Mr. Fondo continue to represent you?

*If the defendant wishes to continue to be represented by Messrs. Kelleher and Fondo:*

52. Is your choice to continue to be represented by Messrs. Kelleher and Fondo a choice that you have made voluntarily and of your own free will? *If no, inquire further.*

53. Has anyone told you that you are required to, or must, choose Mr. Kelleher or Mr. Fondo to continue to represent you? *If yes, inquire further.*

54. Has anyone made any promises to you, or offered any inducements to you, with regard to your choice of counsel in this case? *If yes, inquire further.*

55. Have you received and reviewed a copy of Mr. Kelleher's letter to Judge Schofield dated March 11, 2020. Have you had an opportunity to review that letter with Mr. Kelleher and discuss its contents with him?

56. Are you aware that the Government intends to call Raymond Trapani as a cooperating witness against you at trial?

57. Do you understand that one of Mr. Kelleher's law firm partners at his prior law firm interacted with Mr. Trapani in or about 2018 in regards to the parallel SEC investigation of Centra Tech?

58. Have you received and reviewed a copy of the Government's letter to Judge Schofield dated March 17, 2020? Have you had an opportunity to review that letter with Mr. Fondo and discuss its contents with him?

59. Are you aware that the Government intends to call Witness-1 as a witness against you at trial?

60. Do you have an understanding of what a joint defense agreement is? *Can you please explain in your own words what a joint defense agreement is?*

61. Are you aware that Mr. Fondo previously represented Client-1 in a matter in which Mr. Fondo and Client-1 had a joint defense agreement with Witness-1?

62. Are you aware that under that joint defense agreement, Mr. Fondo received information from Witness-1 or Witness-1's counsel?

*Questions for defendant Farkas*

63. Mr. Farkas, do you understand that you are being prosecuted by the United States Attorney's Office for the Southern District of New York?

64. Are you currently represented by Brian Klein? Are you also represented by Sanford Talkin and Paul Petruzzi?

65. Are you satisfied with Mr. Klein's services so far?

66. Do you wish to have Mr. Klein continue to represent you?

*If the defendant wishes to continue to be represented by Mr. Klein:*

67. Is your choice to continue to be represented by Mr. Klein a choice that you have made voluntarily and of your own free will?  *If no, inquire further.*

68. Has anyone told you that you are required to, or must, choose Mr. Klein to continue to represent you?  *If yes, inquire further.*

69. Has anyone made any promises to you, or offered any inducements to you, with regard to your choice of counsel in this case?  *If yes, inquire further.*

70. Have you received and reviewed a copy of the Government's letter to Judge Schofield dated March 17, 2020?  Have you had an opportunity to review that letter with Mr. Klein and discuss its contents with him?

71. Are you aware that the Government intends to call Witness-1 as a witness against you at trial?

72. Do you have an understanding of what a joint defense agreement is?  *Can you please explain in your own words what a joint defense agreement is?*

73. Are you aware that Mr. Klein previously represented Client-2 in a matter in which Mr. Klein and Client-2 had a joint defense agreement with Witness-1?

74. Are you aware that under that joint defense agreement, Mr. Klein received information from Witness-1 or Witness-1's counsel?

## C.    Both Defendants' Right to Conflict-Free Representation

*Questions for defendants Sharma and Farkas*

75. Mr. Sharma and Mr. Farkas, because of the potential conflicts of interest we are discussing today, I wish to advise both of you of certain matters.  You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings.  You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel.  If you cannot afford an attorney, an attorney will be appointed to represent you without cost.  *Do you understand this Mr. Sharma?  Do you understand this Mr. Farkas?*

76. It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind.  That is to say, they cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty.  The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who have no other possible interest of any kind in this matter.  *Do you understand this Mr. Sharma? Do you understand this Mr. Farkas?*

77. In other words, in every criminal case, including this one, the defendant is entitled to be represented by an attorney or attorneys whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests. *Do you understand this Mr. Sharma? Do you understand this Mr. Farkas?*

78. At trial in every criminal case, including this one, the defendant is entitled to have his attorney vigorously question, or cross-examine, the witnesses called by the Government at trial to prove its case against the defendant. *Do you understand this Mr. Sharma? Do you understand this Mr. Farkas?*

79. Whenever an attorney representing the defendant has a prior relationship with a Government witness who will be testifying against the defendant, it is possible that the attorney might have a sense of loyalty to the witness or have obligations to the witness that could interfere with the attorney's ability or willingness to vigorously cross-examine the witness at trial. *Do you understand this Mr. Sharma? Do you understand this Mr. Farkas?*

*Questions for defendant Sharma*

80. In your case, Mr. Sharma, do you understand that it is possible that Mr. Kelleher and Mr. Fondo might be influenced in the advice that each of them gives you and in the way that each of them defends you, by the fact that Mr. Kelleher's prior law firm was almost hired by Mr. Trapani or by the fact that Mr. Fondo was previously part of a joint defense with Witness-1?

