

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 19, 2020

**BY ECF AND EMAIL**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States* v. *Sohrab Sharma*, S3 18 Cr. 340 (LGS)

Dear Judge Schofield:

The Government and counsel for defendant Sohrab Sharma, a/k/a "Sam Sharma," with his consent, respectfully submit this letter to jointly request that this Court accept the guilty plea entered by him on July 17, 2020 before Magistrate Judge Robert W. Lehrburger. Attached for the Court's consideration are: (1) a copy of the parties' plea agreement; (2) a copy of the superseding Information; (3) a copy of the transcript of the plea proceeding; and (4) a proposed Order accepting Sharma's plea. In addition, the parties respectfully request that the Court set a date for the defendant's sentencing and direct the Probation Department to prepare a Presentence Investigation Report.

Respectfully submitted,

ILAN T. GRAFF
Attorney for the United States
Acting Under 28 U.S.C. § 515

by: _____/s/ Negar Tekeei_____
Samson Enzer / Negar Tekeei / Daniel Loss
Assistant United States Attorneys
(212) 637-2342 / -2482 / -6527

cc: Counsel of Record (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **ORDER** |
| - v. - | : | |
| | : | S3 18 Cr. 340 (LGS) |
| SOHRAB SHARMA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, with defendant Sohrab Sharma's consent, his guilty plea allocution was made before a United States Magistrate Judge on July 17, 2020;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that defendant Sharma entered the guilty plea knowingly and voluntarily and that there was a sufficient factual basis for the guilty plea;

IT IS HEREBY ORDERED that defendant Sharma's guilty plea is accepted.

SO ORDERED:

Dated:      New York, New York
            July ___, 2020

_____
THE HONORABLE LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 7, 2020

<u>VIA EMAIL</u>

Gennaro Cariglio Jr., Esq.
8101 Biscayne Blvd, PH-701
Miami, Florida 33138
sobeachlaw@aol.com

Denis Patrick Kelleher, Esq.
Talkin, Muccigrosso & Roberts LLP
40 Exchange Place 18th Floor
New York, New York 10005
dkelleher@talkinlaw.com

Grant P. Fondo, Esq.
Goodwin Procter LLP
601 Marshall Street
Redwood City, California 94063
GFondo@goodwinlaw.com

Melissa Lee Brumer, Esq.
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
MBrumer@goodwinlaw.com

Re: <u>United States</u> v. <u>Sohrab Sharma</u>, S3 18 Cr. 340 (LGS)

Dear Messrs. Cariglio, Kelleher and Fondo, and Ms. Brumer:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from defendant Sohrab Sharma a/k/a "Sam Sharma" ("the defendant") to Counts One through Three of the above-referenced superseding criminal Information (the "Information").

Count One of the Information charges the defendant with conspiring from at least in or about July 2017 through in or about April 2018 to commit securities fraud, in connection with a scheme to raise funds from investors in a company called Centra Tech, Inc. ("Centra Tech") through the sale of unregistered securities styled as digital tokens based on fraudulent misrepresentations and omissions, in violation of Title 18, United States Code, Section 371. Count

2019.07.08

One carries a maximum sentence of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Count Two of the Information charges the defendant with conspiring from at least in or about July 2017 through in or about April 2018 to commit wire fraud, in connection with a scheme to raise funds from Centra Tech investors through the sale of digital tokens based on fraudulent misrepresentations and omissions, using interstate and foreign wires, in violation of Title 18, United States Code, Section 371. Count Two carries a maximum sentence of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Count Three of the Information charges the defendant with conspiring from at least in or about July 2017 through in or about April 2018 to commit mail fraud, in connection with a scheme to raise funds from Centra Tech investors, through the sale of digital tokens based on fraudulent misrepresentations and omissions using the mails or private or commercial interstate carriers, in violation of Title 18, United States Code, Section 371. Count Three carries a maximum sentence of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts One through Three is 15 years of imprisonment.

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for conspiring to commit securities, wire, and mail fraud from at least in or about July 2017 through in or about April 2018, in connection with a scheme to raise funds from Centra Tech investors through the sale of digital tokens issued as part of Centra Tech's ICO based on fraudulent misrepresentations and omissions, as charged in Counts One, Two, and Three of the Information, it being understood that this Agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts One, Two, and Three of the Information and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) any and all

property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses of conviction set forth in Counts One, Two, and Three, including but not limited to (a) a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained, and (b) all right, title and interest of the defendant in 100,000 Ether units that were seized by the Federal Bureau of Investigation from a digital wallet with the public address 0xda6f983076725cb2899205a16e16d1ed60a0067a in 2018 pursuant to judicially authorized seizure warrants (collectively the "Seized Ether"). The defendant agrees that he will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving any forfeitable property, including the Seized Ether, and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to any forfeitable property, including the Seized Ether, to the United States, including, but not limited to, the execution of all necessary documentation. The Government reserves the right to argue that, in addition to the Seized Ether, the defendant personally obtained other proceeds traceable to the commission of said offenses and to seek forfeiture of such other proceeds. The defendant reserves the right to dispute any legal or factual arguments regarding the forfeitability of such other proceeds. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

It is further understood that the defendant shall make restitution in an amount to be specified by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664. This amount shall be paid according to a plan established by the Court.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

## A. Offense Level

1. The Guidelines provisions in effect as of November 1, 2018 apply in this case.

2. Pursuant to U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2, Counts One, Two, and Three of the Information are grouped together as a single group because the offense level is determined largely on the basis of the total amount of loss or harm.

3. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is six.

4. Pursuant to U.S.S.G. § 2B1.1(b)(1)(L), because the loss amount resulting from the offenses is more than $25,000,000, but less than $65,000,000, 22 levels are added.

5. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offenses involved 10 or more victims, two levels are added.

6. Pursuant to U.S.S.G. §§ 2B1.1(b)(10)(B) and (C), because a substantial part of the fraudulent scheme was committed from outside the United States, and the offenses involved sophisticated means, two levels are added.

7. Pursuant to U.S.S.G. § 3B1.1(c), because the defendant was an organizer, leader, manager or supervisor of such criminal activity, two levels are added.

8. Pursuant to U.S.S.G. § 3C1.1, because the defendant willfully attempted to obstruct the administration of justice with respect to the investigation and prosecution of the instant offense based on the obstructive conduct described in footnote 1 below, and because the defendant's obstructive conduct related to the instant offense, two levels are added.[1]

9. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 33.

## B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has five criminal history points, calculated as follows:

1. The defendant was convicted on or about February 20, 2015 of driving under the influence with a blood alcohol level of .15 or higher, in violation of Florida Statute § 316.193(4). On or about January 19, 2016, he was sentenced to a term of probation of 12 months. Pursuant to § 4A1.1(c), this conviction results in one criminal history point.

2. The defendant was convicted on or about July 20, 2017 of driving while intoxicated, in violation of New York Vehicle and Traffic Law § 1192.03. On or about July 20, 2017, he was

---

[1] The parties agree that the defendant engaged in the following obstructive conduct: With respect to an investigation being conducted by the United States Securities and Exchange Commission (the "SEC") relating to Centra Tech and its efforts to raise funds from investors through fraud, the defendant caused Centra Tech to relay false representations to the SEC concerning alleged measures that Centra Tech had supposedly taken to prevent the dissipation of investor assets in Centra Tech's possession that Centra Tech had raised from investors through fraud. For example, the defendant caused Centra Tech's outside counsel to misrepresent to the SEC that he had surrendered the sole passcode needed to access such investor assets when, in fact, he had secretly maintained a copy of the passcode. The parties further agree that this conduct is sufficient to warrant this two-level enhancement under U.S.S.G. § 3C1.1. The Government reserves the right to argue that the defendant carried out additional obstructive conduct justifying the application of this enhancement, and the right to make arguments concerning the consideration of such other acts to the sentencing factors set forth in 18 U.S.C. § 3553(a). The defendant reserves the right to dispute any legal or factual arguments regarding such other acts.

sentenced to a conditional discharge. Pursuant to § 4A1.1(c), this conviction results in one criminal history point.

3. The defendant was convicted on or about February 21, 2018 of perjury in the first degree, in violation of New York Penal Law § 210.15. On or about August 14, 2019, he was sentenced to a term of probation of five years. Pursuant to § 4A1.1(c), this conviction results in one criminal history point.

4. The defendant committed the instant offense from at least on or about July 30, 2017 through at least in or about April 2018, while under the conditional discharge sentence discussed in paragraph 2 above. Pursuant to § 4A1.1(d) and Application Note 4 to U.S.S.G. § 4A.1.1, this results in two criminal history points.

In accordance with the foregoing, the defendant is in Criminal History Category is III.

