UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
UNITED STATES OF AMERICA                                            :
                                                                    :
          - v. -                                                    :   18 Cr. 340 (LGS)
                                                                    :
SOHRAB SHARMA *et al.*,                                             :
                                                                    :
                         Defendants.                                :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT's MOTION PURSUANT
# TO TITLE 18, UNITED STATES CODE, SECTION 3663A(c)(3)

ILAN GRAFF
Attorney for the United States
Acting Under 28 U.S.C. § 515
Southern District of New York

Samson Enzer
Negar Tekeei
Daniel Loss
Assistant United States Attorneys
          *- Of Counsel -*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1
DISCUSSION ................................................................................................................................ 1
CONCLUSION............................................................................................................................... 7

**PRELIMINARY STATEMENT**

Centra Tech, Inc. co-founders Sohrab Sharma and Robert Farkas (the "defendants") have pleaded guilty to various fraud conspiracy offenses stemming from their roles in defrauding Centra Tech investors, and both defendants are scheduled to be sentenced for those crimes in December 2020 (as to Farkas) and January 2021 (as to Sharma). In advance of the defendants' respective sentencings, the Government will file sentencing submissions addressing the application of the sentencing factors set forth in 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines to the defendants and their crimes. The Government, through the Office of the United States Attorney for the Southern District of New York (this "Office"), respectfully files this motion pursuant to 18 U.S.C. § 3663A(c)(3) for an order from the Court forgoing restitution as impracticable in this case. As explained below, the Government intends to instead exercise its discretion under applicable forfeiture laws to proceed via the well-established process of forfeiture and remission to compensate victims of the Centra Tech fraud perpetrated by the defendants. The defendants, through their respective counsel, have reported that they have no objection to this motion being granted.[1]

**DISCUSSION**

The Government respectfully submits that the Court should find that restitution is impracticable under Title 18, United States Code, Section 3663A(c)(3) due to the large number of victims and the complexity of determining each victim's losses in this case.

There are thousands of potential victims of the crimes perpetrated by the defendants

---

[1] Centra Tech co-founder Raymond Trapani, who previously pleaded guilty under a cooperation agreement with the Government, has also reported through his counsel that he has no objection to this motion being granted.

1

through their fraud on Centra Tech investors. In order to impose an appropriate restitution order at the defendants' sentencings in this case, this Court would need to — by the time of defendants' upcoming sentencings — determine the identity of each of those victims and the amount of each victim's losses. That task would be virtually impossible for the Court to accomplish without unduly complicating and delaying the sentencing process in this case.

By way of background, during Centra Tech's fundraising efforts from approximately July through October 2017, the defendants used fraudulent misrepresentations to deceive numerous investors in the United States and multiple foreign countries on several different continents into paying Centra Tech millions of dollars in valuable digital assets (such as units of well-known cryptocurrencies like "Ether" and "Bitcoin") in exchange for the purchase of digital "CTR" tokens issued by the defendants and their company. The total amount of fraud proceeds that the defendants raised in 2017 includes but is not limited to the 100,000 Ether units that this Office and the Federal Bureau of Investigation ("FBI") have been able to locate and secure pursuant to judicially authorized seizure warrants. For several months after the defendants' fraudulent fundraising efforts (which took place from approximately July through October 2017), the defendants continued their fraudulent scheme up until their arrests in April 2018, and as a result, the market price of CTR tokens on various secondary cryptocurrency trading exchanges was artificially inflated from approximately October 2017 through April 2018. During this artificial inflation period in which the defendants' fraud continued, various investors sold at least some of their CTR tokens to a multitude of other secondary market buyers. When the defendants were arrested in this case and their fraud on Centra Tech investors was publicly exposed in April 2018, the market price of CTR tokens collapsed. Based upon records prepared by Centra Tech during

the fraudulent scheme that purported to identify all of the investors who bought CTR tokens from Centra Tech during its "initial coin offering" or "ICO" in 2017, the defendants previously estimated that there were at least 1,500 individuals and entities who would be considered ICO investors in this case.  (*See* Dkt. 194 at 4; Dkt. 209 at 9).   The Government's investigation in this case, however, has uncovered evidence that those Centra Tech records are incomplete.  Of relevance here, those Centra Tech records do not include all of the investors who bought CTR tokens from the defendants and their company in 2017 and thus the aforementioned 1,500 figure likely represents a floor (rather than a ceiling) as to the number of potential investors who may qualify as restitution victims in this case.  Further, that 1,500 figure does not even purport to include other groups of potential victims of the defendants' fraud such as, for example, secondary market investors who bought CTR tokens at artificially inflated prices from the defendants or others on secondary cryptocurrency trading exchanges during the post-fundraising period in which the defendants' fraud continued.

Accordingly, entering an appropriate restitution at the time of the defendants' upcoming sentencings would require the Court to determine in less than three months, for each of the potential victims of the defendants' fraud (a group of that could consist of at least 1,500 separate claimants, if not more), whether each claimant incurred pecuniary loss of a specific amount, whether the pecuniary loss was a direct result of the charged fraud, and whether the victim has not been compensated for the loss (such as, for example, through a defrauded investor's sale of CTR tokens at a profit to secondary market buyers before the fraud was exposed).  In addition, in classifying the sub-group out of the full universe of defrauded Centra Tech investors who will be eligible for restitution, the Court would also have to consider and resolve a number of additional

3

complex questions of facts that the Government described at length in a prior submission to the Court (*see* Dkt. 209 at 29-31).

