UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                       :

UNITED STATES OF AMERICA,          :
                            Plaintiff,     :           18 Crim. 340 (LGS)
                                          :

              -against-          :          <u>OPINION &amp; ORDER</u>
                                          :

SOHRAB SHARMA et al.,             :
                            Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

The Court is in receipt of the Ancillary Petition for Hearing to Adjudicate Validity of Legal Interest and Right to Forfeited Property Under 21 U.S.C. § 853(N)(1) filed by Jacob Zowie, Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, Mateusz Ganczarek, and Rodney Warren (collectively, "Claimants"). The Government opposes. For the reasons set forth below, Claimants' petition is denied.

## I.    BACKGROUND

From July through October 2017, Defendants fraudulently solicited approximately $39 million in digital assets from investors in exchange for digital purchase "CTR" tokens that were issued by Defendants' company Centra Tech., Inc. ("Centra Tech") as part of an initial coin offering ("ICO"). Defendants generated interest in the ICO by engaging in market manipulation to artificially pump up the price of CTR tokens on a cryptocurrency exchange. CTR token prices remained artificially inflated as Defendants continued their market manipulations through their arrests in April 2018. The parties do not dispute that during this period, potentially thousands of individuals purchased CTR tokens in connection with the ICO, and those ICO investors sold CTR tokens to secondary market buyers at artificially inflated prices. At their peak, CTR tokens traded between $.33 and $4.11 per token, for a market capitalization of

approximately $279 million.  Following Defendants' arrests and exposure of the fraud, CTR

token prices collapsed to $.01 to $.02.  The total loss to victims of the scheme -- ICO investors

and investors who purchased CTR tokens at artificially inflated prices on secondary markets --

may be in the hundreds of millions of dollars, well above the $39 million Defendants initially

obtained from ICO investors.  Those losses are due at least in part to Defendants' fraudulent

inflation of the CTR token prices.

Defendants subsequently pleaded guilty to three conspiracy charges -- for securities

fraud, wire fraud and mail fraud conspiracies -- and agreed to forfeit to the Government all fraud

proceeds.  In October and November, 2020, the Court issued preliminary orders of forfeiture

against Defendants Farkas and Sharma.  The majority of the forfeited proceeds was $36 million

from Sharma, which included $33 million the Government obtained from selling 100,000 seized

units of the Ether cryptocurrency (the "Ether Proceeds").

In advance of Farkas and Sharma's sentencings, the Court entered an order foregoing

restitution under 18 U.S.C. § 3663A(c)(3) because the number of potentially identifiable victims

in this case was so large as to make restitution impractical, and complex factual issues relating to

the cause or amount of losses to victims -- particularly secondary market purchasers who bought

CTR tokens at inflated prices -- would unduly complicate or prolong the sentencing process.

The Government has represented that the Department of Justice Money Laundering and Asset

Recovery Section will establish a remission program by which victims may petition for, and

receive a pro rata share of, the $36 million recovered as compensation for the fraud, all pursuant

to that Section's sole discretion under an enabling statute and regulation, *see* 21 U.S.C. §

853(i)(1), 28 C.F.R. § 9.1(b)(2).

In 2017, Claimants filed a civil securities fraud class action against Centra Tech in the Southern District of Florida.  In June 2020, Claimants obtained default judgments against Centra Tech in the amount of $3.4 million representing (1) Claimants' losses due to Centra Tech's fraud and (2) pre- and post-judgment interest.  The Government declined to release seized funds to Claimants in this amount, in part because there might be insufficient funds to reimburse fully all eligible victims' losses.

On January 19, 2021, following the Government's publication of forfeiture notices pursuant to the Court's preliminary forfeiture orders, Claimants filed the instant petition requesting that the Court (1) enter a restitution order on behalf of themselves "and their fellow Centra Tech Victims," rather than proceeding with the Government's remission plan and (2) initiate an ancillary proceeding to determine whether Claimants have a greater interest than the Government in unspecified portions of the 100,00 Ether units recovered.

