UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                                          :
UNITED STATES OF AMERICA,               :
                                      Plaintiff,     :           18 Crim. 340 (LGS)
                                                         :
             -against-                      :           OPINION & ORDER
                                                         :
SOHRAB SHARMA et al.,                   :
                                    Defendants. :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       In this ancillary proceeding, Claimants Jacob Zowie Thomas Rensel, Wang Yun He, Mateusz Ganczarek, Chi Hai Poon, King Fun Poon and Jae J. Lee[1] (collectively, "Claimants") seek leave to amend the Ancillary Petition for a Hearing to Adjudicate Validity of Legal Interest and Right to Forfeited Property under 21 U.S.C. § 853(n)(1). The issue is whether Claimants may amend the petition to assert on behalf of members of a certified class (the "Class") in a civil lawsuit in the Southern District of Florida (the "Class Action"), those investors' alleged interest in approximately $33 million that were proceeds of Defendants' cryptocurrency fraud. The Government opposes. For the reasons set forth below, Claimants' motion for leave to amend is denied.

I. **BACKGROUND**

       In brief and as detailed below, the dispute between the Government and Claimants is as follows: The Government has approximately $33 million, which are the proceeds from selling units of cryptocurrency that the Government seized from Defendants through criminal forfeiture. Defendants obtained the units from victims who used the units to invest in Defendants'

---

[1] Claimant Rodney Warren did not join this motion and is not a member of the class that was certified in the Southern District of Florida, *Rensel v. Centra Tech, Inc. et al.*, No. 17 Civ. 24500.

fraudulent scheme. The Government proposes to distribute the proceeds of the liquidated units to pay the victims on a pro rata basis through a remission program. Claimants and members of the Class could participate in the remission program, along with other victims who would be eligible.

Claimants, on behalf of themselves and the Class, seek to obtain the entire $33 million for themselves and distribute it in the Class Action -- net of up to 20% (or $6.6 million) for class counsel's attorneys' fees. The result would be (1) to prevent recovery by other victim investors who are not class members but who are eligible to participate in the Government's remission program and (2) to reduce the amount distributable to victims by the amount of class counsel fees.

Claimants challenge the Government's seizure and proposed distribution of the proceeds. Claimants assert that units of cryptocurrency, unlike traditional currency, are not fungible and are therefore traceable. Claimants argue that the cryptocurrency units that the Government seized were entirely theirs, are not subject to forfeiture, should not have been liquidated and, consequently, that the proceeds of the units should not be distributed to all defrauded investors but instead should be transferred to the Class. Claimants seek to file an amended petition on behalf of the Class in order to make this challenge.

A. **Criminal Prosecutions**

This ancillary proceeding arose out of the convictions of Defendants Sohrab Sharma and two other individuals. *See United States v. Sharma*, No. 18 Crim. 340, 2021 WL 861353 (S.D.N.Y. Mar. 8, 2021). Between approximately July and October 2017, Defendants fraudulently solicited approximately $39 million in digital assets from investors, including at least 100,000 units of "Ether," in exchange for digital purchase "CTR" tokens that were issued

by Defendants' company Centra Tech., Inc. ("Centra Tech") as part of an initial coin offering ("ICO"). Defendants generated interest in the ICO by fraud to pump up the price of CTR tokens on a cryptocurrency exchange. CTR token prices remained artificially inflated as Defendants continued their market manipulation until their arrests in April 2018. Between July 2017 and April 2018, potentially thousands of individuals purchased CTR tokens in connection with the ICO, and those ICO investors sold CTR tokens to secondary market buyers at artificially inflated prices. Following Defendants' arrests and exposure of the fraud, CTR token prices collapsed. The total loss to victims, both initial investors and those who purchased in the secondary market, may be in the hundreds of millions of dollars, due at least in part to the fraudulently inflated prices of the CTR tokens in the secondary market.

Defendants pleaded guilty to various charges and agreed to forfeit to the Government all fraud proceeds. Between November 2020 and April 2022, the Court issued preliminary orders of forfeiture, one for each of the three Defendants. The Preliminary Order of Forfeiture as to Sharma, entered November 11, 2020, (1) ordered entry of a money judgment in the amount of $36,088,960, representing "proceeds traceable to those offenses that the Defendant [Sharma] personally obtained," and (2) forfeited Sharma's right, title and interest in 100,000 Ether units that the Government had seized and subsequently sold (the "Ether Proceeds"). The majority of the property ordered to be forfeited (the "Property") was $36 million from Sharma, which included $33 million of Ether Proceeds.

