UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA,          :

                        Plaintiff,    :          18 Crim. 340 (LGS)

                                   :

            -against-          :          <u>OPINION & ORDER</u>

                                   :

SOHRAB SHARMA et al.,           :

                          Defendants.  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      In this ancillary proceeding, Plaintiffs-Claimants Jacob Zowie Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, Mateusz Ganczarek and Rodney Warren (collectively, "Claimants") claim an interest in a portion of the proceeds of the cryptocurrency seized from Centra Tech, Inc. ("Centra Tech").  The seizure was in connection with the criminal prosecution of Defendants, Centra Tech's founders and co-conspirators Sohrab Sharma, Raymond Trapani and Robert Farkas.  The Government moves to dismiss Claimants' First Amended Petition for Hearing to Adjudicate Validity of Legal Interest and Right to Forfeited Property Under 21 U.S.C. § 853(n)(1) (the "Petition") under Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure.  For the reasons set forth below, the Government's motion is granted.

I.      **BACKGROUND**

      Familiarity with the factual and procedural history of this case is assumed.  *See United States v. Sharma*, No. 18 Crim. 340, 2022 WL 1910026, at *1-3 (S.D.N.Y. June 3, 2022).

      In brief, Claimants seek a portion of the proceeds from a sale of units of cryptocurrency seized through criminal forfeiture from Defendants.  Defendants fraudulently induced Claimants and other victims to transfer cryptocurrency to Centra Tech as payment for unregistered

securities called "CTR Tokens."  Following the initiation of criminal proceedings, the Federal

Bureau of Investigation seized a digital wallet held by Centra Tech.  This wallet contained

100,000 units of the cryptocurrency Ether, or ETH, some of which investors had transferred

directly to Centra Tech, and some of which Centra Tech had converted from other

cryptocurrencies investors transferred ("Seized ETH").  On October 7, 2020, pursuant to court

order, the Government sold the contents of the wallet at auction for approximately $33.4 million

("Seized ETH Proceeds").

 The Government plans to distribute forfeiture money -- which consists principally of the

Seized ETH Proceeds -- to victims of the fraud on a pro rata basis through a remission program.

Under the remission program, both investors who purchased CTR Tokens from Centra Tech

directly in the initial coin offering ("ICO") and those who bought the tokens on the secondary

market are eligible for compensation.  Per the most recent status letter regarding the remission

program, filed January 6, 2023, the Government has already received more than $56.8 million in

aggregate claims from victims.  This figure excludes claims that on their face seem unverifiable.

The amount of claims may increase as the deadline for submission has not yet occurred and is

expected to follow adjudication of this ancillary proceeding.

 In parallel to the criminal proceedings, Claimants brought a civil lawsuit in the Southern

District of Florida, *Rensel v. Centra Tech, Inc.*, No. 17 Civ. 24500, 2021 WL 4134984 (S.D. Fla.

Sept. 10, 2021), against Defendants and Centra Tech (the "Florida Action").  In June 2020, each

Claimant obtained a default judgment against Centra Tech in the Florida Action in the combined

amount of approximately $3.4 million.  In that litigation, Claimants, as putative class

representatives, moved to certify a class of all investors who obtained CTR Tokens directly from

Centra Tech in the ICO.  Although certification was initially denied, the Court of Appeals for the

Eleventh Circuit vacated the denial and on remand, the district court certified the class. *See Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021); *Rensel v. Centra Tech, Inc.*, No. 17 Civ. 24500, 2021 WL 4134984, at *12 (S.D. Fla. Sept. 10, 2021).  On June 10, 2022, Claimants obtained default judgments against Centra Tech on behalf of the class in the amount of approximately $33.4 million, a total derived from the Seized ETH Proceeds.

In the Petition, Claimants, individually and not on behalf of the class, argue that they have a superior interest in portions of the seized units, such that under the relevant statute, any proceeds from their sale should be transferred to them rather than included in the proportional distribution to all defrauded investors.  The Petition seeks either the return of 3,357.45 ETH in the seized wallet that Claimants allege can be traced to their investments or a payment of approximately $6.2 million, the market price of Ether as of the day of filing the Petition.

## II.     STANDARD

21 U.S.C. § 853(n) provides the process for a third party to assert an interest in assets forfeited in a criminal proceeding.  It permits "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . [to] petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  To prevail, Claimants must prove, "by a preponderance of the evidence," that they have superior legal claim over the disputed property.  *Id.* § 853(n)(6).  As is relevant here, a petitioner must show they have:

> a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant . . . at the time of the commission of the acts which gave rise to the forfeiture of the property . . . .

*Id.*

A motion to dismiss a § 853(n) petition is "evaluated on the same standard as a civil complaint . . . [meaning] all factual allegations alleged in the petition [are assumed] to be true." *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018) (citation omitted). A motion to dismiss a petition may be granted "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). To survive a motion to dismiss, a petition "need only state enough facts to state a claim to relief that is plausible on its face." *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) (internal quotation marks omitted).