81. And do you understand that this situation—having lawyers that have prior relationships with Government witnesses who will be testifying against you in this case—creates a risk to you that these lawyers may not be acting solely in your interests?

82. For example, Mr. Sharma, do you understand that if Mr. Trapani provided information in confidence to Mr. Kelleher's prior law firm, that Mr. Kelleher would have a duty not to use that information in your defense to prepare for cross-examination of Mr. Trapani?

83. Do you understand that because of this duty or for other reasons arising from Mr. Trapani's relationship with Mr. Kelleher's prior law firm, Mr. Kelleher might be less vigorous in preparing for cross-examination of Mr. Trapani or might be less vigorous in cross-examining Mr. Trapani at trial?

84. Mr. Kelleher may have a desire to advise you to follow a course of action that is in the interests of Mr. Trapani but that may be contrary to your own interests. Do you understand that?

85. Do you understand that this could conceivably affect the way in which Mr. Kelleher represents you going forward in your case? For example, Mr. Kelleher might be reluctant to make arguments at trial or in any court proceeding that casts Mr. Trapani in a negative light. Do you understand that?

86. Similarly, do you understand that if Witness-1, either directly or through counsel, provided information in confidence to Mr. Fondo pursuant to a joint defense agreement, that Mr. Fondo would have a duty not to use that information in your defense to prepare for cross-examination of Witness-1?

87. Do you understand that, in addition to having a duty, Mr. Fondo has in fact agreed not to use any confidential information that he may have from Witness-1 or Witness-1's counsel in connection with cross-examination of Witness-1?

88. Do you understand that because of Mr. Fondo's duty to Witness-1 or for other reasons arising from Mr. Fondo's relationship with Witness-1, Mr. Fondo might be less vigorous in preparing for cross-examination of Witness-1 or might be less vigorous in cross-examining Witness-1 at trial?

89. Mr. Fondo may have a desire to advise you to follow a course of action that is in the interests of Witness-1 but that may be contrary to your own interests. Do you understand that?

90. Do you understand that this could conceivably affect the way in which Mr. Fondo represents you going forward in your case? For example, Mr. Fondo might be reluctant to make arguments at trial or in any court proceeding that casts Witness-1 in a negative light. Do you understand that?

*Questions for defendant Farkas*

91. In your case, Mr. Farkas, do you understand that it is possible that Mr. Klein might be influenced in the advice that he gives you and in the way that he defends you, by the fact that Mr. Klein was previously part of a joint defense with Witness-1?

92. And do you understand that this situation—having a lawyer that has a prior relationship a with Government witness who will be testifying against you in this case—creates a risk to you that this lawyers may not be acting solely in your interests?

93. For example, do you understand that if Witness-1, either directly or through counsel, provided information in confidence to Mr. Klein pursuant to a joint defense agreement, that Mr. Klein would have a duty not to use that information in your defense to prepare for cross-examination of Witness-1?

94. Do you understand that, in addition to having a duty, Mr. Klein has in fact agreed not to use any confidential information that he may have from Witness-1 or Witness-1's counsel in connection with cross-examination of Witness-1?

95. Do you understand that because of Mr. Klein's duty to Witness-1 or for other reasons arising from Mr. Klein's relationship with Witness-1, Mr. Klein might be less vigorous in preparing for cross-examination of Witness-1 or might be less vigorous in cross-examining Witness-1 at trial?

96. Mr. Klein may have a desire to advise you to follow a course of action that is in the interests of Witness-1 but that may be contrary to your own interests. Do you understand that?

97. Do you understand that this could conceivably affect the way in which Mr. Klein represents you going forward in your case? For example, Mr. Klein might be reluctant to make arguments at trial or in any court proceeding that casts Witness-1 in a negative light. Do you understand that?

## D.     Opportunity to Seek Advice of Other Counsel

*Questions for defendant Sharma*

98. Mr. Sharma do you understand that you have a right to consult with an independent lawyer other than Messrs. Kelleher and Fondo in order to determine whether you wish for Messrs. Kelleher and Fondo to continue representing you?