## C. Sentencing Range

Based upon the calculations set forth above, the defendant's applicable Guidelines range is 168 to 210 months' imprisonment. However, pursuant to U.S.S.G. § 5G1.1(a), because the statutorily authorized maximum sentence for Counts One, Two, and Three is 180 months' imprisonment, which is less than the maximum of the applicable Guidelines range, the defendant's stipulated Guidelines range is 168 to 180 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 33, the applicable fine range is $35,000 to $350,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted, except that the defendant reserves the right to argue that the defendant's Criminal History Category should be II on the grounds that a higher Criminal History Category would substantially over-represent the seriousness of the defendant's criminal history under U.S.S.G. § 4A1.3(b)(1). If the Court grants the defendant's request for a downward departure and finds that the defendant's Criminal History Category should be II, then the defendant's applicable Guidelines range would be 151 to 188 months' imprisonment, which, because the statutorily authorized maximum sentence for Counts One, Two, and Three is 180 months' imprisonment, would result in a Guidelines range of 151 to 180 months' imprisonment. The Government maintains, and reserves the right to argue further, that the defendant's Criminal History Category should be III and that no downward departure under U.S.S.G. § 4A1.3(b)(1) is warranted. Neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreements that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, see U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 168 to 180 months' imprisonment and (ii) that the Government will not appeal any sentence within the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of

imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine amount that is less than or equal to $350,000, and the Government agrees not to appeal any fine amount that is greater than or equal to $35,000. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

The defendant hereby waives any challenge to Counts One, Two, and Three of the Information based on claims of multiplicity or duplicity.

2019.07.08

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

The parties understand that this Agreement reflects the special facts of this case and is not intended as precedent for other cases.

Apart from any written Proffer Agreements that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

ILAN T. GRAFF
Attorney for the United States
Acting Under 28 U.S.C. § 515

By:  _____
Samson Enzer / Negar Tekeei / Daniel Loss
Assistant United States Attorneys
(212) 637-2342 / -2482 / -6527

APPROVED:

_____
Damian Williams
Chief, Securities and Commodities Fraud Unit

AGREED AND CONSENTED TO:

_____
SOHRAB SHARMA
Defendant

APPROVED:

_____
GENNARO CARIGLIO JR., Esq.
DENIS PATRICK KELLEHER, Esq.
GRANT P. FONDO, Esq.
MELISSA LEE DRUMER, Esq.
Attorneys for Sohrab Sharma

7/13/20
DATE

7/13/20
DATE

2019.07.08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA      :     SUPERSEDING INFORMATION
                              :
          - v. -              :
                              :     S3 18 Cr. 340 (LGS)
SOHRAB SHARMA,                :
          a/k/a "Sam Sharma," :
                              :
               Defendant.     :
                              :
- - - - - - - - - - - - - - - X
```

### COUNT ONE
**(Conspiracy to Commit Securities Fraud as to Centra Tech)**

The Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, charges:

### Background

1.   At all times relevant to this Information, Centra Tech, Inc. ("Centra Tech") was a company headquartered in Miami Beach, Florida, that purported to offer various cryptocurrency-related financial products.  For example, Centra Tech claimed to have a cryptocurrency debit card that allowed users to spend cryptocurrencies such as Bitcoin and Ether to make purchases in real-time at various stores and other establishments that were part of the networks of merchant locations that accept Visa-payment cards and Mastercard-payment cards.

2.   SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and co-conspirators not named as defendants herein ("CC-1," and "CC-2," respectively), founded Centra Tech in or about July 2017.

3.   At various times relevant to this Information, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, served multiple roles at Centra Tech, including as Centra Tech's President and Chief Technology Officer until approximately late October 2017, and Director of Centra Tech.

4.   From approximately in or about July 2017 through in or about October 2017, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, sought to raise funds for Centra Tech through, among other means, an "initial coin offering" (the "ICO") in which they solicited members of the investing public to buy unregistered securities, in the form of digital tokens that were issued by Centra Tech ("Centra tokens" or "CTR tokens").  At various times during and after the ICO, Centra tokens traded under the symbol "CTR" on a secondary cryptocurrency exchange called "Ether Delta" (the "Ether Delta Exchange"), which was based in New York, New York.

5.   From approximately on or about July 30, 2017 through in or about April 2018, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, engaged in a scheme to defraud investors into buying CTR tokens through fraudulent misrepresentations and omissions.  Through this fraudulent scheme, SHARMA, CC-1 and CC-2 solicited digital funds worth more than $25 million from investors who purchased CTR tokens issued by Centra Tech.

2

6.   For example, in soliciting investments in Centra Tech, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, made and caused Centra Tech to make the following fraudulent misrepresentations and omissions, among others:

a.   SHARMA, CC-1 and CC-2 claimed to investors that Centra Tech had partnerships with Bancorp Incorporated, Visa Incorporated, and Mastercard Incorporated to issue Centra Tech debit cards that would enable users to spend cryptocurrencies to make purchases in-real time at establishments that were part of the networks of merchant locations that accept Visa-payment cards and Mastercard-payment cards.  In fact, as SHARMA, CC-1 and CC-2 well knew, Centra Tech had no such partnerships with Bancorp, Visa or Mastercard.

b.   SHARMA, CC-1 and CC-2 claimed to investors that Centra Tech's executive team included two purported senior executives named "Michael Edwards" and "Jessica Robinson" who had impressive work histories and academic credentials.  In fact, as SHARMA, CC-1 and CC-2 well knew, neither "Michael Edwards" nor "Jessica Robinson" was a real person.

c.   SHARMA, CC-1 and CC-2 claimed to investors that Centra Tech held money transmitter and other relevant licenses in 38 states.  In fact, as SHARMA, CC-1 and CC-2 well knew, Centra Tech did not have such licenses in all or nearly all of those states.

3

## Statutory Allegations

7.    From at least in or about July 2017, up to and including in or about April 2018, in the Southern District of New York and elsewhere, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

8.    It was a part and an object of the conspiracy that SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses

4

of business which operated and would operate as a fraud and deceit upon persons.

Overt Acts

9.   In furtherance of the conspiracy and to effect its illegal object, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, in addition to others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   In approximately July and August 2017, SHARMA, CC-1 and CC-2 caused Centra Tech to publish white papers on the internet containing fraudulent misrepresentations and omissions to deceive investors into buying CTR tokens.

b.   Between on or about July 30, 2017 and on or about September 26, 2017, SHARMA, CC-1 and CC-2 obtained funds for the purchase of CTR tokens from at least five ICO investors who resided in New York, New York.

c.   Between in or about July 2017 and in or about October 2017, SHARMA, CC-1 and CC-2 used funds raised from Centra Tech investors to purchase CTR tokens traded on the Ether Delta Exchange based in New York, New York at above-market prices for the purpose of artificially inflating the publicly quoted market price of CTR tokens.

d.   In or about November 2017, CC-1 and others attended a blockchain technology conference in New York, New York on behalf

5

of Centra Tech for the purpose of promoting Centra Tech and its products.

e.  In or about August 2017, SHARMA caused Centra Tech to use the United States Postal Service to deliver a letter to an investor ("Investor-1") located in New York, New York, thanking Investor-1 and advising Investor-1 of the ability to receive bonus CTRs.

f.  In or about September 2017, SHARMA, CC-1 and CC-2 caused multiple cards bearing the "Centra Tech" logo that falsely included the Visa and/or Bancorp logos to be sent and delivered by commercial interstate mail carriers to Centra Tech victim investors in the United States and elsewhere.

(Title 18, United States Code, Section 371.)

### COUNT TWO
### (Conspiracy to Commit Wire Fraud as to Centra Tech)

The Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, further charges:

10.  The allegations contained in paragraphs 1 through 6 and 9 of this Information are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

11.  From at least in or about July 2017, up to and including in or about April 2018, in the Southern District of New York and elsewhere, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly did combine,

6

conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

12.   It was a part and an object of the conspiracy that SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

13.   In furtherance of the conspiracy and to effect its illegal object, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, in addition to others known and unknown, committed the overt acts listed above in paragraphs 9(a) through (f) of this Information, among others, in the Southern District of New York and elsewhere.

　　　　(Title 18, United States Code, Section 371.)

## COUNT THREE
### (Conspiracy to Commit Mail Fraud as to Centra Tech)

The Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, further charges:

14.   The allegations contained in paragraphs 1 through 6 and 9 of this Information are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

15.   From at least in or about July 2017, up to and including in or about April 2018, in the Southern District of New York and elsewhere, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, mail fraud, in violation of Title 18, United States Code, Section 1341.

16.   It was a part and an object of the conspiracy that SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposit and cause to be deposited matters and things to be sent

8

and delivered by private and commercial interstate carriers, and knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

17. In furtherance of the conspiracy and to effect its illegal object, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, as well as CC-1 and CC-2, in addition to others known and unknown, committed the overt acts listed above in paragraphs 9(a) through (f) of this Information, among others, in the Southern District of New York and elsewhere.

(Title 18, United States Code, Section 371.)

### FORFEITURE ALLEGATIONS

18. As a result of committing one or more of the offenses charged in Counts One through Three of this Information, SOHRAB SHARMA, a/k/a "Sam Sharma," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that SHARMA personally obtained and

9

the following specific property: (i) 91,000 Ether units, seized by law enforcement from a digital wallet with the public address 0xda6f983076725cb2899205al6e16dled60a0067a on or about May 2, 2018, and (ii) 9,000 Ether units, seized by law enforcement from a digital wallet with the public address 0xda6f983076725cb2899205al6e16dled60a0067a on or about October 22, 2018.

<u>**Substitute Assets Provision**</u>

19.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a.    cannot be located upon the exercise of due diligence;

   b.    has been transferred or sold to, or deposited with, a third party;

   c.    has been placed beyond the jurisdiction of the court;

   d.    has been substantially diminished in value; or

   e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

*Ilan T. Graff /nt*

ILAN T. GRAFF
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

- v. -

SOHRAB SHARMA,
a/k/a "Sam Sharma,"

Defendant.

<u>**SUPERSEDING INFORMATION**</u>

S3 18 Cr. 340 (LGS)

(18 U.S.C. § 371.)

ILAN T. GRAFF
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515

K7HVSHAP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          18 CR 340 (LGS)

5    SOHRAB SHARMA,
     a/k/a "Sam Sharma,"
6
                   Defendant.             REMOTE TELECONFERENCE
7                                         (Plea)
     ------------------------------x
8
                                          New York, N.Y.
9                                         July 17, 2020
                                          12:05 p.m.
10

11   Before:

12                   HON. ROBERT W. LEHRBURGER,

13                                        Magistrate Judge

14                          APPEARANCES
15

16   AUDREY STRAUSS,
          Acting United States Attorney for the
17        Southern District of New York
     NEGAR TEKEEI
18   SAMSON A. ENZER
     DANIEL LOSS
19        Assistant United States Attorneys

20   GENNARO CARIGLIO, JR.
     DENIS P. KELLEHER, JR.
21   GRANT P. FONDO
     MELISSA L. BRUMER
22        Attorneys for Defendant

23   ALSO PRESENT:  BRANDON RACZ, FBI
                    KRISTIN ALLAIN, FBI
24

25

K7HVSHAP