For all of those reasons, a traditional restitution order is not a practical vehicle for compensating the defendants' victims in this case.  *See, e.g.*, *In Re W.R. Huff Asset Management Co., LLC*, 409 F.3d 555, 563-64 (2d Cir. 2005) (in securities fraud prosecution of owners of Adelphia Communications Corp., affirming the district court's finding that restitution was impracticable on the basis that "there are potentially tens of thousands of victims of the [ ] crimes" and "the amount of losses of those victims has not been established and doing so would indisputably take a great deal of time").

Instead, the Government intends to instead proceed via the well-established process of forfeiture and remission to compensate victims of the Centra Tech fraud perpetrated by the defendants.

Once assets have been judicially forfeited, the United States Attorney General has the discretionary authority, currently delegated to the Chief of Department of Justice's Money Laundering and Asset Recovery Section ("MLARS"), to distribute them to victims.  *See* 21 U.S.C. § 853(i)(1); 28 C.F.R. §9.1(b)(2); *see also United States* v. *Pescatore*, 637 F.3d 128, 137-38 (2d Cir. 2011).   It is the policy of the Department of Justice, consistent with the Crime Victims' Rights Act, to ensure that crime victims receive "full and timely restitution as provided in law." *See* 18 U.S.C. § 3771(c)(1).  Accordinglty, in cases (such as this one) where a traditional restitution order is impracticable, the Department of Justice may exercise its discretion to create a remission program to compensate victims of a crime from the pool of crime proceeds that have been forfeited to the Government, in which victims file petitions for remission within the

4

Department and the Department determines which petitioners are entitled compensation from the pool of forfeited funds (and in what amount).

The petition for remission process is well established. The regulations governing the process set forth who is a qualified victim and under what circumstances a victim can recover. In a given criminal case, the United States Attorney's Office and investigating law enforcement agency that investigated and prosecuted the case evaluate the petitions for remission submitted by victims, verify the loss amounts they claim, and make a recommendation to MLARS concerning the disposition of the petitions. In a multi-victim or complex case, the process of notifying potential victims, processing petitions, verifying losses, and recommending a distribution of available funds may be managed on behalf of the Department of Justice by a special master or trustee, as authorized by 28 C.F.R. § 9.9(c).

The criteria used in deciding petitions for remission of forfeited funds for a victim of the crime underlying the forfeiture of those funds, or a related offense, are set forth in Title 28, Code of Federal Regulations, Part 9. To obtain remission on such a petition, a victim must satisfactorily demonstrate that: (1) the victim incurred pecuniary loss of a specific amount; (2) the pecuniary loss was a direct result of the illegal act; (3) the victim did not knowingly contribute in, participate in, or benefit from, or act in a willfully blind manner toward the commission of the offense; (4) the victim has not been compensated for the loss; and (5) the victim does not have recourse to other assets to obtain compensation. *See* 28 C.F.R. §§ 9.2(v), 9.8(a).

Justice Department regulations provide that in the event that "petitions cannot be granted in full due to the limited value of the forfeited property," remission to multiple victims generally should be granted "on a pro rata basis." 28 C.F.R. § 9.8(e). The decision as to which victims

5

receive remission and in what amounts is within the sole discretion of the Attorney General, as determined by the Chief of MLARS.

This Office has regularly utilized the remission process to compensate victims in securities fraud and other complex cases.  For instance, in April 2012, over $728 million in funds that were forfeited in connection with this Office's securities fraud prosecution of the owners of Adelphia Communications Corporation in *United States* v. *Rigas et al.*, 02 Cr. 1236 (LBS) (S.D.N.Y.) were distributed through the remission process to approximately 8,500 victims of the fraud at Adelphia.  The complex process of notifying the large number of potential victims, processing more than 13,000 petitions for remission, verifying pecuniary losses, and recommending a *pro rata* distribution for the forfeited funds to MLARS, was managed by a special master appointed by the Justice Department.  The final determination of eligible victims and their loss amounts was made by MLARS, which granted approximately 8,500 petitions for remission submitted by victims of the Adelphia fraud and authorized the transfer of the proceeds of the forfeited assets, plus accrued interest, to the victims on a *pro rata* basis.

As this Court is aware, the Government has thus far seized 100,000 Ether units (worth tens of millions of dollars) in fraud proceeds that the defendants have agreed to forfeit to the Government in connection with their guilty pleas in this case.  The Government has also been engaged in continuing efforts to identify, locate, and secure additional fraud proceeds that would enlarge the pool of forfeited funds that would be available for potential use in any remission program to compensate victims of the defendants' fraud.

This Office has conferred with MLARS and has confirmed that MLARS intends to work with this Office and the FBI to create a remission program for this case that will involve the

6

establishment of a process for notifying potential victims of the opportunity to petition for remission from the pool of forfeited funds, processing petitions for remission, verifying losses, and distributing available funds to qualified petitioners.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests, without objection from the defendants, that the Court forgo restitution by entering an order finding, pursuant to 18 U.S.C. § 3663A(c)(3), that the determination of restitution is impracticable in this case. A proposed order is attached as Exhibit A for the Court's consideration.

                                              Respectfully submitted,

                                              ILAN GRAFF
                                              Attorney for the United States
                                              Acting Under 28 U.S.C. § 515

                                  By:     /s/_____
                                              Samson Enzer
                                              Negar Tekeei
                                              Daniel Loss
                                              Assistant United States Attorneys
                                              (212) 637-2342 / -2482

Dated:  October 30, 2020
          New York, New York