## II.     STANDARD

Sentencing courts may simultaneously impose forfeiture and restitution orders.  *United States v. Bodouva*, 853 F.3d 76, 78-79 (2d. Cir. 2017).  Forfeiture of criminal proceeds to the Government is mandatory in federal criminal cases.  *See* 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case[.]"); 18 U.S.C. § 981; *see also United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012).  Forfeiture is designed to punish offenders by transferring their gains to the United States.  *Torres*, 703 F.3d at 203.

Restitution is designed to compensate victims for harm resulting from criminal activity. *Id.*  The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA") states, "when sentencing a defendant convicted of an offense [including fraud], the court shall order . . . that

the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663(a)(1). "'[V]ictim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). A court ordering restitution must direct the probation officer to obtain and include in its presentence report, to the extent practicable, a complete accounting of victims and losses, and the Government must consult, to the maximum extent practicable, with all victims and provide the probation officer with a listing of the amounts subject to restitution. 18 U.S.C. §§ 3664(a), 3664(d)(1). If victims' losses are not ascertainable by ten days prior to sentencing, the Court may set a date for a final determination of victims' losses not to exceed 90 days after sentencing. 18 U.S.C. § 3664(d)(5). The Supreme Court held that a court that erroneously missed the deadline for entry of a restitution order by three months could still enter such order because, at the sentencing hearing, the court stated it would order restitution, and only the amount remained undetermined. *Dolan v. United States*, 560 U.S. 605, 609, 613 (2010); *see also United States v. Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011). The deadline is primarily to help victims secure prompt restitution where possible. *Dolan*, 560 U.S. at 612.

      The MVRA contains two exceptions to its requirement of mandatory restitution. Restitution is not required where the court finds from the record that "the number of identifiable victims is so large as to make restitution impracticable," 18 U.S.C. § 3663A(c)(3)(A), or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). This decision is within the sentencing court's discretion. *See In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 565 (2d Cir. 2005). The purpose of these exceptions is to prevent

"sentencing courts [from] becom[ing] embroiled in intricate issues of proof," and "reflects Congress's intention that the process of determining an appropriate order of restitution be 'streamlined'" and that sentencings "not become fora for the determination of facts and issues better suited to civil proceedings." *United States v. Reifler*, 446 F.3d 65, 136-37 (2d. Cir. 2006) (quoting Senate report accompanying MVRA's passage).

## III.   DISCUSSION

### A.   Availability of Restitution

Claimants argue that they are entitled to immediate and mandatory restitution under the MVRA in the full amount of the default judgments.

#### 1.   Restitution for All Victims

First, Claimants argue that a restitution order is appropriate for all victims of the Centra Tech fraud because the set of victims and their losses are readily ascertainable, thus obviating the need to forgo restitution pursuant to 18 U.S.C. § 3663A(c)(3).  This argument is unpersuasive because the set of victims is likely in the thousands, consisting of initial purchasers of CTR tokens in the ICO and purchasers in the secondary market.  Defendant Sharma provided a spreadsheet identifying approximately 1,500 individuals who purchased CTR tokens in the ICO alone, not including victims in the secondary market.  In their Florida class action, Claimants acknowledged that the number of victims runs to the thousands, representing to the court that Centra Tech had "thousands of investors" in CTR Tokens and received digital assets from "thousands of unique addresses."

Restitution is made more impractical by complex issues of fact surrounding causation and the amounts of victims' losses.  18 U.S.C. § 3663A(c)(3)(B).  Determining the amount of each individual's loss is a fact-intensive query, involving a determination of when each victim

purchased and sold CTR tokens, the degree to which the value of the tokens was inflated by

Defendants' fraudulent misrepresentations and whether that fraudulent inflation proximately

caused the victim's purchase and/or sale of CTR tokens and concomitant loss.  18 U.S.C.

§ 3663A(a)(2).  Taken together, the large number of victims and the difficulty of ascertaining

their specific losses make restitution impractical in this case, particularly as any restitution order

would need to be entered within 90 days of sentencing. This makes a remission program the

better alternative.