### B. The Government's Remission Program

The Department of Justice Money Laundering and Asset Recovery Section ("MLARS") has established a remission program by which victims may petition for, and receive a pro rata share of, the Property as compensation for the fraud, all pursuant to MLARS' sole discretion

under an enabling statute and regulation.  *See* 21 U.S.C. § 853(i)(1), 28 C.F.R. § 9.1(b)(2) (2012).  Purchasers of CTR digital tokens issued by Centra Tech either through the ICO or in the secondary market from approximately July 23, 2017, through April 2, 2018, are eligible to file a petition for remission.[2]  The Government has hired a claims administrator to assist in the process.  In January 2022, MLARS sent an email to victims notifying them of remission claims procedures and launched a website, where victims may find information about the remission process and submit claims.  *See* United States v. Sohrab Sharma et al. Remission Administration, https://www.centratechremission.com (last visited June 2, 2022).  MLARS has received numerous claims in advance of the current claim deadline of September 30, 2022.

   C. **Florida Class Action Lawsuit**

While the criminal case was ongoing, Claimants were proceeding on a parallel track to pursue civil remedies.  In 2017, Claimants filed a civil securities fraud class action in the Southern District of Florida against Centra Tech, Sharma and his two criminal co-defendants.  According to Claimants, "[b]oth the Civil Action and Criminal Action concern identical facts and substantively identical claims."  In June 2020, each Claimant obtained a default judgment against Centra Tech in the combined amount of approximately $3.4 million.

Although class certification was initially denied, the Eleventh Circuit vacated the district court's denial of class certification and remanded the case for further proceedings in June 2021.  *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359 (11th Cir. 2021).  On remand, the district court granted the renewed motion for class certification under Federal Rule of Civil Procedure 23(b)(3).  *Rensel v. Centra Tech, Inc.*, No. 17 Civ. 24500, 2021 WL 4134984 at *12 (S.D. Fla. Sept. 10,

---

[2] An error in the "Petition for Remission Form – Instructions" on the website mistakenly states October 5, 2017, rather than April 2, 2018, as the eligibility end date.

2021). Claimants were appointed as class representatives. *Id*. The Class consists of "[a]ll persons and entities who purchased or otherwise acquired Centra Tech Tokens ('CTR Tokens') directly from Defendant Centra Tech in connection with its 'official' initial coin offering from July 23, 2017 through October 5, 2017." *Id.* at *5. The certified Class does not include purchasers in the secondary market because of issues with the ascertainability requirement for classes certified under Federal Rule of Civil Procedure 23(b)(3). Consequently, the Class comprises only a subset of the victims who would be eligible under the Government's remission process.

      Claimants assert that the Class contributed (i.e., paid into the ICO) all of the Ether that the Government later sold in exchange for the Ether Proceeds and that the Class therefore has a superior right to those proceeds. On November 23, 2021, Claimants filed an unopposed motion for default judgment seeking a class-wide judgment against Centra Tech for approximately $33.4 million. On May 31, 2022, Magistrate Judge Jacqueline Becerra issued a report and recommendation recommending that the motion for default be granted. If successful in this ancillary proceeding, Claimants intend to use the Ether Proceeds to satisfy the default judgment.

**D. Ancillary Proceeding**

      Pursuant to 21 U.S.C. § 853(n)(1), from November 19 until at least December 19, 2020, the Government published notice of the Sharma preliminary forfeiture order and intent to dispose of the Property, which includes the Ether Proceeds. Anyone claiming an interest in the Property was required to file a petition within sixty days from the first day of the Government's publication. 21 U.S.C. § 853(n)(2).[3] On January 19, 2021, Claimants filed a petition

---

[3] The statute requires that petitions must be filed within thirty days but in this case, the notice of forfeiture provided for sixty days to file a petition.

commencing this ancillary proceeding and seeking, among other things, to prevent the Government from forfeiting the Ether Proceeds and to establish that Claimants have a superior interest in the Ether Proceeds.

On the Government's motion, the petition was dismissed on March 8, 2021, without prejudice to renewal for lack of standing. *United States v. Sharma*, No. 18 Crim. 340, 2021 WL 861353, at *6 (S.D.N.Y. Mar. 8, 2021) (the "Dismissal Opinion"). "Section 853(n) requires petitioners to demonstrate an interest in particular and specific forfeited assets, rather than a general interest in forfeited assets." *Id*. at *5 (citing, inter alia, *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015)). The Petition was dismissed because it did not allege "facts demonstrating an interest in any specific property held by Defendants or Centra Tech" and "contain[ed] only limited factual allegations relating to an interest in fraud proceeds," which made "no reference to Ether, much less specific units or quantities of Ether transferred from Claimants to Defendants as a result of Defendants' fraud," and the rest of the allegations were conclusory. *Id*. at *6.