## III.   DISCUSSION

Claimants must show, on the facts alleged in their Petition, that they have a plausible claim to the Seized ETH Proceeds. Claimants' arguments can be reduced to three theories. First, they argue that liens created by the issuance of writs of execution following the entry of a judgment in the Florida Action give them a superior interest in the Seized ETH. Second, they argue that the Seized ETH belonged to Centra Tech, rather than Sharma, and the Government lacks the authority to forfeit assets held by a third party. Finally, they argue that because they can trace the cryptocurrency they were fraudulently induced to transfer to Defendants, they are entitled to a constructive trust over those units of cryptocurrency. Even assuming all factual allegations in the Petition are true, these theories fail.

### A.  Judgment Liens

Any alleged liens to enforce Claimants' default judgments came into existence after the Government's interest in the Seized ETH vested. Under the relation-back provision of § 853(c), the liens therefore provide no basis for Claimants to assert a superior interest in the Seized ETH Proceeds.

4

The Petition describes judgment liens obtained by Claimants following the entry of judgment in the Florida Action.  Each Claimant obtained a default judgment against Centra Tech in the combined amount of approximately $3.4 million.  Following the entry of judgment, Claimants sought writs of execution in Florida and New York.  On August 8, 2020, the Southern District of New York issued writs of execution against the U.S. Attorney's Office.  Claimants argue that the issuance of these writs created judgment liens that entitle Claimants to a return of a portion of the Seized ETH.

Under § 853(c), "[a]ll right, title, and interest in property [subject to forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture."  Under this "relation-back" provision, "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds."  *Daugerdas*, 892 F.3d at 548.  The Government has a superior interest unless a "third-party claimant [can] assert an interest in the proceeds of an offense that is superior to the defendant's at the moment that offense was committed."  *Id*.  "[C]ourts have recognized that a petitioner is unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense[] [b]ecause, by definition, the proceeds of an offense do not exist before the offense is committed . . . ."  *United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) (cleaned up).

Claimants are "investor-victims of Centra Tech, Inc.'s . . . extensive fraud."  Because of Defendants' "scheme to defraud investors . . . through the sale of unregistered securities and a series of material misrepresentations and omissions," Defendants "obtain[ed] the [Seized ETH] from Claimants and other Centra Victims."  The Seized ETH represents the proceeds of a fraud.

Under § 853(c), the Government's interest vested upon the commission of the acts constituting the fraud, which took place approximately from July 2017 to April 2018.  Any interest Claimants gained in the Seized ETH as a result of the judgment liens vested years later.  The Government's interest is superior under § 853(n).  The liens provide no basis for Claimants to assert a claim over the Seized ETH Proceeds.

Claimants assert that they are merely attempting to enforce a judgment entered against Centra Tech rather than pursue or sue the Government, and that the Government is the "mere possessor" of the assets in question.  This argument fails.  "It is . . . well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets . . . ."  *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007).  The Seized ETH is such a forfeited asset, and Claimants must follow the § 853(n) hearing procedure, rather than win a money judgment in a parallel civil case and attempt to satisfy it.  Further, the characterization of the Government as the "mere possessor" of an asset subject to a lien ignores that the Government came to possess the Seized ETH in a criminal forfeiture action that arose out of the same conduct as the relevant judgments.

In providing for the Government's interest vesting at the time of the commission of the crime, § 853 prevents this exact type of duplicative litigation, by channeling all claimants of forfeited property into one proceeding.  Allowing Claimants' judgments to establish superior claim on the seized assets through parallel litigation would frustrate the statutory scheme.  Accordingly, Claimants' judgment liens do not provide a basis to claim a portion of the Seized ETH.

### B.  Seizure of Centra Tech Assets

Claimants next argue that they have superior claim to the Seized ETH because it was seized from Centra Tech, rather than Sharma, who "does not have any interest" in the Seized ETH.  Even accepting the factual allegations of the Petition, including that "Centra Tech, Inc., not Sharma[,] owned the [Seized ETH] at all relevant times," this argument fails.  To be properly forfeited, "property need not be personally or directly in the possession of the defendant . . . or his co-conspirators."  *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012) (internal quotation marks omitted).  Instead, "the property must have, at some point, been under the defendant's control or the control of his co-conspirators in order to be considered 'acquired' by him."  *Id.*

The factual allegations in the Petition support that Sharma and his co-conspirators had such control, making the forfeiture proper and defeating Claimants' assertion of a superior claim. For example, Defendants co-founded Centra Tech, and Sharma was Centra Tech's President, CEO, and sole Director through October 27, 2017.  At the same time, "Centra Tech moved the overwhelming majority of the cryptocurrency it received from . . . investors" into a digital wallet.  The control implied by Sharma's positions at Centra Tech is not undermined by anything in the Petition suggesting otherwise.  As part of their tracing analysis of Claimant He's Bitcoin investments, Claimants quote text messages from Sharma to Trapani referring to Sharma's moving cryptocurrency among Centra Tech wallets.  Finally, in the Consent Preliminary Order of Forfeiture (which is cited in the Petition), Sharma agreed that he "personally obtained digital assets (consisting of the Seized Ether Units plus additional cryptocurrency funds) from Centra Tech fraud victims."  The Petition supports the conclusion that Sharma exercised control over Centra Tech's assets, including the Seized ETH.