99. Have you already consulted with such an attorney? Who?

100.  Have you had sufficient time to consult with Mr. LaVerne?

*Questions for defendant Farkas*

101.  Mr. Farkas do you understand that you have a right to consult with an independent lawyer other than Mr. Klein in order to determine whether you wish for Mr. Klein to continue representing you?

102.  Have you already consulted with such an attorney? Who?

103.  Have you had sufficient time to consult with Ms. Glavin?

*If Either Defendant has not yet Consulted with Conflict Counsel:*

104.  If you have not already consulted with such an attorney, do you understand that the Court will give you an opportunity to do so and that the Court encourages you to do so?

105.  Do you understand that if you cannot afford other counsel, the Court will appoint counsel to consult with you regarding these conflict of interest matters? Such an attorney will not be connected with your attorneys or the Government at all. Anything you tell that attorney will be a secret between you and the attorney. Do you understand that? Do you understand that the Court encourages you to consult with another lawyer about this conflict-of-interest issue?

106.  Do you understand that you may take some time to think about this and discuss it with your attorneys and with the attorney I appoint to give you independent advice?

107. Do you need court-appointed counsel for the purpose of consulting with you about these conflict-of-interest issues?

## E.    Both Defendants' Choice of Counsel

*Questions for defendants Sharma and Farkas*

108. Mr. Sharma, do you understand that you have the right not to have Messrs. Kelleher and Fondo represent you, based upon the existence of a potential conflict of interest?

109. Mr. Farkas, do you understand that you have the right not to have Mr. Klein represent you, based upon the existence of a potential conflict of interest?

110. It is the view of this Court, based on my experience as a judge, that it is generally ill-advised to proceed with an attorney who has a potential conflict of interest. *Do you understand this Mr. Sharma? Do you understand this Mr. Farkas?*

111. Mr. Sharma, do you understand that if I permit you to proceed with Messrs. Kelleher and Fondo, that you are waiving your right to be represented solely by a lawyer who has no conflict of interest?

112. Mr. Sharma, do you also understand that, as a result of that waiver, you will not be permitted to make any argument, on appeal or otherwise, based the potential conflict that we have discussed?  Do you agree to waive, or give up, any argument of that kind?

113. Mr. Farkas, do you understand that if I permit you to proceed with Mr. Klein, that you are waiving your right to be represented solely by a lawyer who has no conflict of interest?

114. Mr. Farkas, do you also understand that, as a result of that waiver, you will not be permitted to make any argument, on appeal or otherwise, based the potential conflict that we have discussed?  Do you agree to waive, or give up, any argument of that kind?

115. Now, Mr. Sharma to make sure you have understood what we have been discussing, please describe to me in your own words your understanding of the potential conflict or conflicts of interest that may arise in this case as a result of Mr. Kelleher's prior law firm's relationship with Mr. Trapani and Mr. Fondo's prior relationship with Witness-1?

116. Turning to you, Mr. Farkas, please describe to me in your own words your understanding of the potential conflict or conflicts of interest that may arise in this case as a result of Mr. Klein's prior relationship with Witness-1?

117. Mr. Sharma, is there anything that the Court has said that you wish to have explained further?

118. Mr. Farkas, is there anything that the Court has said that you wish to have explained further?

119. Mr. Sharma, do you still wish to proceed with Mr. Kelleher and Mr. Fondo as your attorneys in this case?

120. Mr. Farkas, do you still wish to proceed with Mr. Klein as your attorney in this case?

# EXHIBIT B

TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.

ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042

410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311

201-342-6665

VIA ECF

March 11, 2020

Hon. Lorna G. Schofield
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

RE:   United States v. Sohrab Sharma, et. al.
      18 Cr. 340

Dear Judge Schofield:

I represent the defendant Sohrab Sharma in the above-referenced indictment and submit this letter to notify the Court regarding an issue the government brought to my attention last week. Recently, during the course of the government preparing for trial, they came upon information that suggested a lawyer at my prior law firm Clayman & Rosenberg LLP (Clayman) may have represented the government's cooperating witness, Ray Trapani (Trapani), in January 2018 while I was still practicing law at Clayman.

I immediately investigated this issue by speaking to the lawyer in question and the managing partner at Clayman.  Based upon my investigation, Clayman was never retained, and the lawyer at Clayman had a very brief conversation with Trapani.  I can state that I never knew about this potential representation while I was at Clayman in 2018 nor did I have any conversations with the lawyer at Clayman about this potential representation.  In fact, I did not know about this indictment or Trapani until after I joined my current firm in July 2019.