```
 1                  (Remote teleconference)

 2                  (Case called)

 3                  MS. TEKEEI:  Good afternoon, your Honor.

 4                  Negar Tekeei, on behalf of the United States.

 5                  And joining me are Sam Enzer and Daniel Loss, also for

 6       the United States, as well as FBI Special Agents Brandon Racz

 7       and Kristin Allain.

 8                  THE COURT:  What about for the defense?

 9                  MR. CARIGLIO:  Good afternoon, your Honor.

10                  Gennaro Cariglio, Jr., along with Denis Kelleher,

11       Grant Fondo, and Melissa Brumer, on behalf of Sam Sharma.

12                  THE COURT:  All right.  Good afternoon, all.

13                  Good afternoon, Mr. Sharma.

14                  I want to make sure that everyone can hear

15       appropriately.  And let me just ask, Ms. Tekeei, how do you

16       pronounce your name?  I'm sorry.

17                  MS. TEKEEI:  No problem.  It's Tekeei.

18                  THE COURT:  Ms. Tekeei, can you hear everybody who has

19       spoken so far?

20                  MS. TEKEEI:  Yes, your Honor.

21                  THE COURT:  And Mr. Cariglio, can you?

22                  MR. CARIGLIO:  Yes, your Honor.

23                  THE COURT:  And Mr. Sharma, can you hear counsel for

24       both the government, your own counsel, and myself?