    In response, Claimants note that the Government bears the burden of identifying

potential victims to the probation office, which is responsible for providing relevant information

on losses to the Court for use in fashioning a restitution order.  18 U.S.C. §§ 3664(a), 3664(d)(1),

3664(d)(5).  That is true, but beside the point.  As described above, the restitution exceptions of

18 U.S.C. § 3663A(c)(3) are designed to prevent the sentencing process from becoming a

drawn-out inquiry into complex factual issues better suited for separate judicial or administrative

proceedings.  Claimants do not dispute that the complex restitution process in this case would

delay Defendant Sharma's sentencing by months or years, contrary to the requirement that the

sentencing process be "streamlined," in part by the 90-days-from-sentencing deadline for

restitution orders.  *Reifler*, 446 F.3d at 136-37.  Claimants argue that *Dolan* permitted a court to

conduct a sentencing and then determine specific restitution amounts after the deadline.  But

*Dolan* addressed the situation where a court erroneously set a restitution hearing three months

after the deadline expired.  *Dolan* did not create a general exception to that deadline for purposes

of making complex restitution determinations over months or years.  *Dolan*, 560 U.S. at 611-14.

Claimants also cite several cases in which restitution orders were entered for thousands of victims. That argument is unpersuasive because those cases involved identified victims with clearly established losses, unlike the circumstances here.

### 2.    Individual Restitution Orders

Claimants argue that, even if thousands of victims and their losses remain unidentified, restitution is still appropriate as to Claimants because they are undisputedly victims of Defendants' fraudulent scheme and 18 U.S.C. § 3663A(c)(1) mandates restitution whenever "an identifiable victim" has suffered a pecuniary loss. This argument is unpersuasive because the mandatory language of § 3363A(c)(1) is qualified by the exceptions of § 3663A(c)(3), which provides, "This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) [an offense committed by fraud]" if one of the two statutory exceptions is met. Here, because the number of victims and complexity of their losses makes restitution impractical, restitution for any "identifiable victim" is not mandatory. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 366 (2d. Cir. 2018) ("a victim's right to restitution is not absolute . . . restitution need not be imposed if the court finds that correctly calculating or apportioning restitution would be impractical or would unduly prolong the sentencing process").

Permitting immediate restitution for Claimants in the full amount of their default judgments, which includes pre- and post-judgment interest, is likely unfair to the other victims in this case. As described above, total losses in this matter amount to potentially hundreds of millions of dollars, but only $36 million was recovered from Defendants. In such circumstances -- where a few identified victims are pressing claims for restitution, but many victims are still unidentified -- courts in this Circuit have declined to issue individual restitution orders and have instead forgone restitution under the § 3663A exceptions. *See Huff*, 409 F.3d at 562-65

7

(affirming district court's application of the § 3663A exceptions where plaintiffs from a separate securities class action petitioned for restitution under the MVRA, and a settlement fund established in the case was insufficient to make whole tens of thousands of as-yet-unidentified victims); *Reifler*, 446 F.3d at 136 (vacating restitution order and remanding for consideration of the § 3663A exceptions to avoid drawn-out determinations of victim loss in the sentencing process).  Courts have done so despite the argument that Claimants make -- that denial of individual restitution orders would hamper their ability to be made whole.  *Huff*, 409 F.3d at 563-64.

In response, Claimants first contend that an order of restitution may be entered under the MVRA as soon as one or more victims is identifiable.  That observation does not address the reasons for which restitution is inappropriate here -- the majority of victims are unidentified and determining their losses is a complex, fact-intensive and individualized inquiry.  Second, Claimants cite cases from this District in which the Government sought restitution orders only for victims of crimes it was able to identify following investigation.  Those cases did not involve the numerous victims and degree of complexity here but were instead manageable under normal sentencing timelines.  Although the progress the Government has made in identifying victims and their losses is not clear from its submissions, the complexity of this case precludes issuing a restitution order in the sentencing process.

Finally, Claimants suggest that the Government seeks to enrich itself through forfeiture followed by remission.  This argument is irrelevant to the applicability of the MVRA's exceptions to restitution, and in any case is unfounded --  first because the Government typically keeps the fruits of forfeiture, and the remission process is an exception; and second because the record in this case does not suggest any ulterior motive by the Government.