With the Court's leave, Claimants filed an amended petition (the "First Amended Petition") to remedy the deficiencies identified in the Dismissal Opinion and seeking $6.2 million of the Ether Proceeds for themselves personally. Following the certification of the Class in the Class Action, Claimants informed the Government that they intended to seek relief on behalf of the Class, and Claimants were directed to file their motion for leave to file a second amended petition on behalf of themselves and the Class.

Claimants filed the instant motion, along with a proposed second amended petition (the "PSAP"). The PSAP seeks, on behalf of Claimants and the Class, a hearing to adjudicate the validity of their interest in the Ether Proceeds. The PSAP asserts that Claimants and the Class

have a superior interest in the Ether Proceeds. The PSAP alleges that "the entirety of the 100,000 [Ether Proceeds] seized from Centra Tech are directly traceable to the Class's investments." The PSAP relies, in part, on a special agent's statement that "there is probable cause to believe" that "Centra Tech raised at least 100,000 Ether units during its ICO from investors who purchased Centra Tokens" and that "the 100,000 Ether units that Centra Tech transferred to the Seizure Wallet . . . are traceable in whole or substantial part to funds raised by Centra Tech during and as part of its ICO." The PSAP asserts that a summary spreadsheet prepared by Centra Tech provides identifying information for most members of the Class, including the time, amount, transaction ID and source wallet for each transaction, and that the Claimants' and the Class members' transactions can be further verified on the Ethereum blockchain.

## II. STANDARD

Section 853(n) permits "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . [to] petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). Such petitions generally are "evaluated on the same standard as a civil complaint . . ." *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018). Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]istrict courts may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (quoting *Technomarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).

### III. DISCUSSION

Claimants' motion is denied because permitting filing of the PSAP would be both futile and prejudicial. Granting the motion is futile because the PSAP is improper and insufficient as to the absent class members on whose behalf it attempts to assert a claim. Granting the motion would be prejudicial and result in distributing more of the $33 million in Ether Proceeds to Claimants, the Class and class counsel, to the detriment of other victims of Defendants' fraud. The Government further makes the related argument that, because the PSAP is contrary to what is contemplated by the forfeiture statute, Claimants lack standing to file a petition on behalf of the Class in this forfeiture proceeding. Leave to amend is denied for all of these reasons.[4]

#### A. The PSAP is Futile

##### 1. The PSAP on Behalf of the Class is Improper

The PSAP is futile because it would not survive a motion to dismiss. The PSAP improperly attempts to overlay the statutory forfeiture procedure with civil litigation class action procedure. The forfeiture statute by its terms contemplates individual claimants making individual claims to property that otherwise would be forfeited (and in this case, distributed through the remission process). The statute requires "[a]ny person," who asserts an interest in forfeited property to file a petition "signed by the petitioner under penalty of perjury" and "set[ting] forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property." 21 U.S.C. § 853(n)(2)-(3). The petition is followed by a hearing where "the

---

[4] Claimants' further arguments on behalf of the Class challenging forfeiture, the sale of the Ether, the remission process and asserting their superior interest in the Property consequently are not addressed in this opinion.

8

petitioner may testify and present evidence," after which the court determines any right the petitioner has in the forfeited property.  21 U.S.C. § 853(n)(5)-(6).

This procedure is antithetical to a Rule 23(b)(3) class action, which contemplates claims being made on a representative basis on behalf of absent class members.  Only the claims of representative class plaintiffs are adjudicated, based on proof common to the class and not unique to each class member.  The "absent class members" are nevertheless bound by the action and they need not (and, indeed, may not) prove their claims individually.  Only those who "opt out" of class membership may proceed individually.  *See generally* Ann. Manual Complex Lit. § 21 (4th ed.).

Claimants are attempting with the PSAP to turn this ancillary proceeding into a de facto class action, seeking to establish the absent Class members' rights in a representative capacity.  Regardless of how the argument is characterized - - whether as above or the Government's standing argument - - the procedures contemplated by the forfeiture statute and Federal Rule of Civil Procedure 23(b)(3) are fundamentally incompatible.  Plaintiffs cite no precedent combining the two.  This reason alone is sufficient to deny the motion for leave to amend.