In their briefing, Claimants note questions of fact unanswered by their Petition. For example, they state that whether Sharma had access to a password to the wallet will require "an intense factual inquiry." This statement reflects a misunderstanding of Claimants' burden. To survive a motion to dismiss, the Petition must assert facts that, if true, state a plausible claim for relief. *See Watts*, 786 F.3d at 161. The Petition does not plausibly allege that Sharma lacked control over the Seized ETH such that Claimants would have a superior legal claim to the Seized ETH.

### C. Constructive Trust

Finally, six Claimants argue that they hold a constructive trust in those portions of the Seized ETH traceable to their investments. "A constructive trust is an equitable remedy and its purpose is to prevent unjust enrichment." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Henning v. Henning*, 962 N.Y.S.2d 189, 192 (2d Dep't 2013)). Under § 853, "if applicable state law imposes a constructive trust in property in favor of a third party, the third party's interest is superior to the government's." Fed. Ins. Co. v. United States, 882 F.3d 348, 371 (2d Cir. 2018). Claimants' argument for a constructive trust fails.

New York law allows for the recognition of a constructive trust upon a finding of some or all of: "(1) a confidential or fiduciary relationship, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment." *Jaffer*, 887 F.3d at 114 (internal quotation marks omitted); *accord Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (2d Dep't 2010) ("[A]s these elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established.").

Claimants argue that because they can trace their investments, the imposition of a constructive trust is warranted. Even if their investments can be traced to the Seized ETH,

Claimants are not entitled to the equitable remedy of a constructive trust. The practical effect of finding a constructive trust would be to prioritize Claimants over other defrauded investors. Allowing them to recover their losses in full would reduce the funds available for all other Centra Tech investors, including the class that Claimants successfully sought to represent in the Florida Action. Courts have recognized that even when a victim of fraud can trace their investments in the criminal proceeds, it would be inequitable to prioritize their claims over those of other creditors. *See United States v. Ramunno*, 599 F.3d 1269, 1275 (11th Cir. 2010) ("[E]quity demands that no victim be given priority over any other similarly situated victim. Fairness does not call for a constructive trust in this case even if [claimant] can prove that he can trace, because it would elevate his position over that of similarly situated victims." (citation omitted)); *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) ("[T]he [district] court, in exercising its discretionary authority in equity, was not obliged to apply tracing. . . . [T]he court imposes a constructive trust only where equity and justice demand." (cleaned up)); *United States v. Andrews*, 530 F.3d 1232, 1237-39 (10th Cir. 2008) ("[A] court should not employ an equitable fiction to elevate one claim over the claims of other creditors if those creditors are similarly situated." (internal quotation marks and alteration omitted)).

Claimants dispute that allowing the return of the specific units of cryptocurrency would reduce the funds available to other investors. This argument is undercut by their simultaneous objection to the Government's valuation methodology in the remission process, on grounds that it will not capture the substantial increase in the value of Ether and Bitcoin since Centra Tech's ICO. Their Petition seeks approximately $6.2 million, reflecting the market value of the 3,357.45 ETH traceable to the Seized ETH when the Petition was filed. In other words, based on their ability to trace around 3.4% of the Seized ETH, Claimants seek 18.6% of the Seized

9

ETH Proceeds.  The remission fund, which consists largely of the Seized ETH Proceeds, must cover the claims of direct investors, many of whom presumably could trace their investments on the Ethereum blockchain as Claimants do, as well as secondary market purchasers.  If their Petition is successful in winning the relief it seeks, Claimants will necessarily reduce other investors' recovery.  While Claimants are correct that there are factual questions regarding the amounts investors will recover through the remission process, these questions are beside the point.  Recognition of a constructive trust that would award Claimants more than their pro rata share as compared with other investors[1] would be inequitable to other victims of Defendants' scheme.  Claimants' argument for the equitable remedy of a constructive trust is rejected.

## IV.    CONCLUSION

For the reasons given above, the Government's Motion to Dismiss the First Amended Petition is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. 592.

Dated: January 31, 2023
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[1] Per the most recent status letter of January 6, 2023, regarding the Government's remission process, claims on the Seized ETH Proceeds are around $56.8 million, and may grow.  While this number is subject to verification, claims are almost certain to exceed the remission fund, which consists principally of the $33.4 million in Seized ETH Proceeds, particularly as the remission claims period has not closed.  In other words, claimants in the remission process, who are intended to receive their pro rata share of the remission fund, will almost certainly recover less than 100 cents on the dollar.