The government does not disagree with this. While normally a *Curcio* hearing might be required in such a situation, the parties agree that there is no need unless the Court deems otherwise.  I have discussed this issue with my client, and he is prepared to waive any potential

conflict.  Should the Court order that a *Curcio* hearing is necessary, the parties have agreed that this hearing can be conducted in front of a magistrate and that Mr. Sharma can appear telephonically.

      Thank you for your consideration in this matter.

                  Respectfully submitted,


                  /s/ Denis Patrick Kelleher
                  Denis Patrick Kelleher, Esq.

Cc: All counsel (via ECF)

# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

March 17, 2020

<u>**BY ECF AND EMAIL**</u>

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re:  *United States v. Sohrab Sharma and Robert Farkas*, 18 Cr. 340 (LGS)

Dear Judge Schofield:

   Pursuant to the Court's March 11, 2020 Order (Dkt. 302), the Court directed the parties to schedule, by March 20, 2020, a *Curcio* hearing before the Magistrate Judge on duty relating to a potential conflict stemming from communications between Raymond Trapani, a cooperating Government witness, and a partner at the former law firm of Denis Kelleher, Esq., counsel to defendant Sharma (the "Kelleher *Curcio*"). In the interest of judicial economy, the Government respectfully requests that the Court adjourn the March 20, 2020 deadline and order that the Keller *Curcio* take place at a later date, in conjunction with a hearing relating to additional *Curcio*-related issues, as set forth herein.

   Specifically, the Government recently learned of the existence of a joint defense agreement involving (1) a Government witness in this matter ("Witness-1"); (2) "Client-1," who was a client in another matter of Grant Fondo, Esq., counsel to defendant Sharma in this matter; and (3) "Client-2," who was a client in another matter of Brian Klein, Esq., counsel to defendant Farkas in this matter. Pursuant to the joint defense agreement, the Government understands that counsel to Witness-1 engaged in privileged communications with Mr. Fondo and Mr. Klein relating to litigation stemming from the sale of an online trading platform formerly operated by Witness-1, on which digital tokens issued by Sharma's and Farkas's company, Centra Tech, Inc. were bought and sold.

   Mr. Fondo and Mr. Klein have agreed not to use confidential or privileged information while cross-examining Witness-1, and correctly assert that it would be legally impermissible for them to do so, absent a waiver of the joint defense privilege by Witness-1. *See United States v. Pizzonia*, 415 F. Supp. 2d 168 (E.D.N.Y. 2006) ("An attorney is barred from making an argument or cross-examining a former client in a way that could affect the client adversely in a present proceeding. . . . Under the 'common interest' rule, the duty of confidentiality also extends to a co-defendant of a former client where counsel for both undertook a joint defense."). Nevertheless,

Honorable Lorna G. Schofield
March 17, 2020
Page 2 of 2

the Government believes that, in an abundance of caution, a *Curcio* hearing is appropriate to address any potential conflict of interest arising from the joint defense agreement. For example, the hypothetical possibility that counsel to Sharma of Farkas might refrain from zealous cross examination of Witness-1 out of fear of using privileged information could, in theory, disadvantage the defendants and present a conflict of interest.

Accordingly, the Government respectfully requests that the Court order a consolidated *Curcio* hearing relating to the above-described potential conflicts relating to Messrs. Fondo and Klein, as well as the potential conflict relating to Mr. Kelleher as set forth in the March 11, 2020 Order (Dkt. 302). Furthermore, in order to provide an opportunity for Sharma and Farkas to discuss these issues with independent *Curcio* counsel, the Government respectfully requests that the Court adjourn the March 20 deadline set in the March 11, 2020 Order and permit the parties to schedule a *Curcio* hearing on a date this month that is convenient for the Magistrate Judge on duty, Messrs. Fondo, Klein, and Kelleher and their clients, and the attorneys from the Court's Criminal Justice Act panel who previously served as independent *Curcio* counsel for Sharma and Farkas (namely, Darren LaVerne, Esq. and Rita Glavin, Esq., respectively) In light of the national public health emergency relating to the rapid spread of the deadly COVID-19 virus, the Government respectfully proposes that the consolidated *Curcio* hearing be conducted by teleconference or videoconference as appropriate.

Respectfully submitted,

CRAIG STEWART
Attorney for the United States
Acting Under 28 U.S.C. § 515

By:   _/s/_____
      Daniel Loss/ Samson Enzer / Negar Tekeei
      Assistant United States Attorneys
      (212) 637-6527/ -2342 / -2482

cc:   All counsel of record
      Darren LaVerne, Esq.
      Rita Glavin, Esq.