25                  THE DEFENDANT:  Yes, your Honor.
```

K7HVSHAP

1          THE COURT:  Terrific.

2          And madam court reporter, can you hear everybody who

3    has spoken?

4          THE COURT REPORTER:  Yes, your Honor.

5          THE COURT:  All right.

6          At any time anyone cannot hear, please speak up and we

7    will remedy that.  Otherwise, please refrain from interrupting.

8    And when someone speaks, please say your name for the court

9    reporter so that she knows who is speaking.

10          We are proceeding by telephone, which is on a public

11    line available to the public and the press, but on a

12    listen-only basis.  If anyone actually is listening, please

13    mute any device so that no noise adds to the proceedings.

14          So as you all know, we are in the midst of the

15    COVID-19 pandemic.  And I am conducting this proceeding by

16    telephone pursuant to the authority provided by the

17    congressional act known as the CARES Act and the standing

18    orders issued by the chief judge of this Court pursuant to that

19    act.

20          Under that act, I find that videoconferencing is not

21    reasonably available to conduct this proceeding.  The

22    facilities for videoconferencing appearances are extremely

23    limited and there is insufficient availability to allow all

24    persons who wish to use it.

25          In addition, under the CARES Act, in the case of any

K7HVSHAP

1    plea or sentence conducted by videoconference or telephone, the

2    district judge must also determine whether the proceeding

3    cannot be further delayed without serious harm to the interests

4    of justice.  In that regard, I note that Judge Schofield has

5    issued an order to that effect.  I am going to read most of the

6    order into the record.  It is dated July 16, 2020, docket

7    number 361.

8         It says:  Whereas, defendant Sohrab Sharma is

9    scheduled to enter a guilty plea before The Honorable Robert W.

10   Lehrburger, United States Magistrate Judge, on July 17th, 2020.

11        And whereas, the defendant has requested that his

12   guilty plea be taken remotely by videoconference or by

13   telephone, if videoconference is not reasonably available.

14        And whereas, the ongoing COVID-19 pandemic

15   necessitates the proceeding take place remotely.

16        And whereas, the CARES Act and the standing order of

17   Chief Judge Colleen McMahon allow for guilty pleas to be taken

18   by videoconference, or teleconference if video teleconferencing

19   is not reasonably available, subject to certain findings made

20   by the district judge.

21        And whereas, the Court understands that The Honorable

22   Robert W. Lehrburger shall hear the defendant's plea by

23   telephone, because videoconference is not reasonably available.

24        The Court hereby finds that because defendant Sohrab

25   Sharma has consented to proceeding remotely, and for the

K7HVSHAP

1    reasons set forth in the parties' application dated July 15,

2    2020, the plea proceeding cannot be further delayed without

3    serious harm to the interests of justice, and may proceed

4    remotely by telephone conference.

5            And further to that regard, I just want to make sure

6    that the defendant continues to consent to proceed by telephone

7    and is waiving his right to be physically present in court.

8            Counsel, have you consulted with your client about

9    that issue?

10           MR. CARIGLIO:  Yes, your Honor.  And we filled out all

11   the waivers and consent forms and forwarded them to the clerk

12   yesterday.

13           THE COURT:  And I do have those forms.

14           And I just would like to ask Mr. Sharma directly, do

15   you waive your right to be physically present in court, and

16   instead proceed by telephone with your plea?

17           THE DEFENDANT:  Yes, your Honor, I do.

18           THE COURT:  All right.

19           And Mr. Cariglio, have you had sufficient time to

20   consult with your client in advance of these proceedings?

21           MR. CARIGLIO:  Yes, your Honor.

22           THE COURT:  All right.  Terrific.

23           So we are here for a plea proceeding.  And let me

24   start by asking, Mr. Sharma, how do you intend to plead today

25   to Counts One, Two, and Three of the indictment?

K7HVSHAP

1          MR. CARIGLIO:  Judge, it's the superseding

2    information.

3          THE COURT:  I'm sorry, of the superseding information.

4          THE DEFENDANT:  I plan to plead guilty, your Honor.

5          THE COURT:  All right.

6          So in order to do that, I'm going to ask you a number

7    of questions and, therefore, I'm going to swear you in under

8    oath.  I just remind you that because you are under oath, if

9    you give false information, you could be prosecuted for

10   perjury.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  All right.

13         Do you swear to tell the truth, the whole truth, and

14   nothing but the truth?

15         THE DEFENDANT:  I do, your Honor.

16         THE COURT:  So the first thing we need to tend to is a

17   consent to proceed with your plea before a magistrate judge.

18         I do have before me a consent to proceed before a

19   United States Magistrate Judge on a felony plea allocution that

20   has a signature for you.  This form says that you know you have

21   the right to have your plea taken by a United States District

22   Judge, but you are agreeing to have the plea taken by a United

23   States Magistrate Judge.  As a magistrate judge, I have the

24   authority to take your plea with your consent, and you will

25   still be entitled to all the same rights and protections as if

K7HVSHAP

1    you were before a district judge.  And it will be the district

2    judge who sentences you.

3            Did you sign the consent to proceed before a United

4    States Magistrate Judge?

5            THE DEFENDANT:  I did, your Honor.

6            THE COURT:  Did you do so voluntarily?

7            THE DEFENDANT:  I did, your Honor.

8            THE COURT:  Before you signed the form, did your

9    lawyer explain it to you?

10           THE DEFENDANT:  Yes, he did, your Honor.

11           THE COURT:  And do you, in fact, wish to proceed with

12   your plea before a United States Magistrate Judge?

13           THE DEFENDANT:  I do.

14           THE COURT:  All right.  Your consent is accepted.

15           As we are proceeding by information, I ask, has the

16   indictment already been waived?

17           MR. CARIGLIO:  Yes, your Honor, we filed a written

18   waiver as well.

19           THE COURT:  All right.  Terrific.

20           MR. CARIGLIO:  Excuse me.  We forwarded a copy of the

21   written waiver to your clerk yesterday.

22           THE COURT:  Okay.  Let me pull it up.

23           Okay.  I do see it.  All right.

24           And Mr. Sharma, did you, in fact, sign a written

25   waiver of indictment?

K7HVSHAP

1              THE DEFENDANT:  I did, your Honor.

2              THE COURT:  And did you review the form with your

3    attorney before you signed it?

4              THE DEFENDANT:  I did, your Honor.

5              THE COURT:  Do you understand that by signing that

6    form, you're giving up your right to have your case presented

7    to a grand jury; and that you are permitting the charges to be

8    filed by the United States Attorney instead?

9              THE DEFENDANT:  Yes, your Honor, I do.

10             THE COURT:  Have you discussed with your attorney the

11   advantages or disadvantages of waiving indictment?

12             THE DEFENDANT:  I have, your Honor.

13             THE COURT:  Have any threats or promises been made to

14   get you to waive indictment, aside from the plea agreement we

15   will be discussing today?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  And do you, in fact, wish to give up your

18   right to be charged by a grand jury?

19             THE DEFENDANT:  I do, your Honor.

20             THE COURT:  All right.  Your waiver is accepted.

21             So now I'm going to ask a number of questions to make

22   sure that you are giving your plea with a knowing and competent

23   state of mind.  So if you don't understand any question, just

24   let me know and we'll take care of that.

25             What is your full name please?

K7HVSHAP

1        THE DEFENDANT:  My full name is Sam Sharma.

2        THE COURT:  And how old are you?

3        THE DEFENDANT:  Twenty-nine.

4        THE COURT:  And can you read and write English?

5        THE DEFENDANT:  Yes.

6        THE COURT:  And how far did you go in school?

7        THE DEFENDANT:  Some college.

8        THE COURT:  Are you currently or have you recently

9    been under the care of a psychiatrist, psychologist, or other

10   mental health provider for any reason?

11       THE DEFENDANT:  No, your Honor.

12       THE COURT:  Have you ever been hospitalized for mental

13   illness, alcoholism, or drug addiction?

14       THE DEFENDANT:  No, your Honor.

15       THE COURT:  Do you have any condition that affects

16   your ability to see or to hear?

17       THE DEFENDANT:  No, your Honor.

18       THE COURT:  Do you have any condition that affects

19   your ability to think or to understand or to make judgments or

20   decisions on your own behalf?

21       THE DEFENDANT:  No, your Honor.

22       THE COURT:  As you sit here today, wherever you are --

23   and actually, where are you located right now?

24       THE DEFENDANT:  I'm in my lawyer's office in --

25       THE COURT:  Okay.  All right.

K7HVSHAP

1          And as you sit there, are you under the influence of

2    any mind-altering drug or any alcohol?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Do you feel all right today?

5          THE DEFENDANT:  Just a little nervous.

6          THE COURT:  I understand.  And I know this is a formal

7    proceeding and it has consequences, but I am confident you will

8    get through it just fine.

9          Is your mind clear?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Do you understand what is happening in

12   this proceeding?

13         THE DEFENDANT:  I do, your Honor.

14         THE COURT:  And have you seen a copy of the

15   superseding information that contains the charges against you?

16         THE DEFENDANT:  Yes, I have.

17         THE COURT:  Have you read it?

18         THE DEFENDANT:  I have, your Honor.

19         THE COURT:  Do you understand what it says you did?

20         THE DEFENDANT:  I do, your Honor.

21         THE COURT:  Have you had enough time to speak with

22   your attorney about your case and about how you wish to plead?

23         THE DEFENDANT:  I do, your Honor.

24         THE COURT:  Has your Honor attorney explained to you

25   the consequences of pleading guilty?

K7HVSHAP

1         THE DEFENDANT:  Yes, he has.

2         THE COURT:  Are you satisfied with your attorney's

3    representation of you?

4         THE DEFENDANT:  I am, your Honor.

5         THE COURT:  All right.

6         Does either counsel have any objections to or concerns

7    about the defendant's competence to plead at this time,

8    starting with the government?

9         MS. TEKEEI:  No, your Honor.

10        THE COURT:  And for the defense?

11        MR. CARIGLIO:  No, your Honor.

12        THE COURT:  All right.

13        So now I'm going to transition, Mr. Sharma, to

14   questions about certain rights that you have and that you will

15   be giving up by pleading guilty.

16        So under the Constitution and the laws of the United

17   States, you have a right to plead not guilty to the charges

18   contained in the superseding information.

19        Do you understand that?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  And if you plead not guilty, you would be

22   entitled under the Constitution to a speedy and public trial by

23   a jury of those charges.  At that trial, you would be presumed

24   innocent, the government would be required to prove you guilty

25   beyond a reasonable doubt before you could be found guilty.

K7HVSHAP

And you could not be convicted unless a jury of 12 people

agreed unanimously that you are guilty beyond a reasonable

doubt.  Do you understand that?

THE DEFENDANT:  I do, your Honor.

THE COURT:  If you decided to go to trial, and at that

trial and every stage of your case, you would have the right to

be represented by an attorney.  And if you could not afford

one, an attorney would be appointed to represent you at the

government's expense.

Even if you retain private defense counsel, if you ran

out of money, an attorney would be appointed to continue to

represent you.  You would be entitled to an attorney all the

way through trial, and not just for a guilty plea.  So your

decision to plead guilty should not depend on whether you can

afford to hire an attorney.  Do you understand that?

THE DEFENDANT:  I do, your Honor.

THE COURT:  During a trial, the witnesses for the

prosecution would have to come to court and testify in your

presence, where you could see and hear them, and your lawyer

could cross-examine those witnesses.  And if you wanted, your

lawyer could offer evidence on your behalf.  You would be able

to use the Court's power to compel witnesses to come to court

to testify in your defense, even if they did not want to come.

Do you understand that?

THE DEFENDANT:  I do, your Honor.

K7HVSHAP

1          THE COURT:  At a trial, you would have the right to

2   testify in your own defense, if you wanted to; but you would

3   also have the right not to testify.  And if you chose not to

4   testify, that could not be used against you in any way.  No

5   inference or suggestion of guilt would be permitted from the

6   fact that you did not testify.  Do you understand that?

7          THE DEFENDANT:  I do, your Honor.

8          THE COURT:  And if you are convicted at trial, you

9   would have the right to appeal that verdict to a higher court.

10          Do you understand that?

11          THE DEFENDANT:  I do, your Honor.

12          THE COURT:  As I said before, you have the right to

13   plead not guilty; even now you have the right to plead or

14   continue to plead not guilty and go to trial.  But if you do

15   plead guilty and I accept your plea, you will give up the

16   rights that I have described.

17          If you plead guilty, there will be no trial.  All that

18   will remain to be done will be to impose a sentence.  You and

19   the government will have a chance to make arguments about what

20   sentence you should get, but there will not be any further

21   trial to determine whether you are guilty or not guilty of the

22   charges to which you pled guilty.  Do you understand that?

23          THE DEFENDANT:  I do, your Honor.

24          THE COURT:  Finally, if you do plead guilty, you are

25   also giving up the right not to incriminate yourself.  And I

K7HVSHAP

will ask you questions about what you did in order to satisfy

myself that you are actually guilty.  By pleading guilty, you

will be admitting your factual as well as legal guilt.

Do you understand that?

THE DEFENDANT:  I do, your Honor.

THE COURT:  So now I am going to review with you the

charges against you to which you intend to plead guilty and the

consequences of doing so.

So there are three counts of the superseding

information.  The first one charges you with conspiring from at

least in or about July 2017, through in or about April 2018, to

commit securities fraud in connection with a scheme to raise

funds from investors in a company called Centra Tech through

the sale of unregistered securities styled in digital token

based on fraudulent misrepresentations and omissions, in

violation of Title 18, U.S.C., Section 371.

Let me ask the Assistant U.S. Attorney to state the

elements of this charge, and then I will get to the other

counts.

MS. TEKEEI:  Thank you, your Honor.

With respect to the securities fraud conspiracy

charged in Count One of the information, the government would

have to prove beyond a reasonable doubt each of the following

three elements:

First, the existence of the conspiracy charged in

K7HVSHAP

Count One; in other words, that there was, in fact, an agreement or understanding by two or more people to commit securities fraud.

Second, that the defendant, Mr. Sharma, knowingly and willfully became a member of the conspiracy.

And third, that the defendant or another member of the conspiracy knowingly committed at least one overt act in furtherance of the conspiracy during the life of the conspiracy.

To prove that a defendant committed the substantive crime of securities fraud, which was the goal or object of the conspiracy charged in Count One, the government would have to prove the following three elements beyond a reasonable doubt:

First, that in connection with the purchase or sale of securities, the defendant did any one or more of the following:

One, employed a device, scheme, or artifice to defraud; or, two, made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances misleading; or, three, engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller.

The second element is that the defendant acted knowingly, willfully, and with the intent to defraud, that is, the intent to deceive.

And the third element is that the defendant used or

K7HVSHAP

1    caused to be used the mails or an instrumentality of interstate

2    commerce in furtherance of the fraudulent conduct.

3          The term "security" is defined broadly to include not

4    only conventional investment vehicles, such as stocks and

5    bonds, but also less conventional investment instruments,

6    including any so-called investment contract.

7          An investment contract is any contract, transaction,

8    or scheme whereby a person makes an investment of something of

9    value in a common enterprise, and is led to expect process from

10   the entrepreneurial or managerial efforts of others, such as

11   the promoter of the scheme.

12         THE COURT:  Thank you.

13         All right.  And what I'm going to do is actually I'm

14   going to explain the consequences of pleading guilty to Count

15   One, and then I will come back to Count Two and Three, which

16   are similar in many ways.

17         All right.  So with respect to -- let me ask, how do

18   you intend to plead to Count One of the superseding

19   indictment -- information?

20         THE DEFENDANT:  Guilty, your Honor.

21         THE COURT:  With respect to that offense, I want you

22   to understand -- actually, all the offenses, I want you to

23   understand the maximum possible penalty that the Court may

24   impose.  "The maximum" means the most that could possibly be

25   imposed; it does not mean that is what you necessarily would

K7HVSHAP

1    receive.  But by pleading guilty, you are exposing yourself to

2    the possibility of receiving any combination of punishments up

3    to the maximum I am about to describe.

4              Do you understand that?

5              THE DEFENDANT:  I do, your Honor.

6              THE COURT:  So the maximum term of imprisonment for

7    pleading guilty to Count One is a term of five years, and a

8    maximum term of supervised release of three years.

9              "Supervised release" means that after you are released

10   from prison, you may be subject to supervision by the probation

11   department.  If you are placed on supervised release and

12   thereafter violate any condition of that supervised release,

13   the district judge can revoke the term of supervised release

14   previously imposed and return you to prison without giving you

15   any credit for time previously served on post supervision

16   release.

17             In addition to the restrictions on your liberty, the

18   maximum possible punishment under Count One also includes

19   financial penalties.  The maximum allowable fine is the

20   greatest of $250,000 or twice the gross pecuniary gain derived

21   from the offense, or twice the gross pecuniary loss to persons

22   other than the defendant resulting from the offense, and a $100

23   mandatory special assessment.

24             In addition, by pleading guilty, you will also be

25   admitting to the forfeiture allegations in the information and

1   agree to forfeit any money or property you receive from

2   committing the offense or that was used to commit the offense.

3   And in the plea agreement it is specified that that includes,

4   but is not limited to, a sum of money in United States currency

5   representing the amount of proceeds traceable to the commission

6   of said offenses that the defendant -- that you -- personally

7   obtained.  And B, all right, title, and interest of yours in

8   the 100,000 Ether units that were seized by the FBI from a

9   digital wallet in 2018.

10          Let me go back to Count Two.

11          Count Two charges you with conspiring from at least in

12   or about July 2017, to in or about April 2018, with wire fraud

13   in connection with the scheme to raise funds from Centra Tech

14   investors through the sale of digital tokens based on

15   fraudulent misrepresentations and omissions.

16          Again, I will ask the government to state the elements

17   of this claim.

18          MS. TEKEEI:  Thank you, your Honor.

19          With respect to the wire fraud conspiracy charged in

20   Count Two of the information, the government would have to

21   prove beyond a reasonable doubt each of the following three

22   elements:

23          First, the existence of the conspiracy charged in

24   Count Two of the information; in other words, that there was,

25   in fact, an agreement or understanding by two or more people to

K7HVSHAP

1    commit wire fraud.

2            Second, that the defendant knowingly and willfully

3    became a member of the conspiracy.

4            And third, that the defendant or another member of the

5    conspiracy knowingly committed at least one overt act in

6    furtherance of the conspiracy during the life of the

7    conspiracy.

8            To prove that the defendant committed the substantive

9    crime of wire fraud, which was the goal or object of the

10   conspiracy charged in Count Two, the government would have to

11   prove the following elements beyond a reasonable doubt:

12           First, the existence of a scheme or artifice to

13   defraud or obtain money or property by means of false and

14   fraudulent pretenses, representations, or promises.

15           Second, the defendant knowingly and willfully devised

16   or participated in the scheme or artifice to defraud, with

17   knowledge of its fraudulent nature and with the specific intent

18   to defraud.

19           And third, that in the execution of that scheme, the

20   defendant used or caused the use by others of interstate or

21   foreign wire communications.

22           And, your Honor, this goes for both Count One, which

23   we already reviewed, Count Two, and then also Count Three, that

24   in addition to all of the elements that I'll describe with

25   respect to the counts, the government would, in order to

1    establish venue in the Southern District of New York, have to

2    prove by a preponderance of the evidence that some act in

3    furtherance of each of the conspiracy offenses in each of these

4    three counts occurred within the Southern District of New York.

5          THE COURT:  All right.  Thank you.

6          So Count Two carries the following penalties:

7          It carries a maximum sentence of imprisonment of five

8    years, a maximum term of supervised release of three years, a

9    maximum fine of the greatest of $250,000, twice the gross

10   pecuniary gain derived from the offense, or twice the gross

11   pecuniary loss to persons other than yourself resulting from

12   the offense, and a $100 mandatory special assessment.  And I'm

13   not sure I said it earlier, Count One also carries a $100

14   mandatory special assessment.  And again, you would be pleading

15   guilty to the forfeiture allegations as I previously explained

16   them.

17         All right.  Let's go on to Count Three.

18         Count Three charges you with conspiring from at least

19   in or about July 2017, to in or about April 2018, to commit

20   mail fraud in connection with a scheme to raise funds from

21   Centra Tech investors through the sale of digital token, based

22   on fraudulent misrepresentations and omissions using the mail

23   or private or commercial interstate carriers.

24         Again, I ask the government to identify the elements

25   of this charge.

K7HVSHAP

1          MS. TEKEEI:  Thank you, your Honor.

2          With respect to the mail fraud conspiracy charged in

3    Count Three of the information, the government would have to

4    prove beyond a reasonable doubt each of the following three

5    elements:

6          First, the existence of the conspiracy charged in

7    Count Three of the information.  In other words, that there

8    was, in fact, an agreement or understanding by two or more

9    people to commit mail fraud.

10          Second, that the defendant knowingly and willfully

11   became a member of the conspiracy.

12          And third, that the defendant or another member of the

13   conspiracy knowingly committed at least one overt act in

14   furtherance of the conspiracy during the life of the

15   conspiracy.

16          And to prove that a defendant committed the

17   substantive crime of mail fraud, which is the goal or object of

18   the conspiracy charged in Count Three, the government would

19   have to prove the following elements beyond a reasonable doubt:

20          First, that there existed a scheme or artifice to

21   defraud or obtain money or property by means of false or

22   fraudulent pretenses, representations, or promises.

23          Second, that the defendant knowingly and willfully

24   executed or attempted to execute this scheme with the intent to

25   defraud.

K7HVSHAP

1      And third, that in executing this scheme, the

2  defendant used or caused the use of the mails or a private or

3  commercial interstate carrier.

4      And in addition, as previously noted, the government

5  would have to prove by a preponderance of the evidence that

6  some act in furtherance of the conspiracy occurred here within

7  the Southern District of New York.

8      THE COURT:  All right.  Thank you.

9      Count Three carries a maximum sentence of imprisonment

10  of five years, a maximum term of supervised release of three

11  years, a maximum fine of the greatest of $250,000, twice the

12  gross pecuniary gain derived from the offense, or twice the

13  gross pecuniary loss to persons other than yourself resulting

14  from the offense.  And again, a $100 mandatory special

15  assessment.

16      And the total maximum term of imprisonment on Counts

17  One through Three together is 15 years of imprisonment.

18      Additionally, if you are not a citizen of the United

19  States, then your guilty plea may also have adverse

20  consequences for your ability to remain in or return to the

21  United States, including removal, deportation, denial of

22  citizenship, and denial of admission to the United States in

23  the future.  If that does happen, you will still be bound by

24  your guilty plea, that is, you will not be able to withdraw,

25  regardless of any advice you have received from your counsel or

K7HVSHAP

1    others regarding the immigration consequences of your plea.

2            Do you understand?

3            THE DEFENDANT:  I do, your Honor.

4            THE COURT:  And do you understand the charges against

5    you and the consequences of pleading guilty to them?

6            THE DEFENDANT:  I do, your Honor.

7            THE COURT:  So, as I mentioned, there is a written

8    plea agreement in the form of a letter, and it is dated July

9    7th, 2020.  It does appear to -- it has a signature line for

10   you.  Did you sign the plea agreement?

11           THE DEFENDANT:  I did, your Honor.

12           THE COURT:  Did you read it before you signed it?

13           THE DEFENDANT:  I have, your Honor.

14           THE COURT:  Did you discuss it -- I'm sorry.

15           Did you read it before you signed it?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  And did you discuss it with your attorney

18   before you signed it?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Did your attorney explain to you all of

21   its terms and conditions?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Do you understand the terms?

24           THE DEFENDANT:  I do.

25           THE COURT:  So the letter says that you and the

K7HVSHAP

government reached agreement regarding the appropriate

calculation of your sentence under a part of our law known as

the sentencing guidelines; and that the appropriate sentencing

range is -- well, it would normally be 168 to 210 months.  But

because the statutory authorized maximum sentence for Counts

One, Two, and Three is 180 months of imprisonment, which is

less than the maximum applicable guidelines range, the

stipulated range, stipulated guidelines range, is 168 to 180

months' imprisonment.

          In addition, after determining your ability to pay,

the Court may impose a fine of anywhere in the range of $35,000

to $350,000.

          Do you understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  So under this agreement, neither you nor

the government is allowed to argue to a sentencing judge for a

calculation that is different than the one in the agreement.

However, the sentencing judge is not bound by the calculation

in the letter, and she will be free to do her own calculation,

which may result in a sentencing range that differs from the

one in this letter.  Do you understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  The sentencing range is just one of many

factors the judge will consider in determining your sentence.

And the judge has discretion to give you a prison sentence

K7HVSHAP

1    below or above the range, anywhere up to the maximum I told you

2    about earlier.  Do you understand that?

3                 THE DEFENDANT:  Yes, your Honor.

4                 THE COURT:  So long as the sentencing judge sentences

5    you to a prison term of no longer than 180 months, you are

6    giving up your right to challenge your sentence, whether by

7    direct appeal, writ of *habeas corpus*, or otherwise.

8                 Do you understand that?

9                 THE DEFENDANT:  Yes, your Honor.

10                THE COURT:  And by pleading guilty, you also will not

11   be able to appeal any fine up to the amount of $350,000 or

12   less, any lawful sentence of supervised release, any forfeiture

13   as set forth in the agreement, and to the extent if it is said

14   in the agreement, any restitution.  Do you understand?

15                THE DEFENDANT:  Yes, your Honor.

16                THE COURT:  Under the terms of the plea agreement,

17   even if you later learn the government withheld from your

18   counsel certain information that would have been helpful to you

19   in defending yourself at trial, you will not be able to

20   complain about that or withdraw your guilty plea on that basis.

21                Do you understand?

22                THE DEFENDANT:  Yes, your Honor.

23                THE COURT:  All right.

24                Is there any other provision of the plea agreement

25   that counsel would like for me to review with the defendant,

K7HVSHAP

1    starting with the government?

2              MS. TEKEEI:  Thank you, your Honor.

3              The Court mentioned this earlier when reciting the

4    forfeiture penalties.  There is a provision in the plea

5    agreement that the Court accurately summarized regarding the

6    defendant's agreement to forfeit a sum of money in United

7    States currency representing the amount of proceeds traceable

8    to the commission of the offenses; and also all right, title,

9    and interest of the defendant in 100,000 Ether units that were

10   seized by the FBI from a digital wallet.

11             And we would just request that the Court confirm that

12   the defendant agrees to that and is aware of the forfeiture

13   provisions as well.

14             THE COURT:  Okay.  I do believe I mentioned it, but I

15   will say it again to make sure it is understood that it is in

16   connection with all three counts, that you, in pleading guilty,

17   would be pleading guilty to the forfeiture allegations of the

18   superseding information; and that that would require forfeiting

19   the following, but not limited to it:

20             A, a sum of money in United States currency

21   representing the amount of proceeds traceable to the commission

22   of said offenses that you personally attained.

23             And B, all right, title, and interest of yours in

24   100,000 Ether units that were seized by the FBI from a digital

25   wallet.

K7HVSHAP

1          Do you understand that by pleading guilty, you will be

2    forfeiting all of that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Counsel, does that satisfy your concern or

5    is there anything else you would like me do in that regard?

6          MS. TEKEEI:  Thank you, your Honor.

7          I'll just note one additional provision.

8          The parties have agreed in this plea agreement -- and

9    I draw the Court's attention to page 5, section C -- that

10   neither a downward nor an upward departure from the stipulated

11   guidelines is warranted, except that the defendant reserves the

12   right to argue that his Criminal History Category should be II,

13   on the grounds that a higher Criminal History Category would

14   substantially overrepresent the seriousness of his criminal

15   history under United States Sentencing Guidelines Section

16   4A1.3(b)(1).

17         And the government maintains and reserves the right to

18   argue further that the defendant's Criminal History Category

19   should be III, and no downward departure pursuant to that

20   provision is warranted.

21         In case the Court were to grant the defendant's

22   request for the departure, the Criminal History Categories

23   would then be II, and the applicable guidelines range would be

24   151 to 188 months, which would result in a guidelines range of

25   151 to 180 months' imprisonment.

1            THE COURT:  All right.

2            Mr. Sharma, did you hear all of that?

3            THE DEFENDANT:  I have, your Honor.

4            THE COURT:  And do you understand it?

5            THE DEFENDANT:  I do, your Honor.

6            THE COURT:  All right.  And understanding that, do you

7   still understand all the consequences of your pleading guilty

8   to Counts One, Two, and Three?

9            THE DEFENDANT:  I do, your Honor.

10           THE COURT:  All right.  So now that you've been

11   advised the charges against you, the possible -- oh, I'm sorry,

12   I didn't ask defense counsel, is there anything you would like

13   me to review with the defendant?

14           MR. CARIGLIO:  No, your Honor.

15           THE COURT:  All right.

16           And apart from what is contained in the plea

17   agreement, have any promises been made to you in order to get

18   you to plead guilty?

19           THE DEFENDANT:  No, your Honor.

20           THE COURT:  Has anyone threatened, forced, or coerced

21   you in any way, either directly or indirectly, to get you to

22   plead guilty?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  So now that you have been advised of the

25   charges against you, the possible penalties you face, and the

K7HVSHAP

1   rights you are giving up, is it still your intention to plead

2   guilty to Counts One, Two, and Three of the superseding

3   information?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Is your plea voluntary and made of your

6   own free will?

7           THE DEFENDANT:  Yes.  Your Honor.

8           THE COURT:  All right.

9           Mr. Sharma, with respect to Count One of the

10  superseding information, how do you plead?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  With respect to Count Two of the

13  superseding information, how do you plead?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  And with respect to Count Three of the

16  superseding information, how do you plead?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  All right.

19          Can you please now tell me in your own words what you

20  did that makes you guilty of the crimes charged in the

21  superseding information.

22          THE DEFENDANT:  Yes, your Honor.

23          From about July 30th, 2017, through October 5th, 2017,

24  I agreed with others to commit securities fraud, wire fraud,

25  and mail fraud in connection with a scheme to raise funds from

K7HVSHAP

investors by selling them digital tokens issued by a company
called Centra Tech Incorporated.  When I entered into these
agreements, I caused a fictitious chief executive officer named
"Michael Edwards," and a fictitious chief financial officer
named "Jessica Robinson" to be created and falsely represented
that these fake executives had impressive credentials in order
to convince the investing public that Centra Tech had an
executive team with the qualifications and experience needed to
succeed.

        I took various actions to further the goals of these
agreements.  For example, in order to advance these agreements,
I caused LinkedIn pages for fictitious Centra Tech executives
named Michael Edwards and Jessica Robinson to be created,
listing their credentials.  During and to further the goals of
these agreements, emails, cell phone text messages, and United
States mail were sent to and from New York, New York.

        I knew that my participation in these conspiracies was
wrong and illegal.

        THE COURT:  All right.  And I'm not sure I heard the
very end of that.  Did you know that what you were doing was
against the law?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Thank you.

        Let me ask the government, are there any additional
questions you would like me to ask the defendant?

K7HVSHAP

1            MS. TEKEEI:  Your Honor, I apologize if I missed this,

2       but I couldn't tell from the defendant's statement whether he

3       discussed that during and in furtherance of the goals of the

4       agreements, interstate email communications, interstate cell

5       phone text message communications, and correspondence was sent

6       interstate via United States mail and commercial interstate

7       carriers, including to and from New York?

8            THE COURT:  All right.

9            MS. TEKEEI:  Which --

10           THE COURT:  I'm sorry?

11           MS. TEKEEI:  That's all, your Honor.

12           THE COURT:  Okay.

13           So, Mr. Sharma, in fact, in connection with the acts

14      that you just described, did they involve communicating by

15      mail, electronic communications, or -- and paper communications

16      in interstate commerce, that is, to and from New York to some

17      other location outside of New York?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  All right.

20           Counsel, does that satisfy your question?

21           MS. TEKEEI:  Thank you.  It does.

22           And one more question, your Honor:  That the

23      misrepresentations of fact about Centra Tech and its business

24      that the defendant made were material.

25           THE COURT:  Mr. Sharma, were the misrepresentations

K7HVSHAP

1   that you made in connection with the Centra Tech business

2   fraud, were those misrepresentations material to persons who

3   were purchasing or considering purchasing what Centra Tech was

4   offering?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Counsel, does that satisfy that question?

7           MS. TEKEEI:  Thank you, your Honor.  It does.

8           And unless the Court has any further questions, at

9   some point the government can provide the Court with additional

10  factual proffers related to what the evidence at trial would

11  show.

12          THE COURT:  Yes.  We're almost there.

13          Do you believe that there is a sufficient factual

14  predicate for a guilty plea?

15          MS. TEKEEI:  Yes, your Honor.

16          THE COURT:  And does the government represent that it

17  has sufficient evidence to establish guilt beyond a reasonable

18  doubt at trial?

19          MS. TEKEEI:  Yes, your Honor.

20          THE COURT:  All right.

21          Would you like to make a proffer then?

22          MS. TEKEEI:  Thank you, your Honor.

23          At the outset, the government incorporates by

24  reference the facts set forth in the criminal complaint, the

25  indictment, the superseding information, and the government's

K7HVSHAP

motions *in limine* that were filed in this case.

If this case proceeded to trial, the government would offer witness testimony, documentary proof, and other evidence establishing the facts set forth in those materials; and that those facts would prove beyond a reasonable doubt that the defendant is guilty of the charged conspiracy offenses in Counts One, Two, and Three of the superseding information; and would establish venue in the Southern District of New York by a preponderance.

More specifically, the government proffers that if this case proceeded to trial, the government would offer witness testimony, documents, and other evidence establishing that during and as part of the charged securities, wire, and mail fraud conspiracies, Mr. Sharma, a leader in the conspiracy, and his co-conspirators, disseminated and caused the dissemination of fraudulent marketing materials and information to investors to induce them to buy digital tokens issued by Centra Tech as part of fundraising initiatives that included an initial coin offering or ICO.

Also, that in these fraudulent marketing materials, Mr. Sharma and his co-conspirators deliberately made materially false and misleading misrepresentations and omissions, claiming that Centra Tech had critical business relationships that did not exist; that Centra Tech had qualified senior executives who did not exist; and that Centra Tech had critical money

K7HVSHAP

transmitter licenses in a number of states that it did not

actually have.

In addition, that based in part on the representations

of Mr. Sharma and his co-conspirators in these marketing

materials and other information disseminated to investors, the

digital tokens that they sold to Centra Tech investors

qualified as investment contracts and, therefore, as securities

under the federal securities laws.  Those representations are

described in greater detail in the charging documents and in

the *in limine* motions that the government incorporated by

reference.

With respect to the evidence that the government would

offer at trial, that would also include, among other proof, the

testimony of various witnesses who used to be executives or

employees of Centra Tech, who would collectively establish the

existence of the charged securities, wire, and mail fraud

conspiracies that Mr. Sharma knowingly and willfully joined and

was a leader of.  And that various members of these

conspiracies committed overt acts during and in furtherance of

the conspiracy, including overt acts here in the Southern

District of New York.

For example, this would include the testimony of a

cooperating witness who was a co-conspirator of Mr. Sharma in

the charged conspiracy.  This cooperating witness would testify

to facts establishing, among other things, and in sum and

substance:

One, that the cofounders of Centra Tech, including Mr. Sharma and the cooperating witness, conspired to commit securities fraud, wire fraud, and mail fraud in connection with a scheme to defraud investors into buying digital tokens issued by Centra Tech.

That as part of these conspiracies, the members of the conspiracies, including Mr. Sharma and the cooperating witness, deliberately made materially false and misleading representations and omissions to induce Centra Tech investors to buy the digital tokens, including false claims that Centra Tech had critical business relationships that didn't exist, that Centra Tech had qualified senior executives who did not exist, and that Centra Tech had critical money transmitter licenses in a number of states that it did not actually have.

Also, this witness would testify that Mr. Sharma was a willing and knowing participant in these conspiracies; and that during and in furtherance of the conspiracies, cell phone text message communications were sent to and from the Southern District of New York from Florida by various members of the conspiracy.

The government's proof at trial would also include documents containing fraudulent misrepresentations that Mr. Sharma and his co-conspirators disseminated via the internet and other means to investors as part of the

K7HVSHAP

conspiracy, including fraudulent white papers and recordings of

interviews in which a member of the conspiracy and Mr. Sharma

made fraudulent misrepresentations to solicit investors to buy

the digital tokens.

The government's proof would also include witness

testimony and documents establishing the falsity of those

fraudulent misrepresentations.  The government would also offer

testimony of victim investors and supporting documents that

would establish, among other things, facts showing that various

victim investors provided funds to Centra Tech to buy digital

tokens issued by Centra Tech based on the fraudulent

misrepresentations that Mr. Sharma and his co-conspirators

disseminated, and facts establishing the materiality of those

fraudulent misrepresentations.

The government's proof would also include

contemporaneous text messages and emails exchanged between and

among Mr. Sharma and his co-conspirators during the charged

conspiracy, establishing that they acted knowingly, willfully,

and with the intent to defraud Centra Tech investors.

The government's proof would also include witness

testimony and documents showing that the digital tokens

Mr. Sharma and his co-conspirators sold to Centra Tech

investors qualified as investment contracts and, therefore, as

securities under the federal securities laws.

The government's proof would also include testimony

K7HVSHAP

and documentary records that would establish that during and in

furtherance of the conspiracy, Mr. Sharma caused the use of the

United States Postal Service and commercial interstate mail

carriers to send materials, including letters and cards, that

falsely bore the Centra Tech logo with the Visa and Bancorp

logos, to be sent and delivered to Centra Tech victims,

including, with respect to the mail, at least one victim

located in New York, New York.

          The government's proof would also include witness

testimony, documents, and other evidence demonstrating that

Mr. Sharma engaged in obstructive conduct with respect to an

investigation being conducted by the United States Securities

and Exchange Commission relating to Centra Tech and its efforts

to raise funds from investors through fraud, including by

causing Centra Tech to relay false representations to the SEC

concerning alleged measures that Centra Tech had supposedly

taken to prevent the dissipation of investor assets in Centra

Tech's possession, that Centra Tech, through the efforts of

Mr. Sharma and his co-conspirators, had raised from its

investors through fraud.

          In addition, the government's proof would include

witness testimony, documents, and other evidence showing that

Mr. Sharma and his co-conspirators used electronic

communications to trade the digital tokens on a cryptocurrency

exchange based in the Southern District of New York, during and

K7HVSHAP

1    in furtherance of the charged conspiracies.

2            This is not all of the proof that the government would

3    offer at trial against the defendant, but just a summary of

4    some of that proof.  And we believe that with these proffered

5    facts and as we have incorporated by reference, the pleadings

6    and the government's motions *in limine*, and the facts set forth

7    therein, the allocution -- Mr. Sharma's allocution is

8    sufficient.

9            THE COURT:  All right.  Thank you.

10           Defense counsel, are there any additional questions

11   you would like me to ask the defendant?

12           MR. CARIGLIO:  No additional questions, your Honor.

13           THE COURT:  Do you believe there is a sufficient

14   factual predicate for a guilty plea?

15           MR. CARIGLIO:  Yes, your Honor.

16           THE COURT:  Do you know of any defense that would

17   prevail at trial or other reason why your client should not be

18   permitted to plead guilty?

19           MR. CARIGLIO:  Judge, while there are potential

20   defenses at trial, we believe it's in our client's best

21   interest to plead guilty.

22           THE COURT:  Mr. Sharma, on the basis of your responses

23   to my questions, I find that you are competent to enter an

24   informed guilty plea, and that there is a factual basis for it.

25   I'm satisfied that you understand your rights; that you are

K7HVSHAP

1    aware of the consequences of your plea, including the sentence

2    that may be imposed; that you are voluntarily pleading guilty;

3    and that you have admitted that you are guilty as charged in

4    Counts One, Two, and Three of the superseding information.

5         For these reasons, I accept your guilty plea and

6    recommend the district judge do the same.

7         All right.  I assume the government will order a copy

8    of the transcript and submit it, together with any additional

9    paperwork, so that the judge, district judge, may act on my

10   recommendation.

11        Has the district judge set a sentencing date?

12        MS. TEKEEI:  Not yet, your Honor.

13        The government has, in fact, ordered a copy of the

14   transcript.  We intend to submit it, along with the

15   plea-related materials, to Judge Schofield as soon as we

16   receive it.  And in that request, we will request that Judge

17   Schofield set a sentencing date.  None has been set just yet.

18        THE COURT:  All right.  So for purposes of today, I'll

19   just set a control date of 90 days.  Is that acceptable?

20        MR. CARIGLIO:  Yes, your Honor.

21        MS. TEKEEI:  Yes, your Honor.

22        THE COURT:  Good.

23        All right.  I direct that the presentence report be

24   prepared.

25        Will the government be able to deliver the case

K7HVSHAP

1    summary for purposes of the presentence report within 14 days?

2             MS. TEKEEI:  Yes, your Honor, we will.

3             THE COURT:  And will defense counsel be available with

4    the defendant to be interviewed by the probation department

5    within 14 days?

6             MR. CARIGLIO:  Yes, your Honor.

7             THE COURT:  All right.  And what are we doing with

8    respect to detention or release until sentencing?

9             MS. TEKEEI:  No changes are being made at the moment,

10   your Honor.

11            I do have one clarifying question, whenever the Court

12   is ready.

13            THE COURT:  All right.

14            Defense counsel, is there any objection to

15   continuation of the current conditions of release?

16            MR. CARIGLIO:  No, your Honor.

17            THE COURT:  All right.

18            Was the clarification you were seeking to make in

19   connection with the release or something else?

20            MS. TEKEEI:  Something else, your Honor, with respect

21   to a question that the Court asked defense counsel earlier.

22            THE COURT:  All right.

23            Yes, why don't you ask that.  Go ahead.

24            MS. TEKEEI:  Thank you, your Honor.

25            The Court asked Mr. Cariglio if he was aware of any

K7HVSHAP

1    defenses that would prevail at trial.  I believe I heard

2    Mr. Cariglio to say he was aware of defenses.  He did not

3    indicate whether they would prevail.  And I just wanted to make

4    sure that we were under -- that the record was clear that

5    Mr. Cariglio does not believe any of those defenses would

6    prevail, since the Court asked that particular question.

7            THE COURT:  All right.

8            Mr. Cariglio, I understand that you believe there are

9    defenses that certainly could be asserted.  Do you think there

10   are any that would prevail if the case went to trial?

11           MR. CARIGLIO:  Look, Judge, I mean, you never know

12   what a jury is going to do.  I mean, we have potential defenses

13   we were going to assert.  But, overall, we believe it's in our

14   client's best interest to plead guilty, which is why he's

15   pleading guilty.  I mean, one could never say what a jury is

16   going to do.

17           THE COURT:  This is true.

18           I'm wondering -- the government is right, that I did

19   ask about "will prevail."  But does the government think it is

20   insufficient for the defendant -- the defense to say that they

21   don't know one way or the other, but that it is in the best

22   interest of their client to plead guilty?

23           MS. TEKEEI:  Your Honor, we don't think it's

24   sufficient for the defense to say, We don't know one way or the

25   other.  The record should be clear that they are aware of no

K7HVSHAP

1    defenses that would prevail at trial, whether or not the

2    interest -- it is in their client's best interest to plead.

3              MR. CARIGLIO:  Judge, I've never -- I've practiced in

4    many different districts.  I've never had that question asked.

5    The question usually that -- that is asked is whether or not

6    we've reviewed all the discovery with our clients, whether or

7    not we've reviewed all potential defenses with our clients, and

8    whether we believe it's in our client's best interest to plead

9    guilty.

10             I mean, what the government is asking for is

11   speculation on what a jury may do after trial.  And clearly we

12   do not want to run that risk.  And we believe it's in

13   Mr. Sharma's best interest to plead guilty.  He wants to plead

14   guilty.  But I can't say with 100 percent certainty that we

15   would not have won had we decided to go to trial.

16             THE COURT:  The question as I formulated it is the way

17   we do it in this district.  And I have not had someone object

18   to it before.  And I understand your point that you can't be

19   sure about predicting the future.

20             But I'm going to ask it this way:  Do you know of any

21   defense that you think would be likely to prevail at trial?

22             MR. CARIGLIO:  I mean, I sort of have the same

23   objection to that question.  But I believe that the government

24   has presented a sufficient case that would get the case to a

25   jury, and that my client has sufficiently allocuted the

K7HVSHAP

elements to plead guilty.  I mean, he's admitted to the

elements to plead guilty.  Your Honor has gone over the

constitutional rights and the penalties.  I think that the plea

is more than sufficient.

As far as likely or not likely, I mean, it's really

asking me to speculate.  I guess I could speculate that it's

likely that the government would prevail, given the fact that

they prevail on most of their cases.  I mean, I don't know what

to say beyond that.

MS. TEKEEI:  Your Honor, if I may add, the Court is

correct this is a question that is regularly always asked of

defendants in this district.  It was asked of Mr. Sharma's

co-conspirators, who also both pled guilty.

The government has proffered facts, that it would

prove beyond a reasonable doubt each of the elements in the

charges in Counts One, Two, and Three.  We understand that, as

in many cases, the defendants would like to make or may make

certain arguments to a jury.

I think the question for Mr. Cariglio, as the Court

has phrased it, is would any of those arguments or defenses

prevail at trial.  And I think the clear answer to that, from

the government's perspective, is no, because we would prove, as

we had proffered through our facts, that the defendant is

guilty of each of the crimes that are charged.

It is a common question.  It is a standard question

K7HVSHAP

1    that is asked in this district.  And we think that the answer

2    to that needs to be clear on the record.

3              THE COURT:  Mr. Cariglio?  I don't see -- understand

4    the problem with answering that question.  You can say -- it is

5    perfectly fine if you want to say no one can predict the

6    future.  But the goal here is that the government has

7    demonstrated that they can prove beyond a reasonable doubt

8    guilt, and that is why we are here.

9              So with making a qualification that no one can predict

10   the future, do you think you can answer the question saying

11   that you do not know of any defense that would be likely to

12   prevail?

13             MR. CARIGLIO:  Judge, I can say that I believe that

14   the government likely would prevail, but no one can predict the

15   future.  And there's always a chance a defendant could be found

16   not guilty at trial, which I think is a fair statement.

17             I certainly don't want to stand in the way of my

18   client pleading guilty.  He wants to plead guilty.  He's

19   admitted his guilt.  And I can say as an officer of the Court

20   that it's likely that the government would prevail, with that,

21   you know, proviso about no one can predict the future.

22             THE COURT:  All right.  I'm satisfied with that.

23             Because we are going to continue conditions of

24   release, I do need to remind Mr. Sharma that those conditions

25   continue; and a violation of those conditions can have serious

K7HVSHAP

1    consequences, including revocation of bail and prosecution for

2    bail jumping.  Do you understand that?

3              THE DEFENDANT:  I do, your Honor.

4              THE COURT:  Fine.

5              From the government, anything further?

6              MS. TEKEEI:  No, your Honor.  Nothing further from the

7    government.

8              THE COURT:  From the defense, anything further?

9              MR. CARIGLIO:  No, your Honor.

10             Thank you very much for allowing us to appear

11   telephonically.

12             THE COURT:  Oh, of course.  And it is in everyone's

13   best interest to do so.

14             And I wish everyone good health and good luck.

15             And Mr. Sharma, I wish you well.  And you will get

16   through it.

17             THE DEFENDANT:  Thank you.

18             THE COURT:  All right.  We are adjourned.

19             MS. TEKEEI:  Thank you, your Honor.

20                            *    *    *

21

22

23

24

25