8

### C.     Challenge to Forfeiture of Ether

Claimants also move, pursuant to Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853(n)(1), "for a hearing to adjudicate the validity of Claimants' interest in a portion of the 100,000 Ether ('ETH') seized from Centra Tech by the Federal Bureau of Investigations ("FBI") on behalf of Centra Tech's victims."

As a general matter, "[a]ll right, title, and interest in property . . . [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see also United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015).  Title 21, United States Code, Section 853 establishes procedures by which third parties like Claimants may claim a legal interest in forfeited property.  Section 853(n) permits third parties to recover their interests in forfeited property through an ancillary proceeding following the preliminary forfeiture order.  21 U.S.C. § 853(n).  A third party may file a petition claiming that it

> has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

28 U.S.C. § 853(n)(6)(A).  An interest in forfeited property is superior to the Government's interest only if it arose before the Government's interest vested.  *See* 21 U.S.C. § 853(n)(6)(A). "Under the 'relation-back' doctrine of § 853(c), the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018).  "As a result, a third-party claimant must assert an interest in the proceeds of an offense that is superior to the defendant's at the moment that offense was committed in order to assert, in a subsequent

forfeiture proceeding, an interest in those proceeds that is superior to that of the government." *Id.*

The Court may hold a hearing on the petition, at which the petitioner and the United States "may testify and present evidence and witnesses." 28 U.S.C. § 853(n)(5); *see also Watts*, 786 F.3d at 160. If the petitioner demonstrates, by a preponderance of the evidence, that it has a superior interest in the property, the court shall amend the order of forfeiture accordingly. 28 U.S.C. § 853(n)(6). Section 853(n) requires petitioners to demonstrate an interest in particular and specific forfeited assets, rather than a general interest in forfeited assets. *See Watts*, 786 F.3d at 160 (citing *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir.1997)); *accord United States v. Simmons*, No. 17 Crim. 127, 2019 WL 3532113, at *5 (S.D.N.Y. Aug. 2, 2019); *see also United States v. Madoff*, No. 09 Crim. 213, 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) (collecting cases). "To have a claim in the specific property, a creditor, therefore, must secure a judgment or perfect a lien against a particular item." *Madoff*, 2012 WL 1142292, at *4 (citing *Ribadeneira*, 105 F.3d at 836).

Federal Rule of Criminal Procedure 32.2(c) elaborates on the procedures for ancillary proceedings under § 853(n). A court may decline to proceed to a formal hearing and "on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). In resolving such a motion, the court shall treat it as a motion to dismiss under Fed. R. Civ. P. 12(b), assuming all facts in the petition to be true. *Watts*, 786 F.3d at 161. A motion to dismiss a forfeiture petition for lack of standing implicates the court's subject matter jurisdiction. *Lucas v. United States*, 775 F.3d 544, 546 (2d Cir. 2015). Claimants, as the parties seeking relief, have the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence, *Broidy Capital Mgmt. LLC v. Benomar*,

10

944 F.3d 436, 445 (2d Cir. 2019), and courts may review evidence outside the pleadings in

resolving such questions, *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239,

243 (2d Cir. 2014).  "To carry its burden, a petitioner must first establish his standing to

challenge the forfeiture order by demonstrating a legal interest in the forfeited property."  *United*

*States v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019) (internal quotations marks

omitted) (quoting *Watts*, 786 F.3d at 160).  State law determines a petitioner's legal interest in

the property at issue. *Id.* (quoting *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236,

242 (2d Cir. 2011)).

The parties dispute whether Claimants have shown they have standing to claim an

interest in the Ether in this ancillary proceeding.  The facts alleged in Claimants' petition,

assumed to be true, must demonstrate a legal interest in particular and specific forfeited assets --

the Ether.  *Madoff*, 2012 WL 1142292, at *4.  Claimants' petition contains only limited factual

allegations relating to an interest in fraud proceeds; the petition asserts that Claimants obtained

default judgments against Centra Tech in the Southern District of Florida, each judgment stating

for a particular Claimant a dollar amount, including pre- and post-judgment interest.  Claimants'

descriptions of those judgments and the judgments themselves make no reference to Ether, much

less specific units or quantities of Ether transferred from Claimants to Defendants as a result of

Defendants' fraud.  Claimants' petition is otherwise wholly conclusory, providing no facts

demonstrating an interest in any specific property held by Defendants or Centra Tech.

Claimants' petition thus does comply with 21 U.S.C. § 853(n)(2)'s threshold requirements -- that

a petition "set forth the nature and extent of the petitioner's right, title, or interest in the property

[and] the time and circumstances of the petitioner's acquisition of the right, title, or interest in

the property."  Mindful that "these specifications are not simply technical requirements, but are

construed strictly to discourage false or frivolous claims [and] failure to satisfy these requirements is grounds for dismissal of a petition without a hearing," *United States v. Castle*, No. 18 Crim. 531, 2020 WL 4059808, at *2 (S.D.N.Y. July 20, 2020) (internal quotation marks omitted), Claimants' petition to challenge forfeiture is dismissed.  Claimants have not met their burden to show standing -- an interest in or judgment and/or lien against specifically-identified property.  *See Watts*, 786 F.3d at 160 (citing *Ribadeneira*, 105 F.3d at 835); *Madoff*, 2012 WL 1142292, at *4.

Claimants attempt to remedy their petition's deficiencies in their reply brief, alleging for the first time that "Claimants' particular and specific interest in the [Ether] is indelibly recorded on the Ethereum blockchain."  Claimants forfeited this claim by failing to plead it in their initial petition, which is construed for purposes of the Government's reply in the same manner as a complaint subject to a motion to dismiss under Fed. R. Civ. P. 12(b).  *Watts*, 786 F.3d at 161; *see also Marlin v. City of New York*, No. 15 Civ. 2235, 2016 WL 4939371, at *17 (S.D.N.Y. Sept. 7, 2016) ("[a] claim that is asserted in a brief but not in a pleading is not a properly pleaded claim, and the court will not deem the pleading amended by the brief").  Even were this assertion properly pleaded, Claimants still provide no specific factual allegations relating to Ether transferred from Claimants to Defendants, but instead resort to a conclusory statement that blockchain records can show the transfer of some Ether sufficient to confer standing.  *See, e.g.*, *Castle*, 2020 WL 4059808, at *3 (S.D.N.Y. 2020) (dismissing forfeiture petition where petitioner provided no details regarding transfer of relevant funds to and from an account).  Claimants also contend that the Government has characterized the proceeds of its sale of the recovered Ether as the "Centra Tech victim investor funds," and that this characterization suggests that Claimants have an interest in the Ether.  This argument is unpersuasive.  That the Government intends to

12

use the proceeds of the Ether sale to compensate victims of Defendants' fraud does not establish

Claimants' interest in specific units or quantities of recovered Ether.

When it appears as though deficiencies in a petition for an ancillary forfeiture hearing

could be remedied through amendment, third-party claimants may submit a revised petition.  *See*

*Daugerdas*, 892 F.3d at 553 (2d Cir. 2018) (concluding that if facts supporting the forfeiture

petition existed, "denying [claimant] the opportunity to present a viable petition would raise

significant due process concerns").  Claimants' petition is dismissed, but by **March 15, 2021**,

Claimants may (1) file a letter motion not to exceed three single-spaced pages explaining how a

revised petition would allege facts sufficient to show Claimants' interest in the seized Ether

consistent with this Opinion and (2) append to the letter motion a draft of the proposed revised

petition marked to show changes from the original petition.  By **March 22, 2021**, the

Government shall file a letter response not to exceed five single-spaced pages.  By **March 25,**

**2021**, Claimants shall file a letter reply not to exceed two single-spaced pages.  The parties shall

(1) meet and confer to discuss a possible resolution of Claimants' claims and (2) submit a joint

status letter describing their efforts by **March 16, 2021**.

## IV.    CONCLUSION

For the foregoing reasons, Claimants' petition for restitution is DENIED.  Claimants'

petition to challenge the forfeiture proceedings is DISMISSED without prejudice to renewal for

lack of standing.  The Clerk of Court is respectfully directed to close the docket entries at nos.

446 and 463.

Dated:  March 8, 2021
      New York, New York

                                    **LORNA G. SCHOFIELD**
                              **UNITED STATES DISTRICT JUDGE**