### 2. The PSAP is Insufficient

Leave to amend would be futile for the second and independent reason that the PSAP is insufficient as to the Class members and lacks required information.  The forfeiture statute provides that the petition must be "signed by the petitioner under penalty of perjury" and must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property."  21 U.S.C. § 853(n)(3).  The PSAP fails to comply in several respects:

- The PSAP does not contain a signature line for the thousands of class members, and the Petition states that it is filed by Claimants in their representative capacity, and not by the individual Class members. Claimants state that they would file the PSAP with their signatures attached, not the signatures of the individual Class members.
- The PSAP fails to identify all of the Class members on whose behalf the Petition is filed. The PSAP explicitly states that "there may be additional members of the Class that Centra Tech failed to identify on the Summary Spreadsheet."
- The investor allegations in the PSAP are generic to the Class as a whole and do not provide specific detail about the time and circumstances of each class member's acquisition or interest in the property. Although the PSAP references a Summary Spreadsheet, which purports to contain the "names, email addresses, and addresses of most members of the Class" as well as "the time, amount transaction ID, and source wallet for each transaction," the spreadsheet itself is not described as one of the nine exhibits to the PSAP nor as being otherwise included in the PSAP.[5]

The PSAP makes general allegations about the Class member's investments in the ICO "by sending Ether from their own wallets to Centra Tech smart contract wallets" and that "[t]he vast majority of this Ether was then transferred through wallets controlled by Centra Tech, before ultimately being placed in the wallet seized by the FBI." The PSAP relies heavily on an FBI agent's statement that links Class members' investments to the Ether Proceeds -- "there is probable cause to believe . . . that the 100,000 Ether units that Centra Tech transferred to the Seizure wallet . . . are traceable in whole or substantial part to funds raised by Centra Tech

---

[5] To the extent that any of these deficiencies can be remedied, that would not overcome the other independent bases for denying leave to file the PSAP on behalf of the Class.

during and as part of its ICO." These class-based allegations are insufficient because they do not provide the requisite factual information about individual Class members or their individual interests in the forfeited property. *See, e.g.*, *United States v. Castle*, No. 18 Crim. 531, 2020 WL 4059808, at *3 (S.D.N.Y. July 20, 2020) (dismissing petition on the merits, in part, because it lacked any details regarding when funds were transferred and insufficient detail regarding source of funds); *United States v. Raniere*, No. 18 Crim. 204, 2020 WL 264958, at *2 (E.D.N.Y. Jan. 17, 2020) (dismissing petition because it contained "numerous conclusory assertions" regarding the nature and scope of interest and insufficient details regarding the alleged agreement that gave petitioner an interest in the assets).

### B. The PSAP is Prejudicial

Leave to amend is denied on the separate ground that the PSAP, if filed and granted, would be prejudicial. Interposing Claimants as class representatives and their counsel into the forfeiture process is superfluous and harmful to the other victims who may seek to recoup their losses. First, the Class excludes investors in the secondary market who, like Class members in the initial offering, paid prices that were wildly inflated as a result of Defendants' fraudulent statements. Secondary market investors would receive virtually no recovery if Claimants were successful in their effort to remove from the forfeiture and remission process all of the Ether Proceeds -- $33 million of the total $36 million in forfeited Property.

Second, any investors' recovery would be reduced by the payment of class counsel fees. The Government states that MLARS has engaged a claims administrator, prepared a claims form and website and is prepared to move forward with the remission program upon resolution of these ancillary proceedings. In the forfeiture setting, MLARS performs these functions, which would be the responsibility of class counsel in a civil class action settlement. If leave to file the

PSAP were granted and the Ether Proceeds were removed from the forfeiture and remission process and instead distributed to satisfy a default judgment in the Class Action, class counsel would seek attorneys' fees as they would in a class action settlement.  Indeed, class counsel have stated that they intend to cap their fee request at 20% of the recovery obtained for the Class, or $6.6 million of the $33 million of Ether Proceeds if they are successful in obtaining them for the Class.  Payment of these fees reduces the funds available to compensate victims, who in that case would be limited to Class members.

## IV.   CONCLUSION

For the foregoing reasons, Claimants' motion for leave to amend is DENIED.  The Court reserves decision on issues relating to the adequacy of the Government's notice of the Sharma Preliminary Order of Forfeiture pending resolution of any motion by the Government to dismiss the First Amended Petition.  A separate order will issue regarding such motion.

Dated:  June 3, 2022
        New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE